1  Lesley E. Weaver (SBN 191305)
   **BLEICHMAR FONTI & AULD LLP**
2  555 12th Street, Suite 1600
   Oakland, CA 94607
3  Tel.: (415) 445-4003
   Fax: (415) 445-4020
4  lweaver@bfalaw.com

5  Jayne Conroy (pro hac vice to be sought)
   Jason 'Jay' Barnes (pro hac vice to be sought)
6  **SIMMONS HANLY CONROY LLC**
   112 Madison Avenue, 7th Floor
7  New York, NY 10016
   Tel.: (212) 784-6400
8  Fax: (212) 213-5949
   Jconroy@simmonsfirm.com
9  jaybarnes@simmonsfirm.com

10 *Counsel for Plaintiffs and the Proposed Class*

11

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14

15 Richard Schubert, individually, and on       Case No.:
   behalf of all others similarly situated,
16                                               CLASS ACTION
                                                 _____
17              Plaintiff,

18       v.

19 PORSCHE CARS NORTH AMERICA,                   **CLASS ACTION COMPLAINT**
   INC., DR. ING. H.C. F. PORSCHE AG,
20 INC., and VOLKSWAGEN AG,                      DEMAND FOR JURY TRIAL
                                                 _____
21              Defendants.

22

23

24

25

26

27

28

# TABLE OF CONTENTS

NATURE OF THE CASE ........................................................................18

PARTIES ..............................................................................................21

        A.     Plaintiff.................................................................21

        B.     Defendants ..........................................................22

JURISDICTION AND VENUE ...............................................................23

INTRADISTRICT ASSIGNMENT..........................................................24

COMMON FACTUAL ALLEGATIONS ..................................................25

        A.     Porsche's Manipulation of Emissions Testing...25

        B.     Defendants' Conduct Violates Emissions Testing ........................................................................28

        C.     Defendants' Fraudulently Concealed the Manipulation of Emissions Testing ..................31

        D.     Defendants' Misrepresentations Regarding Performance and Emissions of Class Vehicles ..33

        E.     Porsche's History of Manipulation ...................43

        F.     Tolling................................................................44

CLASS ACTION ALLEGATIONS ...........................................................45

CAUSES OF ACTION ...........................................................................51

        A.     Nationwide Claims.............................................52

              COUNT I COMMON LAW FRAUD ..............52

              COUNT II ..........................................................53

              VIOLATION OF Implied and Express Warranty, ..............................................................53

              Magnuson - Moss Warranty Act (15 U.S.C. §§ 2301, et seq.) ...........................................54

        B.     State Claims .......................................................56

              ALABAMA COUNT I Violation of Alabama Deceptive Trade Practices Act Ala. Code § 8-19-1, et seq. (On Behalf of the Alabama State Class) ..............................56

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ALABAMA COUNT II Breach of Express Warranty Ala. Code §§ 7-2-313 and 7-2A-210 (On Behalf of the Alabama State Class)......................................................59

ALABAMA COUNT III Violation of Implied Warranty of Merchantability  Ala. Code §§ 7-2-314 and 7-2A-212 (On Behalf of the Alabama State Class) ......................62

ALASKA COUNT I Violation of Alaska Unfair Trade Practices and Consumer Protection Act Alaska Stat. Ann. § 45.50.471 et seq. (On Behalf of the Alaska State Class) ...63

ALASKA COUNT II Breach of Express Warranty Alaska Stat. §§ 45.02.313 and 45.12.210 (On Behalf of the Alaska State Class)......................................................66

ALASKA COUNT III Breach of Implied Warranty of Merchantability Alaska Stat. §§ 45.02.314 and 45.12.212 (On Behalf of the Alaska State Class)...........................69

ARIZONA COUNT I: Violations of the Arizona Consumer Fraud Act Ariz. Rev. Stat. § 44-1521, et seq. (On Behalf of the Arizona State Class)..............................70

ARIZONA COUNT II: Breach of Express Warranty  Ariz. Rev. Stat. §§ 47-2313 and 47-2A210 (On Behalf of the Arizona State Class)......................................................73

ARIZONA COUNT III: Breach of Implied Warranty of Merchantability Ariz. Rev. Stat. §§ 47-2314 and 47-2A212 (On Behalf of the Arizona State Class).........76

ARKANSAS COUNT I: Violations of the Deceptive Trade Practices Act Ark. Code Ann. § 4-88-101 et seq. (On Behalf of the Arizona State Class)..............................77

ARKANSAS COUNT II: Breach of Express Warranty Ark Code Ann. §§ 4-2-313 and 4-2A-210 (On Behalf of the Arizona State Class)......................................................80

ARKANSAS COUNT II: Breach of Implied Warranty of Merchantability Ark Code Ann. §§ 4-2-314 and 4-2A-212 (On Behalf of the Arizona State Class).........83

CLASS ACTION COMPLAINT

CALIFORNIA COUNT I Violation of
California's Consumer Legal Remedies
Act,  Cal. Civ. Code § 1750, *et seq.*,
("CLRA") (On Behalf of the California
State Class)...............................................84

CALIFORNIA COUNT II Violations of the
California Unfair Competition Law, Cal.
Bus. & Prof. Code § 17200, *et seq.*
("UCL") (On Behalf of the California
State Class)...............................................86

CALIFORNIA COUNT III:  Violations of the
California False Advertising Law  Cal.
Civ. Code § 17500 et seq. (On Behalf of
the California Class)...............................90

CALIFORNIA COUNT IV: Breach of Express
Warranty Cal. Com. Code §§ 2313 and
10210 (On Behalf of the California Class)
...................................................................91

CALIFORNIA COUNT V: Breach of Implied
Warranty of Merchantability Cal. Com.
Code §§ 2314 and 10212 (On Behalf of
the California State Class).....................94

CALIFORNIA COUNT VI: Violation of Song-
Beverly Consumer Warranty Act, Breach
of Implied Warranty  Cal Civ. Code §
1790, *et seq.* (On Behalf of the California
State Class)...............................................95

CALIFORNIA COUNT VII: Violation of Song-
Beverly Consumer Warranty Act, Breach
of Express Warranty  Cal Civ. Code §
1790, *et seq.* (On Behalf of the California
State Class)...............................................97

CALIFORNIA COUNT VIII: Breach of Express
Emissions Warranties  Cal. Civ. Code §
1793.2, *et seq.* (On Behalf of the
California State Class.............................98

CALIFORNIA COUNT IX: Failure to
Recall/Retrofit  (On Behalf of the
California State Class.............................99

COLORADO COUNT I:  Violations of the
Colorado Consumer Protection Act Colo.
Rev. Stat. § 6-1-101, *et seq.*  (On Behalf
of the Colorado State Class)................100

3

COLORADO COUNT II:  Breach of Express Warranty Colo. Rev. Stat. §§ 4-2-313 and 4-2.5-210 (On Behalf of the Colorado State Class ............................................. 103

COLORADO COUNT III: Breach of Implied Warranty of Merchantability Colo. Rev. Stat. §§ 4-2-314 and 4-2.5-212 (On Behalf of the Colorado State Class) ................ 107

CONNECTICUT COUNT I: Violations of Connecticut Unlawful Trade Practice Act Conn. Gen. Stat. § 42-110a, et seq. (On Behalf of the Connecticut State Class). 108

CONNECTICUT COUNT II: Breach of Express Warranty Conn. Gen. Stat. Ann. § 42A-2-313 (On Behalf of the Connecticut State Class) .................................................. 110

CONNECTICUT COUNT III: Breach of Implied Warranty of Merchantability Conn. Gen. Stat. Ann. § 42A-2-314 (On Behalf of the Connecticut State Class) ...................... 114

DELAWARE COUNT I: Violations of the Delaware Consumer Fraud Act 6 Del. Code § 2513 et seq. (On Behalf of the Delaware State Class) ........................... 114

DELAWARE COUNT II: Breach of Express Warranty 6 Del. Code §§ 2-313 and 2A-210 (On Behalf of the Delaware State Class) .................................................. 117

DELAWARE COUNT III: Breach of Implied Warranty of Merchantability 6. Del. Code §§ 2-314 and 7-2A-212 (On Behalf of the Delaware State Class) ........................... 120

DISTRICT OF COLUMBIA COUNT I: Violations of the Consumer Protection Procedures Act D.C. Code § 28-3901 et seq. (On Behalf of the District of Columbia Class) .................................... 121

DISTRICT OF COLUMBIA COUNT II: Breach of Express Warranty D.C. Code §§ 28:2-313 and 28:2A-210 (On Behalf of the District of Columbia Class) ................. 124

DISTRICT OF COLUMBIA COUNT III: Breach of Implied Warranty of Merchantability D.C. Code §§ 28:2-314 and 28:2A-212

4

(On Behalf of the District of Columbia Class)......................................................128

FLORIDA COUNT I: Violations of the Florida Unfair & Deceptive Trade Practices Act Fla. Stat. § 501.201, et seq. (On Behalf of the Florida State Class) ........................129

FLORIDA COUNT II: Breach of Express Warranty F.S.A. §§ 672.313 and 680.21 (On Behalf of the Florida State Class) .131

FLORIDA COUNT III: Breach of Implied Warranty of Merchantability F.S.A. §§ 672.314 and 680.212 (On Behalf of the Florida State Class) ..............................134

GEORGIA COUNT I: Violations of Georgia's Fair Business Practices Act Ga. Code Ann. § 10-1-390 et seq. (On Behalf of the Georgia State Class)............................135

GEORGIA COUNT II: Violations of Georgia's Uniform Deceptive Trade Practices Act Ga. Code Ann. § 10-1-370 et seq. (On Behalf of the Georgia State Class).......138

GEORGIA COUNT III: Breach of Express Warranty Ga. Code Ann. §§ 11-2-313 and 11-2A-210 (On Behalf of the Georgia State Class)............................................140

GEORGIA COUNT IV: Breach of Implied Warranty of Merchantability Ga. Code Ann. §§ 11-2-314 and 11-2A-212 (On Behalf of the Georgia State Class).......143

HAWAII COUNT I: Unfair and Deceptive Acts in Violation of Hawaii Law Haw. Rev. Stat. § 480 et seq. (On Behalf of the Hawaii State Class) ..............................144

HAWAII COUNT II: Breach of Express Warranty Haw. Rev. Stat. §§ 490:2-313 and 490:2A-210 (On Behalf of the Hawaii State Class)............................................147

HAWAII COUNT III: Breach of Implied Warranty of Merchantability Haw. Rev. Stat. §§ 490:2-314 and 490:2A-212 (On Behalf of the Hawaii State Class) ........150

IDAHO COUNT I: Violations of the Idaho Consumer Protection Act Idaho Code §

5

48-601 et seq. (On Behalf of the Idaho
State Class)............................................151

IDAHO COUNT II: Breach of Express Warranty
Idaho Code §§ 28-2-313 and 28-12-210
(On Behalf of the Idaho State Class)....154

IDAHO COUNT III: Breach of Implied Warranty
of Merchantability Idaho Code §§ 28-2-
314 and 28-12-212 (On Behalf of the
Idaho State Class).................................157

ILLINOIS COUNT I: Violations of the Illinois
Consumer Fraud and Deceptive Business
Practices Act 815 ILCS 505/1, et seq. and
720 ILCS 295/1a (On Behalf of the
Illinois State Class) ..............................158

ILLINOIS COUNT II: Breach of Express
Warranty 810 Ill. Comp. Stat. §§ 5/2-313
and 5/2A-210 (On Behalf of the Illinois
State Class)............................................161

ILLINOIS COUNT III: Breach of Implied
Warranty of Merchantability 810 Ill.
Comp. Stat. §§ 5/2-314 and 5/2A-212 (On
Behalf of the Illinois State Class).........164

INDIANA COUNT I: Violations of the Indiana
Deceptive Consumer Sales Act Ind. Code
§ 24-5-0.5-3 (On Behalf of the Indiana
State Class)............................................165

INDIANA COUNT II: Breach of Express
Warranty Ind. Code §§ 26-1-3-313 and
26-1-2.1-2 (On Behalf of the Indiana State
Class).....................................................167

INDIANA COUNT III: Breach of Implied
Warranty of Merchantability Ind. Code §§
26-1-3-314 and 26-1-2.1-2 (On Behalf of
the Indiana State Class)........................170

IOWA COUNT I: Violations of the Private Right
of Action For Consumer Frauds Act Iowa
Code § 714h.1, et seq. (On Behalf of the
Iowa State Class)...................................171

IOWA COUNT II: Breach of Express Warranty
Iowa Code §§ 554.2313 and 554.13210
(On Behalf of the Iowa State Class).....174

IOWA COUNT III: Breach of Implied Warranty
of Merchantability Iowa Code §§

CLASS ACTION COMPLAINT

554.2314 and 554.13212 (On Behalf of the Iowa State Class)............................177

KANSAS COUNT I: Violations of the Kansas Consumer Protection Act 1Kan. Stat. Ann. § 50-623 et seq. (On Behalf of the Kansas State Class) ...............................178

KANSAS COUNT II: Breach of Express Warranty Kan. Stat. §§ 84-2-313 and 84-2A-210 (On Behalf of the Kansas State Class)....................................................181

KANSAS COUNT III: Breach of Implied Warranty of Merchantability Kan. Stat. §§ 84-2-314 and 84-2A-212 (On Behalf of the Kansas State Class) .........................184

KENTUCKY COUNT I: Violations of the Kentucky Consumer Protection Act Ky. Rev. Stat. Ann. § 367.110 et seq. (On Behalf of the Kentucky State Class) ....185

KENTUCKY COUNT II: Breach of Express Warranty Ky. Rev. Stat. §§ 335.2-313 and 355.2A-2 (On Behalf of the Kentucky State Class)............................................188

KENTUCKY COUNT III: Breach of Implied Warranty of Merchantability Ky. Rev. Stat. §§ 335.2-314 and 355.2A-2 (On Behalf of the Kentucky State Class) ....191

LOUISIANA COUNT I: Violations of the Louisiana Unfair Trade Practices and Consumer Protection Law La. Stat. Ann. § 51:1401 et seq. (On Behalf of the Louisiana State Class)..........................193

LOUISIANA COUNT II: Breach of Implied Warranty of Merchantability/ Warranty Against Prohibitory Defects La. Civ. Code Art. 2520, 25 (On Behalf of the Louisiana State Class)............................................195

MAINE COUNT I: Violations of the Maine Unfair Trade Practices Act  Me. Rev. Stat. Ann. Tit. 5, § 205-A *et seq.* On Behalf of the Maine State Class).........................196

MAINE COUNT II: Breach of Express Warranty Me. Rev. Stat. Tit. 11 §§ 2-313 and 2-1210 (On Behalf of the Maine State Class) ..............................................199

7

MAINE COUNT III: Breach of Implied Warranty of Merchantability Me. Rev. Stat. Tit. 11 §§ 2-314 and 2-1212 (On Behalf of the Maine State Class) ...............................202

MARYLAND COUNT I: Violations of the Maryland Consumer Protection Act Md. Code Com. Law § 13-101 et seq. (On Behalf of the Maryland State Class) ....203

MARYLAND COUNT II: Maryland Lemon Law Md. Code Com. Law § 14-1501 et seq. (On Behalf of the Maryland State Class) ...............................................................205

MARYLAND COUNT III: Breach of Express Warranty Md. Code Com. Law §§ 2-313 and 2a-210 (On Behalf of the Maryland State Class)...........................................206

MARYLAND COUNT IV: Breach of Implied Warranty of Merchantability Md. Code Com. Law §§ 2-314 and 2a-212 (On Behalf of the Maryland State Class) ....210

MASSACHUSETTS COUNT I: Deceptive Acts or Practices Prohibited by Massachusetts Law Mass. Gen. Laws Ch. 93a, § 1, et seq. (On Behalf of the Massachusetts State Class)...........................................211

MASSACHUSETTS COUNT II: Massachusetts Lemon Law Mass. Gen. Laws Ch. 90, § 7N1/2(1) (On Behalf of the Massachusetts State Class)...........................................214

MASSACHUSETTS COUNT III: Breach of Express Warranty Mass. Gen. Laws c. 106 §§ 2-313 and 2A-2 (On Behalf of the Massachusetts State Class)...................215

MASSACHUSETTS COUNT IV: Breach of Implied Warranty of Merchantability Mass. Gen. Laws c. 106 §§ 2-314 and 2A-2 (On Behalf of the Massachusetts State Class).....................................................218

MICHIGAN COUNT I: Violations of the Michigan Consumer Protection Act Mich. Comp. Laws § 445.903 et seq. (On Behalf of the Michigan State Class) ................219

MICHIGAN COUNT II: Breach of Express Warranty Mich. Comp. Laws §§ 440.2313

CLASS ACTION COMPLAINT

and 440.2860 (On Behalf of the Michigan State Class)............................................222

MICHIGAN COUNT III: Breach of Implied Warranty of Merchantability Mich. Comp. Laws §§ 440.2314 and 440.2860 (On Behalf of the Michigan State Class).....226

MINNESOTA COUNT I: Violations of the Minnesota Prevention of Consumer Fraud Act Minn. Stat. § 325F.68 et seq. (On Behalf of the Minnesota State Class)...227

MINNESOTA COUNT II: Violations of the Minnesota Uniform Deceptive Trade Practices Act Minn. Stat. § 325D.43-48 et seq. (On Behalf of the Minnesota State Class)...................................................229

MINNESOTA COUNT III: Breach of Express Warranty Minn. Stat. §§ 336.2-313 and 336.2A-210 (On Behalf of the Minnesota State Class)............................................232

MINNESOTA COUNT IV: Breach of Implied Warranty of Merchantability Minn. Stat. §§ 336.2-314 and 336.2A-212 (On Behalf of the Minnesota State Class)...............236

MISSISSIPPI COUNT I: Violations of Mississippi Consumer Protection Act Miss. Code. Ann. § 75-24-1, et seq. (On Behalf of the Mississippi State Class)..237

MISSISSIPPI COUNT II: Breach of Express Warranty Miss. Code §§ 75-2-313 and 75-2A-210 (On Behalf of the Mississippi State Class)............................................239

MISSISSIPPI COUNT III: Breach of Implied Warranty of Merchantability Miss. Code §§ 75-2-314 and 75-2A-212 (On Behalf of the Mississippi State Class)..................243

MISSOURI COUNT I: Violations of the Missouri Merchandising Practices Act Mo. Rev. Stat. § 407.010 et seq. (On Behalf of the Missouri State Class)......244

MISSOURI COUNT II: Breach of Express Warranty Mo. Stat. §§ 400.2-313 and 400.2A-2 (On Behalf of the Missouri State Class)............................................246

9

MISSOURI COUNT III: Breach of Implied
    Warranty of Merchantability Mo. Stat. §§
    400.2-314 and 400.2A-2 (On Behalf of
    the Missouri State Class)......................249

MONTANA COUNT I: Violations of the
    Montana Unfair Trade Practices and
    Consumer Protection Act of 1973 Mont.
    Code Ann. § 30-14-101 et seq. (On Behalf
    of the Montana State Class) ................251

MONTANA COUNT II: Breach of Express
    Warranty Mont. Code §§ 30-2-313 and
    30-2A-210 (On Behalf of the Montana
    State Class)..........................................254

MONTANA COUNT III: Breach of Implied
    Warranty of Merchantability Mont. Code
    §§ 30-2-314 and 30-2A-212 (On Behalf of
    the Montana State Class)......................257

NEBRASKA COUNT I: Violations of the
    Nebraska Consumer Protection Act Neb.
    Rev. Stat. § 59-1601 et seq.  (On Behalf
    of the Nebraska State Class) ................259

NEBRASKA COUNT II: Breach of Express
    Warranty Neb. Rev. St. U.C.C. §§ 2-313
    and 2A-2 (On Behalf of the Nebraska
    State Class)..........................................261

NEBRASKA COUNT III: Breach of Implied
    Warranty of Merchantability Neb. Rev.
    St. U.C.C. §§ 2-314 and 2A-212 (On
    Behalf of the Nebraska State Class).....264

NEVADA COUNT I: Violations of the Nevada
    Deceptive Trade Practices Act Nev. Rev.
    Stat. § 598.0903 et seq. (On Behalf of the
    Nevada State Class) .............................268

NEVADA COUNT II: Breach of Express
    Warranty N.R.S. §§ 104.2313 and
    104A.2210 (On Behalf of the Nevada
    State Class)..........................................270

NEVADA COUNT III: Breach of Implied
    Warranty of Merchantability N.R.S. §§
    104.2314 and 104A.2212 (On Behalf of
    the Nevada State Class)........................273

NEW HAMPSHIRE COUNT I: Violations of the
    New Hampshire Consumer Protection Act
    N.H. Rev. Stat. § 358-A:1 et seq. (On

Behalf of the New Hampshire State Class)
............................................................274

NEW HAMPSHIRE COUNT II: Breach of
Express Warranty N.H. Rev. Stat. §§ 382-
A:2-313 and 382-A:2A-210 (On Behalf of
the New Hampshire State Class ...........276

NEW HAMPSHIRE COUNT III: Breach of
Implied Warranty of Merchantability N.H.
Rev. Stat. §§ 382-A:2-314 and 382-A:2A-
212 (On Behalf of the New Hampshire
State Class)...........................................280

NEW JERSEY COUNT I: Violations of the New
Jersey Consumer Fraud Act N.J. Stat.
Ann. § 56:8-1 et seq. (On Behalf of the
New Jersey State Class) .......................281

NEW JERSEY COUNT II: Breach of Express
Warranty N.J.S. 12A:2-313 and 2A-210
(On Behalf of the New Jersey State Class)
............................................................283

NEW JERSEY COUNT III: Breach of Implied
Warranty N.J.S. 12A:2-314 and 2A-2 (On
Behalf of the New Jersey State Class) .287

NEW MEXICO COUNT I: Violations of the
New Mexico Unfair Trade Practices Act
N.M. Stat. Ann. § 57-12-1 et seq. (On
Behalf of the New Mexico State Class)
............................................................288

NEW MEXICO COUNT II: Breach of Express
Warranty N.M. Stat. §§ 55-2-313 and 55-
2A-210 (On Behalf of the New Mexico
State Class)...........................................290

NEW MEXICO COUNT III: Breach of Implied
Warranty of Merchantability N.M. Stat.
§§ 55-2-314 and 55-2A-212 (On Behalf of
the New Mexico State Class)...............294

NEW YORK COUNT I: Violations of the New
York General Business Law § 349 N.Y.
Gen. Bus. Law § 349 (On Behalf of the
New York State Class).........................295

NEW YORK COUNT II: Violations of the New
York General Business Law § 350 N.Y.
Gen. Bus. Law § 350 (On Behalf of the
New York State Class).........................297

11

NEW YORK COUNT III: Breach of Express Warranty N.Y. U.C.C. Law §§ 2-313 and 2A-210 (On Behalf of the New York State Class).....................................................299

NEW YORK COUNT IV: Breach of Implied Warranty of Merchantability N.Y. U.C.C. Law §§ 2-314 and 2A-212 (On Behalf of the New York State Class)...................302

NORTH CAROLINA COUNT I: Violations of the North Carolina Unfair and Deceptive Acts and Practices Act N.C. Gen. Stat. § 75-1.1 et seq. (On Behalf of the North Carolina State Class)............................303

NORTH CAROLINA COUNT II: Breach of Express Warranty N.C.G.S.A. §§ 25-2-313 and 252A-210 (On Behalf of the North Carolina State Class)..................306

NORTH CAROLINA COUNT III: Breach of Implied Warranty of Merchantability N.C.G.S.A. §§ 25-2-314 and 252A-212 (On Behalf of the North Carolina State Class).....................................................309

NORTH DAKOTA COUNT I: Violations of the North Dakota Consumer Fraud Act N.D. Cent. Code § 51-15-02 (On Behalf of the North Dakota State Class)....................310

NORTH DAKOTA COUNT II: Breach of Express Warranty N.D. Cent. Code §§ 41-02-30 and 41-02.1-19 (On Behalf of the North Dakota State Class)....................313

NORTH DAKOTA COUNT III: Breach of Implied Warranty of Merchantability N.D. Cent. Code §§ 41-02-31 and 41-02.1-21 (On Behalf of the North Dakota State Class).....................................................316

OHIO COUNT I: Violations of the Ohio Consumer Sales Practices Act Ohio Rev. Code § 1345.01 et seq. (On Behalf of the Ohio State Class)..................................317

OHIO COUNT II: Violations of the Ohio Deceptive Trade Practices Act Ohio Rev. Code § 4165.01 et seq. (On Behalf of the Ohio State Class)..................................321

OHIO COUNT III: Breach of Express Warranty Ohio. Rev. Code § 1302.26, et seq. / U.C.C. § 2-313 (On Behalf of the Ohio State Class)...........................................323

OHIO COUNT IV: Breach of Implied Warranty of Merchantability Ohio Rev. Code Ann. §§ 1302.27 and 1310.19 (On Behalf of the Ohio State Class)..................................326

OKLAHOMA COUNT I: Violations of the Oklahoma Consumer Protection Act Okla. Stat. Tit. 15 § 751 et seq. (On Behalf of the Oklahoma State Class) ...................327

OKLAHOMA COUNT II: Breach of Express Warranty Okla. Stat. Tit. 12 §§ 2-313 and 2A-210 (On Behalf of the Oklahoma State Class)....................................................330

OKLAHOMA COUNT III: Breach of Implied Warranty of Merchantability Okla. Stat. Tit. 12A §§ 2-314 and 2A-212 (On Behalf of the Oklahoma State Class)...............333

OREGON COUNT I: Violations of the Oregon Unlawful Trade Practices Act Or. Rev. Stat. § 646.605, et seq. (On Behalf of the Oregon State Class)..............................334

OREGON COUNT II: Breach of Express Warranty Or. Rev. Stat. §§ 72.3130 and 72A.2100 (On Behalf of the Oregon State Class)....................................................337

OREGON COUNT III: Breach of Implied Warranty of Merchantability Or. Rev. Stat. §§ 72.3140 and 72A.2120 (On Behalf of the Oregon State Class)........340

PENNSYLVANIA COUNT I:  Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law  73 P.S. § 201-1 et seq.  (On Behalf of the Pennsylvania State Class)...........................................341

PENNSYLVANIA COUNT II: Breach of Express Warranty 13. Pa. Cons. Stat. §§ 2313 and 2A210 (On Behalf of the Pennsylvania State Class) ...................343

PENNSYLVANIA COUNT III:  Breach of Implied Warranty of Merchantability  13. Pa. Cons. Stat. §§ 2314 and 2A212 (On

13

Behalf of the Pennsylvania State Class)
..............................................................347

RHODE ISLAND COUNT I: Violations of the
Rhode Island Deceptive Trade Practices
and Consumer Protection Law R.I. Gen.
Laws § 6-13.1 et seq. (On Behalf of the
Rhode Island State Class)....................348

RHODE ISLAND COUNT II: Breach of Express
Warranty 6A R.I. Gen. Laws §§ 6A-2-313
and 6A-2.1-210 (On Behalf of the Rhode
Island State Class)................................351

RHODE ISLAND COUNT III: Breach of
Implied Warranty of Merchantability 6A
R.I. Gen. Laws §§ 6A-2-314 and 6A-2.1-
212 (On Behalf of the Rhode Island State
Class)...................................................354

SOUTH CAROLINA COUNT I: Violations of
the South Carolina Unfair Trade Practices
Act S.C. Code Ann. § 39-5-10 et seq. (On
Behalf of the South Carolina State Class)
..............................................................355

SOUTH CAROLINA COUNT II: Violations of
the South Carolina Regulation of
Manufacturers, Distributors, & Dealers
Act S.C. Code Ann. § 56-15-10 et seq.
(On Behalf of the South Carolina State
Class)...................................................357

SOUTH CAROLINA COUNT III: Breach of
Express Warranty S.C. Code §§ 36-2-313
and 36-2A-210 (On Behalf of the South
Carolina State Class)............................359

SOUTH CAROLINA COUNT IV: Breach of
Implied Warranty of Merchantability S.C.
Code §§ 36-2-314 and 36-2A-212 (On
Behalf of the South Carolina State Class)
..............................................................362

SOUTH DAKOTA COUNT I: Violations of the
South Dakota Deceptive Trade Practices
and Consumer Protection Law S.D.
Codified Laws § 37-24-6 (On Behalf of
the South Dakota State Class)..............363

SOUTH DAKOTA COUNT II: Breach of
Express Warranty S.D. Codified Laws §§
57A-2-313 and 57A-2A-210 (On Behalf of
the South Dakota State Class)..............365

CLASS ACTION COMPLAINT

SOUTH DAKOTA COUNT III: Breach of
Implied Warranty of Merchantability S.D.
Codified Laws §§ 57A-2-314 and 57-2A-
212 (On Behalf of the South Dakota State
Class)......................................................369

TENNESSEE COUNT I: Violations of the
Tennessee Consumer Protection Act
Tenn. Code Ann. § 47-18-101 et seq. (On
Behalf of the Tennessee State Class) ...370

TENNESSEE COUNT II: Breach of Express
Warranty Tenn. Code Ann. §§ 47-2-313
and 47-2A-210 (On Behalf of the
Tennessee State Class).........................372

TENNESSEE COUNT III: Breach of Implied
Warranty of Merchantability Tenn. Code
Ann. §§ 47-2-314 and 47-2A-212 (On
Behalf of the Tennessee State Class) ...376

TEXAS COUNT I: Violations of the Deceptive
Trade Practices Act Tex. Bus. & Com.
Code § 17.41 et seq. (On Behalf of the
Texas State Class) ................................377

TEXAS COUNT II: Breach of Express Warranty
Tex. Bus. & Com. Code §§ 2.313 and
2A.210 (On Behalf of the Texas State
Class)....................................................380

TEXAS COUNT III: Breach of Implied Warranty
of Merchantability Tex. Bus. & Com.
Code §§ 2.314 and 2A.212 (On Behalf of
the Texas State Class) ..........................383

UTAH COUNT I: Violations of the Utah
Consumer Sales Practices Act Utah Code
Ann. § 13-11-1 et seq. (On Behalf of the
Utah State Class)..................................384

UTAH COUNT II: Breach of Express Warranty
Utah Code §§ 70A-2-313 and 70-2A-210
(On Behalf of the Utah State Class).....386

UTAH COUNT III: Breach of Implied Warranty
of Merchantability Utah Code §§ 70A-2-
314 and 70-2A-212 (On Behalf of the
Utah State Class)..................................390

VERMONT COUNT I: Violations of the
Vermont Consumer Fraud Act Vt. Stat.
Ann. Tit. 9, § 2451 et seq. (On Behalf of
the Vermont State Class)......................391

CLASS ACTION COMPLAINT

VERMONT COUNT II: Vermont Lemon Law Vt. Stat. Tit. 9, § 4170 et seq. (On Behalf of the Vermont State Class) .................393

VERMONT COUNT III: Breach of Express Warranty Vt. Stat. Tit. 9, §§ 2-313 and 2A-210 (On Behalf of the Vermont State Class).....................................................395

VERMONT COUNT IV: Breach of Implied Warranty of Merchantability Vt. Stat. Tit. 9, §§ 2-314 and 2A-212  (On Behalf of the Vermont State Class).......................398

VIRGINIA COUNT I: Violations of the Virginia Consumer Protection Act Va. Code Ann. § 59.1-196 et seq. (On Behalf of the Virginia State Class) ............................399

VIRGINIA COUNT II: Breach of Express Warranty Va. Code §§ 8.2-313 and 8.2A-210 (On Behalf of the Virginia State Class).....................................................402

VIRGINIA COUNT III: Breach of Implied Warranty of Merchantability Va. Code §§ 8.2-314 and 8.2A-212 (On Behalf of the Virginia State Class) ............................405

WASHINGTON STATE COUNT I: Violations of the Washington Consumer Protection Act Wash. Rev. Code Ann. § 19.86.010 et seq. (On Behalf of the Washington State Class)....................................................406

WASHINGTON STATE COUNT II: Washington Lemon Law Wash. Rev. Code § 19.118.005 et seq. (On Behalf of the Washington State Class).................408

WASHINGTON STATE COUNT III:  Breach of Express Warranty Wash Rev. Code §§ 62A.2-313 and 62A.2A-2 (On Behalf of the Washington State Class).................410

WASHINGTON STATE COUNT IV:  Breach of Implied Warranty of Merchantability Wash Rev. Code §§ 62A.2-314 and 62A.2A-2 (On Behalf of the Washington State Class)...........................413

WEST VIRGINIA COUNT I: Violations of the West Virginia Consumer Credit and Protection Act W. Va. Code § 46A-1-101

CLASS ACTION COMPLAINT

et seq. (On Behalf of the West Virginia
State Class)...........................................414

WEST VIRGINIA COUNT II: West Virginia
Lemon Law 1W. Va. Code § 46A-6A-1 et
seq. (On Behalf of the West Virginia State
Class)....................................................417

WEST VIRGINIA COUNT III:  Breach of
Express Warranty W. Va. Code §§ 46-2-
313 and 46-2A-2 (On Behalf of the West
Virginia State Class) ...........................420

WEST VIRGINIA COUNT IV: Breach of
Implied Warranty of Merchantability 1W.
Va. Code §§ 46-2-314 and 46-2A-2 (On
Behalf of the West Virginia State Class)
...........................................................423

WISCONSIN COUNT I: Violations of the
Wisconsin Deceptive Trade Practices Act
Wis. Stat. § 100.18 et seq. (On Behalf of
the Wisconsin State Class)...................424

WISCONSIN COUNT II: Breach of Express
Warranty Wis. Stat. §§ 402.313 and
411.210 (On Behalf of the Wisconsin
State Class)...........................................427

WISCONSIN COUNT III: Breach of Implied
Warranty of Merchantability Wis. Stat. §§
402.314 and 411.212 (On Behalf of the
Wisconsin State Class)........................430

WYOMING COUNT I: Violations of the
Wyoming Consumer Protection Act,
2Wyo. Stat. § 40-12-101, et seq. (On
Behalf of the Wyoming State Class)....431

WYOMING COUNT II: Breach of Express
Warranty Wyo. Stat. §§ 34.1-2-313 and
34.1-.2A-2 (On Behalf of the Wyoming
State Class)...........................................434

WYOMING COUNT III: Breach of Implied
Warranty of Merchantability Wyo. Stat.
§§ 34.1-2-314 and 34.1-.2A-2 (On Behalf
of the Wyoming State Class) ...............437

PRAYER FOR RELIEF.................................................438

DEMAND FOR JURY TRIAL.........................................439

Plaintiff Richard Schubert, ("Plaintiffs"), individually and on behalf of all others similarly situated, brings this class action against Porsche Cars North America Inc. ("Porsche North America), Dr. Ing. h.c. F. Porsche AG ("Porsche AG") (together, "Porsche"), and Volkswagen AG (collectively, "Defendants"), and allege as follows based on investigation of counsel and information and belief:

## NATURE OF THE CASE

1.      This action arises out of the discovery of yet another emissions-cheating scheme perpetrated by a manufacturer within the Volkswagen corporate family, nearly five years after the initial revelations of the "Clean Diesel" matter. In September of 2015, the newly anointed CEO of Volkswagen Group AG, Matthias Müller, announced in a meeting of German shareholders that in the course of investigating emissions noncompliance within the entire corporate family, up to 800,000 vehicles—including gas vehicles—had been identified as being out of compliance with CO2 emissions regulations.[1] This significant revelation caused a stir, given that under German law manufacturers' taxes were calculated based on CO2 emissions, potentially triggering a tax liability of roughly 2 billion Euro. But just a few months later, the focus of the investigation swung squarely to the correction of the diesel vehicles, largely those manufactured by Volkswagen and Audi, and the NOx investigation.[2] Five years later, it has now been revealed that Porsche was in fact engaged in a massive CO2 emissions-cheating scheme in gas vehicles under Mr. Müller, who was Chairman of Porsche before taking over the reins of Volkswagen AG. That is, the Porsche scheme was ongoing even as Defendants and Audi admitted to NOx emissions cheating in 580,000 vehicles sold in the United States (the "Clean Diesel" scheme). Upon information and belief, the scope of Defendants' scheme has yet to be fully revealed.

---

[1] *Clarification moving forward: internal investigations at Volkswagen identify irregularities in CO2 levels*, Volkswagen (Nov. 3, 2015) https://www.volkswagen-newsroom.com/en/press-releases/clarification-moving-forward-internal-investigations-at-volkswagen-identify-irregularities-in-co2-levels-553.
[2] Rivista Automobilismo, *Dieselgate Volkswagen Press Conference Dec 2015*, YouTube (Dec. 11, 2015) https://www.youtube.com/watch?v=h9Q9vIzJrVQ.

2.      New revelations out of Germany show that Defendants have manipulated both hardware and software in Porsche vehicles sold in the United States to evade emissions requirements, again for model years 2009 through 2016. The German regulator KraftfahrtBundesAmt (the "KBA"), which is Germany's Federal Transport Authority, is investigating this new emissions-fraud scheme in Germany. Counsel's investigation confirms that as of today this investigation is ongoing. Expert analysis has confirmed the existence of these emissions cheating schemes in some of the Class Vehicles.[3] And notably, the KBA has refused to issue certifications of conformity for certain Porsche vehicles, a significant and unusual act.[4]

3.      Revelation of this scheme follows on the heels of counsel's investigation of the Audi CO2 emissions-manipulation scheme, where engineers placed vehicles in so-called "Warm Up" mode during testing. *See e.g.* Amended Consolidated Complaint, *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No MDL 2673 CRB (JSC), Aug 30, 2019, Dkt 6628.

4.      The emissions manipulation scheme addressed in this action involves at least three unlawful acts which reduced emissions during testing so that Porsche could deliver to customers the powerful handling that they seek in the luxury vehicles at issue while escaping emissions regulations. First, Defendants manipulated both hardware and software in the vehicles tested to determine compliance with federal and state environmental emissions standards. Remarkably, Porsche physically installed different gear sizes in the drivetrains of test vehicles, designed to make the vehicles less dynamic only during testing, but which also had the effect of reducing emissions during testing. Porsche employees have confirmed that the company used

---

[3] The "Class Vehicles" include the Porsche Panamera model years 2010 to 2016; Porsche 911 model years 2009 to 2016; Porsche Cayman and Cayman S, model years 2009 to 2016; Porsche Boxster and Boxster S, model years 2009 to 2016; and Porsche Cayenne, model years 2016 to 2017.

[4] Simon Hage and Gerard Trauffetter, *Has Porsche Fiddled with the 911*, Spiegel (August 28, 2020), https://www.spiegel.de/wirtschaft/unternehmen/porsche-soll-auch-bei-benzinern-getricksthaben-a-00000000-0002-0001-0000-000172728836 (German language article).

different gears in the transmissions and drivetrains of test vehicles than those marketed and sold to consumers. As a result, vehicles marketed and sold to consumers have higher-than-advertised emissions and consequently, lower fuel economy. The scope of Defendants' deception is still being uncovered, and it remains unknown whether Porsche used other defeat devices to manipulate emissions testing.

5. Second, Defendants altered the software in the electronic control units ("ECU") to cause the vehicles to use less fuel and emit less $CO_2$ during regulatory testing than under normal conditions by sensing testing conditions, Porsche's management was aware of this manipulation as early as November 2015 but they concealed their manipulation even as investigation of the Clean Diesel scandal unfolded.

6. Third, Defendants' manipulated the performance of "Sport+" (or "Sport Plus") driving mode during the emissions testing of Class Vehicles so that the emissions were artificially throttled to normal levels. Porsche has since confessed that during the regulatory test cycles, the statutory emissions limits for the emissions of nitrogen oxides (NOx) could not be met using the Sport Plus mode meaning that the vehicles would exceed emissions limits when used in Sports Plus mode—rendering them illegal to import and sell in the U.S.

7. This brazen scheme is being investigated not only by the KBA, but also by the German prosecutor's office in Stuttgart, which is pursuing criminal charges against at least four individuals. Porsche has also admitted the scheme to U.S. regulators.

8. Porsche marketed and advertised the Class Vehicles as providing high power with low-to-standard emissions even during the Clean Diesel scandal for the purpose of perpetrating yet another fraud on the American market. However, the powerful performance of Class Vehicles that Porsche marketed to consumers could not have been obtained from the vehicles tested by regulators. Instead, the vehicles tested would have lower performance since Porsche manipulated these vehicles to achieve lower emissions. Based upon expert analysis, it seems highly likely that any required emissions "fix" of these vehicles will diminish the torque and handling of the Class Vehicles.

9.      Plaintiffs bring this action to redress the harm to consumers caused by Defendants' manipulation of emissions testing and deceitful marketing. The vehicles that consumers purchased and leased were not as advertised by Porsche. Those vehicles had had wrongfully obtained emissions certification from federal and state regulators and higher emissions than Porsche disclosed.

10.     Plaintiffs have suffered economic damages as a result of Defendants' deceit. Porsche misled Plaintiffs to buy and lease illegal vehicles and to pay a premium for performance that the vehicles cannot legally achieve. Porsche will likely be required to fix the emissions problem, which fix will hurt vehicle performance. Regardless, Plaintiffs would not have bought these cars or would have paid less for them if they knew that they couldn't legally achieve the advertised performance levels. Plaintiffs own or lease Class Vehicles that should never have been placed in the stream of commerce and are now diminished in value as a result of Defendants' fraudulent concealment and misrepresentations regarding the power, performance, and emissions compliance of Class Vehicles.

11.     On behalf of themselves, the Nationwide Class, and the State Classes, Plaintiffs hereby bring this action for fraudulent concealment, and for violations of the state and federal statutes. Plaintiffs seek damages, and injunctive relief to redress Defendants' violations.

**PARTIES**

**A.    Plaintiff**

12.     **Plaintiff Richard Schubert** is a citizen and resident of California domiciled in Winters, California. Around October 2011, Plaintiff Schubert purchased a new 2012 Panamera 4 at Porsche Rocklin in Rocklin, California, for approximately $100,000.

13.     Before purchasing the vehicle, Mr. Schubert saw Defendants' standard advertisements and marketing materials, including content on Porsche's website, in promotional brochures, and the vehicle's Monroney sticker. None of these standard materials disclosed the fact that the vehicle emitted levels of pollutants above the lawful level, that its advertised fuel economy was overstated, nor did these materials disclose Defendants' manipulation of

emissions testing. Mr. Schubert selected and ultimately purchased his vehicle, in part, because of the promised emissions, fuel economy, and performance, as communicated through advertisements and representations made by Defendants. At the time of purchase, Plaintiff was unaware of the Defendants' scheme, including the manipulation of the emissions ratings.

14.     Unbeknownst to Mr. Schubert, at the time of acquisition, the vehicle emissions were higher than advertised. Consequently, the vehicle could not deliver the advertised emissions, high performance, and fuel economy–and its sale was illegal in the U.S. Defendants unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, and selling to Plaintiff a vehicle without proper emission controls has caused him out-of-pocket loss, diminished vehicle value, future attempted repairs, and decreased performance. Mr. Schubert has also paid more for fuel during his possession of the vehicle than he would have had it achieved the represented fuel economy, and he has been inconvenienced by having to refill the fuel tank more often. Mr. Schubert purchased his vehicle on the reasonable, but mistaken, belief that his vehicle had certain emissions, fuel economy, and performance, complied with United States and state emissions standards, was properly U.S. Environmental Protection Agency ("EPA") and California Air Resource Board ("CARB") certified, and would retain all of its operating characteristics throughout its useful life.

15.     Had Defendants disclosed the emissions manipulation, and the fact that Mr. Schubert's vehicle emitted unlawfully high levels of pollutants, Mr. Schubert would not have purchased a Panamera or would have paid substantially less for it.

**B.     Defendants**

16.     **Defendant Porsche Cars North America, Inc.** ("Porsche North America"), is incorporated in Delaware and maintains its principal place of business in One Porsche Drive, Atlanta, Georgia. Porsche North America is a wholly-owned subsidiary of Porsche AG. At all times relevant herein, Porsche AG engaged in the business of manufacturing, marketing, warranting, distributing, selling, and leasing automobiles, including the Class Vehicles, in California and throughout the United States.

17.    **Defendant Dr. Ing. H.c. F. Porsche AG** ("Porsche AG") is a German corporation with its principle place of business in Stuttgart, Germany. Porsche AG designs, develops, manufactures, and sells Class Vehicles. Porsche AG is a wholly-owned subsidiary of Volkswagen AG.

18.    Porsche AG engineered, designed, developed, manufactured, and installed Class Vehicles and exported these vehicles with the knowledge and understanding that they would be sold throughout the United States. On information and belief, Porsche AG also reviewed and approved the marketing and advertising campaigns designed to sell the Porsche-branded Class Vehicles

19.    **Defendant Volkswagen AG** ("VW AG") is a German corporation with its principle place of business in Wolfsburg, Germany. VW AG is one of the largest automobile manufacturers in the world, and it is in the business of designing, developing, manufacture ring, and selling automobiles. VW AG is the parent of Porsche AG. VW AG, with the assistance of Porsche engineered, designed, developed, manufactured, and installed the software on the Class Vehicles and exported these vehicles with the knowledge and understanding that they would be sold throughout the United States to consumers. VW AG also developed, reviewed, and approved the marketing and advertising campaigned designed to drive sales of Class Vehicles.

20.    At all times relevant to this action, VW AG manufactured, distributed, sold, leased and warranted the Class Vehicles under the Porsche brand names throughout the United States. VW AG and/or its parents, affiliates and agents developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Class Vehicles.

## JURISDICTION AND VENUE

21.    This Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332, because this is a proposed class action in which there are at least 100 Class members, the combined claims of Class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs, and Plaintiffs and Defendants are domiciled in different states.

22.    Pursuant to 28 U.S.C. § 1331, this Court also has original subject matter jurisdiction over the claims that arise under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.

23.    This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

24.    This Court has personal jurisdiction over Porsche North America because it regularly conducts business throughout California, including within this judicial District, and has sufficient minimum contacts in the state to render the exercise of jurisdiction by this Court proper and necessary.

25.    This Court has personal jurisdiction over Porsche AG because it has purposefully availed itself of this forum by directing its agents and distributors, Porsche Cars North America, to act here.

26.    This Court has personal jurisdiction over VW AG because it has purposefully availed itself of this forum by directing its agent and distributor, Porsche AG and Porsche Cars North America, to act here.

27.    Venue is proper in this District because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here, and Defendants caused harm to Class members residing within this judicial District.

## INTRADISTRICT ASSIGNMENT

Pursuant to Civil Local Rule 3-2(d), this action may be assigned to the San Francisco Division, because Defendants conduct substantial business in the counties served by this Division, have marketed, advertised, sold and leased the Class Vehicles in those counties, and have caused harm to Class members residing in those counties.

This Complaint is related to the Volkswagen "Clean Diesel" MDL No. 267 proceedings—and specifically the "Audi CO2 Cases" within those MDL proceedings—which have been consolidated in the San Francisco Division of this District before Judge Charles R. Breyer. As noted above and described further herein, the fraud alleged here involves many of

CLASS ACTION COMPLAINT

1   the same players, implementing similar schemes, with nearly identical objectives, as the "Clean

2   Diesel" scandal.

3                              **COMMON FACTUAL ALLEGATIONS**

4   **A.      Porsche's Manipulation of Emissions Testing**

5         28.     Defendants' unlawful manipulation of vehicles' to cheat emissions testing

6   included the a) manipulation of drivetrains of vehicles tested ("Drivetrain Manipulation"); b)

7   the installation of software designed to cheat emissions testing in the ECUs of Class Vehicles

8   ("ECU Manipulation"); and c) the manipulation of emissions testing for Vehicles in Sports

9   Mode ("Sport Plus Mode Manipulation").

10                        **a.   Porsche's Drivetrain Manipulation**

11        29.     Porsche manipulated the drivetrains in vehicles tested by regulators to obtain

12  better fuel economy and lower emissions than the vehicles that were marketed and made

13  available to consumers.

14        30.     The drivetrain is a "group of parts that interact with the engine to move the

15  wheels and different parts of the vehicle to drive it into motion."[5] The drivetrain parts include

16  the transmission, differential, driveshaft, axles, CV joints, and the wheels.

17        31.     A vehicle's differential determines the number of times the drive shaft will

18  rotate. Manipulating the ratio between the gears on the drive shaft and the gears on the axle

19  will alter the performance of the vehicle and change the vehicle's fuel economy and emissions.

20  A short gear ratio in the differential of the drivetrain allows for higher acceleration rates, with

21  higher emissions, and lower fuel economy. Whereas, the fuel consumption for a long gear ratio

22  would be lower but the vehicle would be less powerful and responsive.

23        32.     To deceive regulators into approving vehicles for sale in the U.S., Porsche

24  installed different gear sizes in the transmission of test vehicles, making them "less dynamic

25  and reducing fuel consumption and $CO_2$ emissions."[6] Porsche's internal documents show that

26

27  [5] *Drivetrain and Powertrain –Know the Differences*, Porsche,
    https://www.porscheelpaso.com/powertrain-vs-drivetrain/.

28  [6] *Id.*

the drivetrain for vehicles tested differed materially from those marketed to consumers.[7]
Porsche employees have confirmed that the company manipulated the gears in vehicles tested.

33.    Porsche's manipulation of the drivetrain caused tested vehicles to emit less $CO_2$ and obtain better fuel economy than vehicles marketed to consumers. As a result, Porsche deceived consumers to receiving a vehicle with higher-than-advertised emissions and lower fuel economy.

**b.  Porsche's ECU Manipulation of Class Vehicles**

34.    According to publicly available information, Porsche equipped vehicles with software in the vehicle's ECUs that cause the vehicle to respond differently under testing conditions. The installed software was designed to influence the emission of carbon dioxide when vehicles were tested than in real-world driving.

35.    The software at issue influences the emission of carbon dioxide when the vehicle is on the test bench. Porsche's special software is as a defeat device, as defined by the EPA, since it "reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use." 40 CFR § 86.094-2. The use of such software violates federal law. 40 CFR § 86.1809-10 (prohibiting the use of a defeat device).

36.    Porsche's senior manager participated in meetings with the Volkswagen group discussing the use of defeat devices in vehicles manufactured by the Volkswagen corporate family for years. In November 2015, during one such crisis meeting with the Volkswagen Group, engineers explained that Porsche gasoline vehicles contained defeat devices which caused them to emit less $CO_2$ during testing than in everyday driving, just like the diesel vehicles.

---

[7] Jan C. Wehmeyer, *The gear trick: Porsche apparently manipulated the transmission of test vehicles in order to enhance CO2 emissions –now, the public prosecutor's office is investigating*, Business Insider (Oct. 7, 2020) https://www.businessinsider.de/wirtschaft/zahnrad-trick-porsche-manipulierte-offenbar-getriebe-von-testfahrzeugen-um-den-co2-ausstoss-zu-schoenen/ (German language article)

37.     Rather than disclose the manipulation to regulators and consumers when it learned of it, Porsche's management decided to conceal the fraud. Porsche did not disclose the matter for five years, waiting until after a whistleblower at Porsche stepped forward in June 2020, flagging internally that Porsche vehicles may contain illegal equipment.[8]

38.     Porsche concealed the use of defeat devices to continue misleading more consumers to purchase or lease class vehicles.

39.     Porsche's manipulation of the vehicles tested by regulators to obtain certification for the sale of Class Vehicles is just the latest in a series of cheating emissions. Porsche's manipulation of Vehicles' software mirrors the allegations concerning the use of defeat devices in Volkswagen, Audi, Bentley and Porsche branded gasoline vehicles. *See e.g.* Amended Consolidated Complaint, *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No MDL 2673 CRB (JSC), Aug 30, 2019, Dkt 6628.

**c.   Porsche's Sport Plus Mode Manipulation**

40.     In addition to its ECU Manipulation scheme, Porsche has also manipulated Class Vehicles to lower harmful emissions when undergoing emissions testing in Sport Plus mode.

41.     Porsche offers "Sport+" (or "Sport Plus") mode as a driving feature that is designed to make the engine more reactive, and the vehicle more responsive. Sport Plus mode is standard or available as an add-on for certain Class Vehicles. Porsche advertises Sport Plus mode as consumer's "go-to driving mode for track days or simply experiencing all of the performance."[9]

42.     The Clean Air Act requires that every manufacture warrant to consumers that the vehicle is "designed, built, and equipped so as to conform at the time of sale" with applicable emissions standards and that the vehicle is "free from defects in materials and workmanship which cause such vehicle or engine to fail to conform" with such regulations. 42

---

[8] *Id.*
[9] *Porsche Driving Modes*, https://www.porscheirvine.com/research/driving-modes.htm (last visited Oct. 28, 2020).

U.S. Code § 7541(a)(1). The Clean Air Act also requires manufacturers warrant indicate by on each vehicle marketed to consumers, "that such vehicle or engine is covered by a certificate of conformity issued for the purpose of assuring achievement of emissions standards" as prescribed by the EPA. 42 U.S. Code § 7541(c)(3)(C). Under this act, Porsche warranted that its vehicles complied with the statutory limits regulating emissions, regardless of whether the vehicle was in Sport Plus mode.

43.     These representations were false. In fact, Porsche altered the tested vehicles to reduce less NOx in order to meet the statutory limit. By lowering the emissions when the vehicle is in Sport Plus mode, Porsche unlawfully obtained certification from regulators. In reality, Sport Plus mode emits over the legal limit for NOx.

44.     Reasonable consumers would not have expected that the Sport Plus mode would cause the vehicle to exceed legal limits.

45.     Porsche concealed and did not disclose the manipulation of emissions testing when in Sport Plus mode, and misled consumers to purchase and lease vehicles upon the mistaken belief that these vehicles conformed with state and federal emissions regulations.

**B.     Defendants' Conduct Violates Emissions Testing**

46.     Defendants breached U.S. laws, EPA and CARB regulations by making illegal changes to the hardware and software to lower emissions of $CO_2$ in vehicles tested.

47.     The federal government has passed and enforced laws designed to protect its citizens from pollution, particularly those chemicals and agents known to cause disease in humans. Automobile manufacturers operating within the U.S. must abide by these laws and adhere to the EPA rules and regulations.

48.     In addition, the State of California has passed and enforced laws designed to protect its citizens from pollution. Automobile manufacturers operating within California must abide by California's laws, which are enforced by the California Air Resources Board ("CARB"). CARB regulations set a ceiling for manufacturer's fleet-wide average emissions for vehicles sold in California.

49.     In 2004, CARB approved regulations to control greenhouse gas emissions, including carbon dioxide for vehicles produced and delivered for sale in California. These regulations establish exhaust emission standards for 2004 through 2019 model passenger car. California began implementing these standards in 2009.

50.     In 2010, the EPA and NHTSA established a set of fleet-wide standards applicable to passenger cars, light-duty trucks, and medium-duty vehicles covering model years 2012 through 2016. The EPA set national $CO_2$ emissions standards for light-duty vehicles under section 202(a) of the Clean Air Act. These standards required light-duty vehicles meet an estimated combined average emissions level of 250 grams/mile of $CO_2$ in model year 2016. NHTSA set fleetwide Corporate Average Fuel Economy ("CAFE") standards for passenger cars and light trucks under 49 U.S.C. 32902. These standards required manufacturers of those vehicles to meet an estimated combined average fuel economy level of 34.1 mpg in model year 2016. The standards for both agencies took effect with the 2012 model year, with standards increasing in stringency through model year 2016. These $CO_2$ standards are shown in Table 1 below:[10]



TABLE 1: 2012-2025 Light Duty Vehicle Standards (combined numbers for passenger cars and light trucks)

| | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Grams $CO_2$ per mile | 295 | 286 | 276 | 263 | 250 | 243 | 232 | 222 | 213 | 199 | 190 | 180 | 171 | 163 |
| MPG | 30.1 | 31.1 | 32.2 | 33.8 | 35.5 | 36.6 | 38.3 | 40 | 41.7 | 44.7 | 46.8 | 49.4 | 52 | 54.5 |

---

[10] *Timeline of Vehicle Fuel Efficiency and CO2 Emissions Standards (2007-2015)*, Environmental and Energy Study Institute (Aug. 26, 2015) https://www.eesi.org/papers/view/fact-sheet-vehicle-efficiency-and-emissions-standards#1

CLASS ACTION COMPLAINT

51.     California has since joined the EPA and NHTSA to adopt these standards.[11]

52.     Similarly, NOx is highly regulated by the Clean Air Act. The Act sets limits on fleet-wide emissions as well as limits for individual vehicles.

53.     Manufacturers must comply with these regulations to sell, introduce or deliver into the stream of commerce vehicles within the U.S.

54.     Under the Clean Air Act, manufactures must submit an application to the EPA for a certificate of conformity before vehicles can enter into the stream of commerce. The application for certification must confirm that the vehicle meets all testing and vehicle requirements under the law. The certificate of conformity covers vehicles "only if they are in in all material respects as described in the manufacturer's application for certification."[12]

55.     Likewise, California law requires that every vehicle imported, delivered, sold, or leased in California be certified by CARB and comply with California's emissions standard and other requirements. California Health & Safety Code § 43151. Like the EPA, CARB issues its own certificates for the sale of motor vehicles, called Executive Orders.

56.     Because the EPA Certificates of Conformity and CARB Executive Orders for the Class Vehicles were fraudulently obtained, the Class Vehicles were never covered by valid certificates and thus, were never offered legally for sale. Porsche hid these facts from the EPA, CARB, and other regulators to deceive them and consumers.

57.     California law prohibits the sale of any vehicles from model year 2009 and subsequent model years with an incorrect smog index label. 13 C.C.R. § 1965.

58.     Porsche misled consumers by representing the Class Vehicles as emitting less $CO_2$ and other pollutants than they actually do. As alleged above, Porsche caused Class Vehicles in Sport Plus mode to exceed the legal limit for NOx.

---

[11] *Letter from Mary Nichols, Chairman of the CARB, to the Honorable Lisa Jackson, Administrator for the EPA, and Ray LaHood, Secretary of the U.S. Department of Transportation*, July 28, 2011, available at https://www.epa.gov/sites/production/files/2016-10/documents/carb-commitment-ltr.pdf.
[12] 40 C.F.R. §§ 86.1848-10(c)(6).

59.     Porsche also caused the vehicles to have a higher fuel economy rating than it would achieve through on the road driving. To calculate fuel economy, regulatory testing measures fuel consumed in comparison to the CO2, and other emissions. When the amount of CO2 increases, the vehicle uses more gasoline and its fuel economy decreases. Thus, if Class Vehicles had been tested under normal driving conditions (and not under the manipulated state that Porsche devised) they would report lower fuel economy ratings.

60.     Porsche knew that the Class Vehicles had to meet these standards to be sold in the United States and were equally aware that fuel consumption and emissions are important factors for consumers choosing a vehicle to purchase or lease.

**C.     Defendants' Fraudulently Concealed the Manipulation of Emissions Testing**

61.     Porsche intentionally concealed the manipulation of its emissions testing for Class Vehicles for years. Porsche's senior management was aware since at least November 2015, but upon information and belief, the deceit goes back over a decade.

62.     Defendants' manipulation occurred during the tenure of former Porsche boss Matthias Müller, who became CEO of Porsche AG in October of 2010.[13] In September 2015, Müller took over management of the Volkswagen Group, after Martin Winterkorn had to resign in the wake of the diesel scandal. Files from the Munich office of the German public prosecutor's investigation of Audi show that shortly after Müller's move from Porsche to Volkswagen, there were first indications of problems with gasoline cars in the Volkswagen Group.

63.     Notably, in November, 2015, Matthias Müller—by then of Volkswagen--announced that internal investigations at Volkswagen had identified irregularities in CO2 levels for certain Group vehicles, announcing that around 800,000 Group vehicles could be affected.[14] Volkswagen did not specifically identify the vehicles, but stated, in relevant part:

---

[13] Wehmeyer, *supra* note 7.
[14] *Clarification moving forward:  internal investigations at Volkswagen identify irregularities in CO2 levels*, *supra* note 1.

CLASS ACTION COMPLAINT

"during the course of internal investigations irregularities were found when determining type approval Co2 levels. Based on present knowledge around 800,000 vehicles from the Volkswagen Group could be affected. An initial estimate puts the economic risks at approximately two billion euros. The Board of Management of AG will immediately start a dialogue with the responsible type approval agencies regarding the consequences of these findings." However, in December, 2015, in a statement to investors, Müller changed course, reporting that VW had in fact made a mistake and that there was no such scandal.[15]

64.    Countering this narrative, witnesses have reported about a November 2015 crisis meeting, at which transmission experts from the Volkswagen Group talked about different switching programs that would influence the emission of carbon dioxide on the dynamometer.[16] At the crisis meeting, the company's transmission experts talked about instructions that were given to test drivers in order to activate a specific switching program and thus cheat on the dynamometer. Senior Porsche managers participated in this crisis meeting.

65.    Thus, though Porsche's management was aware of the violations since at least 2015, Porsche continued to conceal the manipulation of emissions testing.

66.    In fact, the company did not begin to investigate the manipulation of emissions testing for five more years, after a whistleblower at Porsche first reported that vehicles may contain illegal equipment in June 2020.

67.    On August 23, 2020, the German newspaper *Bild am Sonntag* announced that Porsche faced investigation over "illegal changes to hardware and software" that may have affected the exhaust system and engine components.[17] According to public reporting, Porsche's internal investigation uncovered "irregularities" in its emissions testing.

---

[15] Automobilismo, *supra* note 2.
[16] *Id.*
[17] Burkhard Uhlenbroich, *Suspicion of Manipulation at Porsche*, Bild (Aug. 23, 2020) https://www.bild.de/bild-plus/geld/wirtschaft/wirtschaft/porsche-schon-wieder-ein-motoren-problem-manipulations-verdacht-72522742.bild.html (German language article).

CLASS ACTION COMPLAINT

68.     Following the release of this *Bild* article, Porsche publicly announced that it has identified topics relating to specific hardware and software used in certification testing and that "[i]n certain cases, such components may also have differed from parts used in series vehicles."[18] Porsche is reported to be conducting employee interviews, and reviewing meeting minutes as well as "hundreds of thousands of emails" for evidence related to this cheating scheme.

69.     German regulators have also opened investigations of their own into Porsche's manipulation of emission testing. The KBA is currently investigating Porsche over its suspected manipulation of the gas engines to achieve improved emissions data.[19] Likewise, the prosecutor's office in Stuttgart, where Porsche AG is headquartered, is investigating four individuals for their involvement in the cheating scheme.[20]

**D.     Defendants' Misrepresentations Regarding Performance and Emissions of Class Vehicles**

70.     Plaintiff, consumers, and public relied on Defendants' representations about the environmental friendliness, fuel economy, power, and low-to-compliant emissions in Class Vehicles. Defendants targeted their misleading advertising and other consumer facing representations about Class Vehicles to deliver such representations.

71.     New vehicles include a window or "Monroney" sticker disclosing the vehicles' fuel economy. The fuel economy statistics disclosed in Monroney stickers for the Class Vehicles were false because they were calculated in testing conditions that, because of Defendants' fraudulent schemes, did not reflect real world driving conditions.

72.     Examples of Monroney labels for some of the Class Vehicles follow:

---

[18] Chris Tsui, *Porsche's Gas Engines Investigated for Possible Emissions Cheating*, The Drive (Aug. 24, 2020) https://www.thedrive.com/news/35956/porsches-gas-engines-investigated-for-possible-emissions-cheating.
[19] Uhlenbroich, *supra* note 17.
[20] Wehmeyer, *supra* note 7.

| Year: 2009 | Engine: Flat 6 Cylinder Engine |
|---|---|
| Make: Porsche | Transmission: 7-speed |
| Model: Boxster 2dr Roadster S | Exterior: Arctic Silver Metallic |
| VIN: WP0CB298X9U730371 | Interior: Black Standard Leather |

## MECHANICAL

· 3.4L DOHC SMFI horizontally-opposed 24-valve 6-cyl engine
· VarioCam Plus continuously variable valve timing system
· Motronic ME 7.8 engine management software
· Double inertia flywheel
· Rear wheel drive
· Independent 4-wheel MacPherson strut suspension
· Front/rear stabilizer bars
· Pwr steering
· Pwr 4-wheel vented disc brakes -inc: 4-piston fixed alloy front calipers painted red, rear calipers painted black
· Stainless steel exhaust system -inc: central twin tailpipes
· 16.9 gallon fuel tank

## EXTERIOR

· Speed-dependent rear spoiler
· Halogen headlights w/welcome home function
· LED lights -inc: tail lights, brake lights, rear driver fog light
· Front/rear fog lamps
· Tinted glass
· Heated pwr mirrors

## INTERIOR

· Aluminum-look interior trim
· Telescoping steering column
· Instrumentation -inc: analog speedometer, tachometer, trip odometer, clock
· Trip computer

· Pwr windows -inc: 1-touch up/down, anti-jam feature
· Central locking system w/remote control
· Remote unlocking front/rear trunks
· HomeLink universal transmitter
· Cruise control
· Anti-theft system -inc: engine immobilizing, transponder key, interior sensor, remote control
· Alarm system
· Dash-mounted pop-out cupholders
· (2) auxiliary pwr outlets
· Dual illuminated visor vanity mirrors
· Leather-wrapped shift knob
· Center storage compartment

## SAFETY

· 4-wheel anti-lock braking system (ABS)
· Crumple-zone body structure
· Driver & passenger front airbags -inc: front passenger on/off switch
· Door mounted side-impact airbags
· Door trim mounted head curtain airbags
· 3-point seat belts w/pretensioners & load limiters
· Tire pressure monitoring system
· Boron steel tubing around windshield
· Integrated fixed supplemental safety bars -inc: soft-touch covering
· Reinforced passenger compartment

| CITY MPG | | HIGHWAY MPG |
|---|---|---|
| **19** |  Fuel Economy Information | **26** |

*Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition*

# *New*

| MSRP | $60,275.00 |
|---|---|
| **INSTALLED OPTIONS** | |
| [X1] Arctic Silver Metallic | $710 |
| [V9] Black (Top) | $0 |
| [AN] Black, Standard Leather Seat Trim | $0 |
| [419] 19" Carrera S II Wheels | $1,550 |
| [551] Porsche Windstop | $375 |
| [P75] Bi Xenon Headlights W/Dynamic Cornering Lights | $1,560 |
| [680] Bose Surround Sound System | $990 |
| • (10) speakers | |
| • 325-watts | |
| • glove box CD storage | |
| [619] Bluetooth Interface For Mobile Phone | $695 |
| [686] XM Radio | $750 |
| • XM satellite radio | |
| • XM NavTraffic | |
| • complimentary 3-month service | |
| [870] Universal Audio Interface | $440 |
| [P23] PCM 3.0 W/Extended Navigation | $3,110 |
| • 6.5" screen w/touch controls | |
| • AM/FM stereo w/CD/DVD/MP3 player | |
| • GPS HDD-based navigation module | |
| • on-board computer | |
| [342] Heated Seats | $500 |
| • 2-stages | |
| [810] Interior Color Floor Mats | $90 |
| [BASE] Boxster S | |
| [250] 7 Speed Porsche Doppelkupplung (PDK) | |
| [762] Pag Code Launch Code | |
| Original Shipping Charge | $795 |
| **RETAIL PRICE (ORIGINALLY NEW)** | $71,840.00 |

# Porsche Marin

CLASS ACTION COMPLAINT

| Year: 2012 | Engine: Flat 6 Cylinder Engine |
| Make: Porsche | Transmission: 7-SPEED MANUAL TRANSMISSION -inc: standstill management w/hold function |
| Model: 911 2dr Cabriolet 991 Carrera S | Exterior: Platinum Silver Metallic |
| VIN: WP0CB2A9XCS154935 | Interior: Black leather interior |

## MECHANICAL

· 3.8L horizontally-opposed four overhead camshafts DFI 24V 6-cyl engine -inc: dry sump lubrication, oil cooler
· Auto start/stop function
· Vario-cam plus variable valve timing system
· Porsche torque vectoring plus (PTV Plus) -inc: variable torque distribution through controlled braking on the rear wheels, electronically controlled & fully variable differential lock
· Rear wheel drive
· Full underbody paneling
· McPherson front suspension
· LSA multi-link rear suspension
· Front/rear stabilizer bars
· Porsche active suspension management system (PASM) -inc: electronic damper control system w/two manually selectable settings suspension lowered by 10mm
· Pwr 4-wheel vented disc brakes - inc: 6-piston front/4-piston rear monobloc fixed alloy calipers
· Front/rear brake pad-wear sensors
· Brake calipers painted in red
· Electric parking brake
· Four-pass multi-flow exhaust system w/(2) dual-tube tailpipes in brushed stainless steel , valve control

## EXTERIOR

· Tire sealing compound w/electric air compressor
· Front apron w/integrated air intakes
· Front air dam intakes in black
· Automatic extending rear spoiler
· Rear lid model designation w/"Porsche" & "911" logo w/painted chrome finish
· Auto on/off headlights
· LED turn signals
· LED side lights
· Rear fog light
· Rain-sensing intermittent windshield wipers w/heated washers
· Hood, doors & trunk lid in aluminum

## INTERIOR

· Front seat integral headrests
· Split-folding rear bench seat

· Storage behind rear seats
· (3) door brake rest positions
· Front/rear door storage compartments
· (3) storage compartments in center console
· Pwr windows w/front one-touch
· HomeLink programmable garage door opener
· Cruise control
· Immobilizer system w/in-key transponder, alarm system & radar-based interior surveillance
· Instrument dials painted in black
· Integrated cluster of (5) round instruments
· Analogue gauges -inc: engine speed, vehicle speed, oil pressure, oil temp, coolant temp, fuel level
· Gear lever & handbrake trim in leather
· Heated rear screen
· Door entry guards w/model logo
· Dual front cup holders
· Large lockable glovebox
· LATCH child seat mounting system w/top tethers on rear seats

## SAFETY

· Porsche Stability Management (PSM) - inc: anti-lock braking system (ABS), automatic brake differential (ABD), engine drag torque control (EDTC), brake assist, pre-filling brake system, anti-slip regulation traction control (ASR)
· LED daytime running lights
· Front/rear deformable aprons w/integral alloy bumpers mounted on impact absorbers
· 2-piece rollover protection system
· Driver & front passenger knee airbags
· Front seatbelt pretensioners
· Front/rear 3-point seatbelts
· Child safety rear door locks
· Tire pressure monitoring system
· Emergency trunk release

| CITY MPG | | HIGHWAY MPG |
|---|---|---|
| **19** |  Fuel Economy Information | **27** |

Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition

# *New*

| **MSRP** | **$99,260.00** |
|---|---|
| **INSTALLED OPTIONS** | |
| [1H] Platinum Silver Metallic | $710 |
| [1V] Black (Top) | $0 |
| [P06] 14 Way PWR Bucket Seats | included |
| [AZ] Black, Leather Seat Trim W/Full Leather Interior | $3,690 |
| [P39] Premium PKG Plus | $4,650 |
| [658] PWR Steering Plus | $270 |
| [176] Sport Exhaust System W/(2) Dual Tube Tailpipes In Chrome Plated Steel, Silencer | $2,950 |
| [XDA] Wheels Painted Black | $1,635 |
| [603] Bi Xenon Headlights W/Porsche Dynamic Light System (PDLS) | $0 |
| [276] Auto Dimming Interior/Exterior Mirrors | included |
| [P3A] Burmester Audio PKG | $5,010 |
| [682] Burmester Sound System | $5,290 |
| [690] Siriusxm Radio W/HD Radio | $1,120 |
| [342] Heated Front Seats W/Multi Stage Controls | $690 |
| [541] Front Seat Ventilation | included |
| [XSC] Headrests W/Embossed Porsche Crest | $285 |
| [XUV] Center Console Storage Bin Lid In Leather W/Model Logo | $330 |
| [844] Multi Function Steering Wheel In Leather W/Audio, On Board Trip Computer, Navigation & Communication Controls | $615 |
| [625] Porsche Entry & Drive | $0 |
| [640] Sport Chrono PKG | $2,370 |
| [630] Light Design PKG | $510 |
| [636] Front/Rear Park Assist System W/Distance Sensors Integrated In Rear Bumper | $990 |
| [321] RH PWR Sport Seats | $0 |
| [322] LH PWR Sport Seats | $0 |
| [693] 6 Disc CD/DVD Changer | included |
| Original Shipping Charge | $950 |
| **RETAIL PRICE (ORIGINALLY NEW)** | **$131,325.00** |



parkplaceltd.com
425-562-1000

CLASS ACTION COMPLAINT

Year: 2014
Make: Porsche
Model: Cayman 2dr Cpe
VIN: WP0AA2A87EK172474

Engine: Flat 6 Cylinder Engine
Transmission: 6-SPEED MANUAL -inc: dual-mass flywheel
Exterior: Black
Interior: Black

## MECHANICAL

· Rear-Wheel Drive
· 3.89 Axle Ratio
· 70-Amp/Hr 340CCA Maintenance-Free Battery
· 120 Amp Alternator
· 3627# Gvwr 761# Maximum Payload
· Gas-Pressurized Shock Absorbers
· Front And Rear Anti-Roll Bars
· Sport Tuned Suspension
· Electric Power-Assist Speed-Sensing Steering
· 16.9 Gal. Fuel Tank
· Dual Stainless Steel Exhaust
· Strut Front Suspension w/Coil Springs
· Strut Rear Suspension w/Coil Springs
· 4-Wheel Disc Brakes w/4-Wheel ABS, Front And Rear Vented Discs, Brake Assist, Hill Hold Control and Electric Parking Brake

## EXTERIOR

· Wheels w/Silver Accents w/Locks
· Spare Tire Mobility Kit
· Clearcoat Paint
· Body-Colored Front Bumper w/Black Rub Strip/Fascia Accent
· Body-Colored Rear Bumper w/Black Rub Strip/Fascia Accent
· Black Side Windows Trim and Black Front Windshield Trim
· Body-Colored Door Handles
· Body-Colored Power Heated Side Mirrors w/Manual Folding
· Fixed Rear Window w/Defroster
· Light Tinted Glass
· Front Windshield -inc: Sun Visor Strip
· Galvanized Steel/Aluminum Panels
· Power Spoiler
· Liftgate Rear Cargo Access
· Projector Beam Halogen Headlamps
· Front And Rear Fog Lamps
· Perimeter/Approach Lights
· LED Brakelights

## ENTERTAINMENT

· Radio w/Compatible Remote CD, Clock and Speed Compensated Volume Control
· 4 Speakers
· Audio Theft Deterrent
· Window Grid Diversity Antenna
· Bluetooth Wireless Phone Connectivity

## INTERIOR

· Fixed Rear Windows
· Front Cupholder
· Front Cigar Lighter(s)
· Ashtray

· Valet Function
· Power Fuel Flap Locking Type
· Remote Releases -Inc: Power Cargo Access
· HomeLink Garage Door Transmitter
· Cruise Control
· Illuminated Locking Glove Box
· Driver Foot Rest
· Interior Trim -inc: Metal-Look Instrument Panel Insert, Metal-Look Console Insert, Metal-Look Interior Accents and Leather Upholstered Dashboard
· Full Cloth Headliner
· Leather Door Trim Insert
· Leather Gear Shift Knob
· Full Floor Console w/Locking Storage and 3 12V DC Power Outlets
· Front Map Lights
· Fade-To-Off Interior Lighting
· Full Carpet Floor Covering -inc: Carpet Front Floor Mats
· Carpet Floor Trim
· Cargo Net
· Rigid Cargo Cover
· Cargo Features -inc: Spare Tire Mobility Kit
· Cargo Space Lights
· FOB Controls -inc: Trunk/Hatch/Tailgate
· Instrument Panel Bin, Interior Concealed Storage, Driver And Passenger Door Bins
· Power 1st Row Windows w/Driver And Passenger 1-Touch Up/Down
· Systems Monitor
· Redundant Digital Speedometer
· Outside Temp Gauge
· Analog Display
· Seats w/Leatherette Back Material
· Fixed Front Head Restraints
· Front Center Armrest
· Perimeter Alarm
· 3 12V DC Power Outlets
· Air Filtration

## SAFETY

· Side Impact Beams
· Dual Stage Driver And Passenger Seat-Mounted Side Airbags
· Tire Specific Low Tire Pressure Warning
· Dual Stage Driver And Passenger Front Airbags
· Curtain 1st Row Airbags
· Airbag Occupancy Sensor
· Outboard Front Lap And Shoulder Safety Belts -inc: Pretensioners

| CITY MPG | | HIGHWAY MPG |
|---|---|---|
| **20** | | **30** |

Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition.

## *New*

| MSRP | $52,645.00 |
|---|---|
| **INSTALLED OPTIONS** | |
| [250] Transmission: 7 Speed Porsche Doppelkupplung (PDK) | $3,200 |
| [406] Wheels: 8 J X 19" FR & 9.5 J X 19" RR Cayman S Alloy | $1,560 |
| [A1] Black | $0 |
| [AG] Black, Partial Leather Seat Trim | $0 |
| [P98] Premium Package W/Sport Seats | $1,780 |
| [P9G] Infotainment Package W/Bose Surround Sound System | $4,690 |
| [603] Bi Xenon Lighting System | included |
| [P06] 14 Way Electric Sport Seats W/Memory Package | $2,320 |
| [635] Rear Parkassist [FLT] | $530 |
| Original Shipping Charge | $950 |
| **RETAIL PRICE (ORIGINALLY NEW)** | $67,675.00 |

### Get more information on your smartphone:





www.buycbb.com
602-525-8000

CLASS ACTION COMPLAINT

Year: 2016
Make: Porsche
Model: Cayenne AWD 4dr
VIN: WP1AA2A27GLA03059

Engine: V6 Cylinder Engine
Transmission: 8-Speed A/T
Exterior: Meteor Grey Metallic
Interior: Black/Luxor Beige

## MECHANICAL

- 3.27 Axle Ratio
- GVWR: 6,195 lbs
- Full-Time All-Wheel Drive
- 85-Amp/Hr 450CCA Maintenance-Free Battery
- 220 Amp Alternator
- Towing Equipment -inc: Trailer Sway Control
- Gas-Pressurized Shock Absorbers
- Front And Rear Anti-Roll Bars
- Hydraulic Power-Assist Steering
- 26.4 Gal. Fuel Tank
- Quasi-Dual Stainless Steel Exhaust w/Powdercoated Tailpipe Finisher
- Permanent Locking Hubs
- Double Wishbone Front Suspension w/Coil Springs
- Multi-Link Rear Suspension w/Coil Springs
- 4-Wheel Disc Brakes w/4-Wheel ABS, Front And Rear Vented Discs, Brake Assist, Hill Descent Control, Hill Hold Control and Electric Parking Brake

## EXTERIOR

- Wheels w/Silver Accents w/Locks
- Spare Tire Mobility Kit
- Steel Spare Wheel
- Compact Spare Tire Mounted Inside Under Cargo
- Clearcoat Paint
- Body-Colored Front Bumper
- Body-Colored Rear Bumper
- Black Wheel Well Trim
- Aluminum Side Windows Trim and Black Front Windshield Trim
- Body-Colored Door Handles
- Body-Colored Power Heated Side Mirrors w/Power Folding
- Fixed Rear Window w/Fixed Interval Wiper and Defroster
- Deep Tinted Glass
- Rain Detecting Variable Intermittent Wipers w/Heated Jets
- Front Windshield -inc: Sun Visor Strip
- Fully Galvanized Steel Panels
- Lip Spoiler
- Body-Colored Grille
- Front License Plate Bracket
- Front And Rear Fog Lamps
- Perimeter/Approach Lights
- LED Brakelights

## ENTERTAINMENT

- Radio w/Seek-Scan, Compatible Remote CD, MP3 Player, Clock, Speed Compensated Volume Control, Aux Audio Input Jack, Steering Wheel Controls, DVD-Audio, External Memory Control and 40 GB Internal Memory
- 10 Speakers
- Audio Theft Deterrent
- Concealed Diversity Antenna
- Bluetooth Wireless Phone Connectivity
- 2 LCD Monitors In The Front

## INTERIOR

- Driver Seat
- Passenger Seat
- Front Cupholder
- Rear Cupholder
- HomeLink Garage Door Transmitter
- Cruise Control
- HVAC -inc: Underseat Ducts and Console Ducts
- Illuminated Locking Glove Box
- Driver Foot Rest
- Interior Trim -inc: Metal-Look/Piano Black Instrument Panel Insert, Metal-Look/Piano Black Door Panel Insert, Metal-Look/Piano Black Console Insert and Metal-Look Interior Accents
- Full Cloth Headliner
- Leather Door Trim Insert
- Leather/Metal-Look Gear Shift Knob
- Day-Night Rearview Mirror
- Driver And Passenger Visor Vanity Mirrors w/Driver And Passenger Illumination, Driver And Passenger Auxiliary Mirror
- Full Floor Console w/Covered Storage, Mini Overhead Console and 5 12V DC Power Outlets
- Front And Rear Map Lights
- Delay Off Interior Lighting
- Carpet Floor Trim and Carpet Trunk Lid/Rear Cargo Door Trim
- Trunk/Hatch Auto-Latch
- Cargo Area Concealed Storage
- Roll-Up Cargo Cover
- Cargo Features -inc: Spare Tire Mobility Kit
- Cargo Space Lights
- FOB Controls -inc: Trunk/Hatch/Tailgate and Windows
- Refrigerated/Cooled Box Located In The Glovebox, Driver / Passenger And Rear Door Bins and 1st Row Underseat Storage
- Delayed Accessory Power
- Systems Monitor
- Outside Temp Gauge
- Analog Display
- Manual Adjustable Front Head Restraints and Manual Adjustable Rear Head Restraints
- Sliding Front Center Armrest and Rear Center Armrest
- 2 Seatback Storage Pockets
- Perimeter Alarm
- 5 12V DC Power Outlets
- Air Filtration

## SAFETY

- Side Impact Beams
- Tire Specific Low Tire Pressure Warning
- Dual Stage Driver And Passenger Front Airbags
- Curtain 1st And 2nd Row Airbags
- Airbag Occupancy Sensor
- Rear Child Safety Locks
- Outboard Front Lap And Shoulder Safety Belts -inc: Rear Center 3 Point, Height Adjusters and Pretensioners



| CITY MPG | | HIGHWAY MPG |
|---|---|---|
| **19** | | **24** |

Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition

## New

| MSRP | **$58,245.00** |
|---|---|
| **INSTALLED OPTIONS** | |
| [V99] Wheels: 8 J X 18" Cayenne S | $390 |
| [9Q] Meteor Gray Metallic | $790 |
| [PJU] Infotainment Bose Package W/HD Radio | $1,990 |
| • Online Services | |
| • BOSE Surround Sound System | |
| • SiriusXM Satellite Radio | |
| [1NP] Wheel Hub Cover W/Colored Porsche Crest | $185 |
| [0NA] Deletion Of Model Designation | $0 |
| [9VL] Bose Surround Sound System | included |
| [PP5] Comfort Lighting Package | $325 |
| [7X8] Front & Rear Parkassist W/Reversing Camera | $1,750 |
| [9JB] Smoker Package | $0 |
| [BASE] Cayenne | |
| [77] Standard Interior In Black/Luxor Beige | |
| Original Shipping Charge | $1,050 |
| **RETAIL PRICE (ORIGINALLY NEW)** | **$64,725.00** |

### Get more information on your smartphone:





grandprimotors.com
888-707-4349

| Year: 2016 | Engine: V6 Cylinder Engine |
|---|---|
| Make: Porsche | Transmission: 8-Speed A/T |
| Model: Cayenne AWD 4dr | Exterior: Meteor Grey Metallic |
| VIN: WP1AA2A27GLA03059 | Interior: Black/Luxor Beige |

## MECHANICAL

· 3.27 Axle Ratio
· GVWR: 6,195 lbs
· Full-Time All-Wheel Drive
· 85-Amp/Hr 450CCA Maintenance-Free Battery
· 220 Amp Alternator
· Towing Equipment -inc: Trailer Sway Control
· Gas-Pressurized Shock Absorbers
· Front And Rear Anti-Roll Bars
· Hydraulic Power-Assist Steering
· 26.4 Gal. Fuel Tank
· Quasi-Dual Stainless Steel Exhaust w/Powdercoated Tailpipe Finisher
· Permanent Locking Hubs
· Double Wishbone Front Suspension w/Coil Springs
· Multi-Link Rear Suspension w/Coil Springs
· 4-Wheel Disc Brakes w/4-Wheel ABS, Front And Rear Vented Discs, Brake Assist, Hill Descent Control, Hill Hold Control and Electric Parking Brake

## EXTERIOR

· Wheels w/Silver Accents w/Locks
· Spare Tire Mobility Kit
· Steel Spare Wheel
· Compact Spare Tire Mounted Inside Under Cargo
· Clearcoat Paint
· Body-Colored Front Bumper
· Body-Colored Rear Bumper
· Black Wheel Well Trim
· Aluminum Side Windows Trim and Black Front Windshield Trim
· Body-Colored Door Handles
· Body-Colored Power Heated Side Mirrors w/Power Folding
· Fixed Rear Window w/Fixed Interval Wiper and Defroster
· Deep Tinted Glass
· Rain Detecting Variable Intermittent Wipers w/Heated Jets
· Front Windshield -inc: Sun Visor Strip
· Fully Galvanized Steel Panels
· Lip Spoiler
· Body-Colored Grille
· Front License Plate Bracket
· Front And Rear Fog Lamps
· Perimeter/Approach Lights
· LED Brakelights

## ENTERTAINMENT

· Radio w/Seek-Scan, Compatible Remote CD, MP3 Player, Clock, Speed Compensated Volume Control, Aux Audio Input Jack, Steering Wheel Controls, DVD-Audio, External Memory Control and 40 GB Internal Memory
· 10 Speakers
· Audio Theft Deterrent
· Concealed Diversity Antenna
· Bluetooth Wireless Phone Connectivity
· 2 LCD Monitors In The Front

## INTERIOR

· Driver Seat
· Passenger Seat
· Front Cupholder
· Rear Cupholder
· HomeLink Garage Door Transmitter
· Cruise Control
· HVAC -inc: Underseat Ducts and Console Ducts
· Illuminated Locking Glove Box
· Driver Foot Rest
· Interior Trim -inc: Metal-Look/Piano Black Instrument Panel Insert, Metal-Look/Piano Black Door Panel Insert, Metal-Look/Piano Black Console Insert and Metal-Look Interior Accents
· Full Cloth Headliner
· Leather Door Trim Insert
· Leather/Metal-Look Gear Shift Knob
· Day-Night Rearview Mirror
· Driver And Passenger Visor Vanity Mirrors w/Driver And Passenger Illumination, Driver And Passenger Auxiliary Mirror
· Full Floor Console w/Covered Storage, Mini Overhead Console and 5 12V DC Power Outlets
· Front And Rear Map Lights
· Delay Off Interior Lighting
· Carpet Floor Trim and Carpet Trunk Lid/Rear Cargo Door Trim
· Trunk/Hatch Auto-Latch
· Cargo Area Concealed Storage
· Roll-Up Cargo Cover
· Cargo Features -inc: Spare Tire Mobility Kit
· Cargo Space Lights
· FOB Controls -inc: Trunk/Hatch/Tailgate and Windows
· Refrigerated/Cooled Box Located In The Glovebox, Driver / Passenger And Rear Door Bins and 1st Row Underseat Storage
· Delayed Accessory Power
· Systems Monitor
· Outside Temp Gauge
· Analog Display
· Manual Adjustable Front Head Restraints and Manual Adjustable Rear Head Restraints
· Sliding Front Center Armrest and Rear Center Armrest
· 2 Seatback Storage Pockets
· Perimeter Alarm
· 5 12V DC Power Outlets
· Air Filtration

## SAFETY

· Side Impact Beams
· Tire Specific Low Tire Pressure Warning
· Dual Stage Driver And Passenger Front Airbags
· Curtain 1st And 2nd Row Airbags
· Airbag Occupancy Sensor
· Rear Child Safety Locks
· Outboard Front Lap And Shoulder Safety Belts -inc: Rear Center 3 Point, Height Adjusters and Pretensioners

**CITY MPG**
# 19



**HIGHWAY MPG**
# 24

*Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition*

## New

| MSRP | $58,245.00 |
|---|---|
| **INSTALLED OPTIONS** | |
| [V99] Wheels: 8 J X 18" Cayenne S | $390 |
| [9Q] Meteor Gray Metallic | $790 |
| [PJU] Infotainment Bose Package W/HD Radio | $1,990 |
| • Online Services | |
| • BOSE Surround Sound System | |
| • SiriusXM Satellite Radio | |
| [1NP] Wheel Hub Cover W/Colored Porsche Crest | $185 |
| [0NA] Deletion Of Model Designation | $0 |
| [9VL] Bose Surround Sound System | included |
| [PP5] Comfort Lighting Package | $325 |
| [7X8] Front & Rear Parkassist W/Reversing Camera | $1,750 |
| [9JB] Smoker Package | $0 |
| [BASE] Cayenne | |
| [77] Standard Interior In Black/Luxor Beige | |
| Original Shipping Charge | $1,050 |
| **RETAIL PRICE (ORIGINALLY NEW)** | $64,725.00 |

### Get more information on your smartphone:





grandprimotors.com
888-707-4349

CLASS ACTION COMPLAINT

Year:  2012
Make:  Porsche
Model:  Panamera 4dr HB
VIN:  WP0AA2A74CL013829

Engine:  V6 Cylinder Engine
Transmission:  7-Speed A/T
Exterior:  Platinum Silver Metallic
Interior:  Black

## MECHANICAL

· 3.6L V6 engine
· 7-speed Porsche Doppelkupplung (PDK) auto transmission -inc: manual mode
· VarioCam Plus continuously variable valve timing system
· Automatic start-stop engine function -inc: deactivation button on center console
· Double wishbone front suspension
· Multi-link LSA rear suspension w/stabilizer bar
· Front/rear brake pad-wear sensors
· Electric parking brake

## EXTERIOR

· Wheel anti-theft device
· Full underbody paneling
· Tire sealing compound w/electric air compressor
· Pwr sunroof -inc: pwr sliding roof w/tip open/close
· Black front air dam intakes
· Adaptive rear spoiler
· LED lights -inc: tail lights, brake lights
· Front window water repellant coating
· Hood, doors & trunk lid in aluminum

## ENTERTAINMENT

· Bluetooth interface for mobile phone
· Integrated antenna system for audio & navigation

## INTERIOR

· Brushed aluminum door entry guards
· Variable door stop
· Front/rear center console w/armrests & storage compartments
· Instrument cluster -inc: 4.8" color display, gear indicator, service interval indicator, ambient temp display, warning indicators, electronic oil level measurement w/map compensation
· Pwr windows -inc: auto up/down, anti-jamming, one-touch
· Pwr trunk release

· Overhead console w/LED reading lights
· HomeLink garage door opener
· Rear window defogger w/automatic-off
· (3) front/(2) rear cupholders
· Large lockable & cooled glovebox
· Front/rear door storage compartments
· Front footwell storage
· Storage pockets in back of front seats
· Storage compartment beneath loadspace floor
· Stowage nets in luggage compartment side panels
· Textured leather interior trim

## SAFETY

· Anti-lock braking system (ABS)
· Front/rear deformation zones
· LED daytime driving lights
· Dual front advanced airbags
· Dual front knee airbags
· Integrated front/rear side airbags w/passenger sensor
· Front/rear curtain airbags
· Rollover detection system -inc: early deployment of curtain airbags & seat belt pretensioners
· 3-point seat belts -inc: pretensioners, force limiters, height adjustment
· LATCH child rear seat mounting points
· Child safety rear door locks
· Emergency trunk release
· Dual-note horn
· Tire pressure monitoring system

| CITY MPG | | HIGHWAY MPG |
|---|---|---|
| 18 | Fuel Economy Information | 27 |

Actual mileage will vary with options, driving conditions, driving habits and vehicle's condition

## New

| MSRP | $71,895.00 |
|---|---|
| **INSTALLED OPTIONS** | |
| [AB] Black, Standard Leather Seat Trim | $0 |
| [640] Sport Chrono Plus PKG | $1,480 |
| [P66] Premium PKG Plus | $5,650 |
| [475] Porsche Active Suspension Management (Pasm) | $1,990 |
| [658] Servotronic PWR Assisted Steering W/Variable Ratio | included |
| [415] 19" Panamera Turbo Wheels | $1,950 |
| [261] Automatically Dimming Interior & Exterior Mirrors | $420 |
| [603] Bi Xenon Headlights | $770 |
| [693] 6 Disc CD/DVD/MP3 Changer | $650 |
| [680] Bose Surround Sound System | $1,440 |
| [P61] Bose Audio PKG | $1,990 |
| [686] Siriusxm Satellite Radio | $750 |
| [P80] 14 Way PWR Driver & Front Passenger Bucket Seats W/Memory PKG | included |
| [343] Heated Front/Rear Seats | $1,050 |
| [541] Front Seat Ventilation | $800 |
| [345] Heated Steering Wheel | included |
| [861] PWR Rear Side Window Sunscreen | $450 |
| [862] PWR Rear Sunscreen | $340 |
| [638] Front/Rear Park Assist W/Rearview Camera | $1,255 |
| [BASE] Panamera 4 | |
| [1H] Platinum Silver Metallic | |
| [379] 14 Way Power Seat W.Mem. Left | |
| [380] 14 Way Power Seat W.Mem. Right | |
| Original Shipping Charge | $975 |
| **RETAIL PRICE (ORIGINALLY NEW)** | $93,855.00 |

## Gravity Autos Sandy Springs

gravityautossandysprings.com
404-666-1000

73.    In addition to the Monroney labels, Defendants advertised the Class Vehicles and otherwise supplied consumers with information about them, including incorrect fuel economy, and emissions levels on their websites and in brochures.

CLASS ACTION COMPLAINT

74.    Porsche represented the Panamera as offering both high power and low $CO_2$ emissions in vehicle brochures and standard advertisements. For example, Porsche stated that the "Panamera engines are highly efficient and low on fuel consumption, but high on power output."[21] Porsche also stated that it "is among those manufacturers achieving the lowers $CO_2$ emissions,"[22] that the Panamera offered "[h]igh power output with comparatively low $CO_2$ emissions;"[23] and that "[Porsche is] already among those manufacturers achieving the lowers $CO_2$ emissions."[24]

75.    Regarding the Panamera 4 model year 2012, Porsche's advertising brochure advertised the following:[25]

The Panamera and Panamera 4 are equipped with the 3.6-liter, naturally aspirated V6 engine. Efficient and sporty, thanks to Direct Fuel Injection (DFI, p. 44) and VarioCam Plus (p. 45) fitted as standard, it generates 300 horsepower and 295 lb.-ft. of torque.

On the Panamera, power is transmitted to the rear axle by the 7-speed Porsche Doppelkupplung (PDK, p. 47) with Auto Start Stop function (p. 43). This double-clutch transmission enables fast gear changes with no interruption in the flow of power, for increased performance and greater comfort but lower fuel consumption.*

76.    Examples of Porsche's misleading statements regarding the 911 are provided below:

---

[21] *Porsche: The Panamera model Range*, http://www.auto-brochures.com/makes/Porsche/Panamera/Porsche_int%20Panamera_2010.pdf, at 42.
[22] *Porsche: The Panamera* (2011) http://www.auto-brochures.com/makes/Porsche/Panamera/Porsche_US%20Panamera_2012.pdf, at 33.
[23] *Porsche: The Panamera model Range* (2012) http://www.auto-brochures.com/makes/Porsche/Panamera/Porsche_int%20Panamera_2013.pdf, at 38.
[24] *Id.* at 87.
[25] *Porsche: The Panamera* (2012), http://www.auto-brochures.com/makes/Porsche/Panamera/Porsche_US%20Panamera_2012.pdf, at 20.

CLASS ACTION COMPLAINT

a. "The [new] 911 Carrera continues to raise the bar in both performance and efficiency."[26]

b. "Vehicles manufactured by Porsche demonstrate that even high-performance sports cars can achieve moderate fuel consumption and exhaust emission values in their respective category."[27]

77. Porsche made similarly misleading statements for the Boxster in standard vehicle brochures. For instance, Porsche stated:

a. "[H]igh power is achieved with comparatively low fuel consumption and emission figures"[28]

b. "We achieved this with more performance – with more efficiency"[29] and that the vehicle combines "the intrinsic values of high performance with comparatively low fuel consumption and emission figures."[30] Regarding the "intensifying debate about global climate change and CO2 emissions, . . . [o]ur answer has long been the same: a combination of high power output and high efficiency. Porsche has reduced fuel consumption across all model ranges by a double-digit percentage compared with the respective previous models, even though performance has been increased in every generation."[31]

78. Regarding the Cayman, Porsche made similar misleading statements in standard vehicle brochures. For example, stating:

---

[26] *New Seventh-Generation Porsche 911 On-Sale Now*, Porsche (Feb. 6, 2012) https://press.porsche.com/prod/presse_pag/PressResources.nsf/Content?ReadForm&languageversionid=862041&hl=modelle-911-911_carrera_s.
[27] *Porsche: The New 911 Turbo* (2016) http://www.auto-brochures.com/makes/Porsche/911/Porsche_US%20911Turbo_2016.pdf, at 50.
[28] *Porsche: The Boxster* (2013) http://www.auto-brochures.com/makes/Porsche/Boxster/Porsche_int%20Boxster_2013.pdf, at 28.
[29] *Porsche: The Boxster* (2015) http://www.auto-brochures.com/makes/Porsche/Boxster/Porsche_int%20Boxster_2015.pdf, at 9.
[30] *Id.* at 33.
[31] *Id.* at 71.

CLASS ACTION COMPLAINT

a. Engine developments standout for "their lightweight construction, power output, and efficiency;"[32]

b. "Resolute compliance with environmental regulations is the law they follow. As do all Porsche models. Because efficiency, too, is a question of character;"[33]

c. "Here, all technological developments are carried out with environmental protection in mind. The goal? Pure performance—but not at the expense of the environment. A goal achieved by the Cayman models;"[34]

d. "Vehicles manufactured by Porsche demonstrate that even high-performance sports cars can achieve moderate emissions values in their respective category."[35]

e. "The goal is to enhance performance, but preferably not at the expense of the environment. We achieve this goal with Intelligent Performance, as epitomized by the new Cayman."[36]

f. "With a new design, new driver-assistance systems, new drive components, and a higher output, yet comparatively low fuel consumption"[37]

79. Regarding the Cayenne, Porsche made similar misleading statement. For example in standard brochures Porsche stated:

a. Providing "a higher output, yet comparatively low fuel consumption"[38] and also that Porsche has "demonstrated that even high-performance sports cars can achieve comparatively moderate exhaust emission values."[39]

---

[32] *Porsche: The Cayman* (2012) http://www.auto-brochures.com/makes/Porsche/Cayman/Porsche_US%20Cayman_2012.pdf, at 5.
[33] *Id.* at 95.
[34] *Id.* at 97.
[35] *Id.*
[36] *Porsche: The new Cayman* (2014) http://www.auto-brochures.com/makes/Porsche/Cayman/Porsche_US%20Cayman_2014.pdf, at 69.
[37] *Id.*
[38] *Porsche: The Cayenne* (2016) http://www.auto-brochures.com/makes/Porsche/Cayenne/Porsche_US%20Cayenne_2016.pdf, p. 5.
[39] *Id.* at 60.

CLASS ACTION COMPLAINT

80.    As exemplified above, Defendants misrepresented and concealed the true nature of Class Vehicles. Defendants' deceptive acts harmed Plaintiffs and the Class.

**E.    Porsche's History of Manipulation**

81.    Porsche's manipulation of the vehicles tested for Class Vehicles is just the latest in a series of cheating emissions.

82.    Since 2015, Porsche's parent company, Volkswagen, has been embroiled in investigations regarding the defeat devices installed in Volkswagen engines. The Volkswagen defeat device scandal involved Volkswagen and subsidiaries, Porsche and Audi, installing defeat devices in vehicles. The EPA describes a defeat device as any device that "reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use." 40 CFR § 86.094-2.

83.    That scandal involved the use of defeat devices by Volkswagen and its subsidiaries with 2.0-liter and 3.0-liter engines. The defeat devices could detect when the vehicle was undergoing testing and reduce the emission control levels accordingly. When the vehicle was not under testing, the emission control measures were disabled, allowing the vehicle to have increased performance and fuel efficiency, but illegal levels of nitrogen oxides.

84.    As a result of the use of these devices, Volkswagen reached settlements with the EPA, the California Attorney General, CARB, and the Federal Trade Commission. In addition, current and former vehicle owners/lessees in the United States recovered a multibillion-dollar settlement.

85.    This scheme also involved Porsche. Just last year, Porsche was fined 535 million euros ($632 million) for lapses that allowed the company to cheat diesel emissions testing.[40]

86.    Defendants' conduct here in manipulating the test vehicles concerns similar schemes as those uncovered in the Volkswagen defeat device scandal. In both, the Porsche-

---

[40] *Germany investigates Porsche over suspected petrol engine manipulation*, Reuters (Aug. 24, 2020) https://www.reuters.com/article/us-volkswagen-porsche-manipulation/germany-investigates-porsche-over-suspected-petrol-engine-manipulation-idUSKBN25K13P.

1    marketed higher performance of Class Vehicles did not reflect the regulatory compliance of

2    the tested vehicles.

3    **F.    Tolling**

4        **a.  Discovery Rule Tolling**

5        87.    The tolling doctrine was made for cases of concealment like this one. For the

6    following reasons, any otherwise-applicable statutes of limitations have been tolled by the

7    discovery rule with respect to all claims.

8        88.    Through the exercise of reasonable diligence, and within any applicable statutes

9    of limitation, Plaintiffs and members of the proposed Class could not have discovered that

10   Defendants were concealing and misrepresenting the true emissions levels of its vehicles,

11   including but not limited to their manipulation of the vehicles that were tested.

12       89.    Plaintiffs and members of the proposed Class could not have reasonably

13   discovered, and did not know of facts that would have caused a reasonable person to suspect

14   that Defendants intentionally failed to report information within their knowledge to federal and

15   state authorities, dealerships, or consumers until –at the earliest –August 23, 2020, when

16   published reports surfaced for the first time disclosing the existence of the herein described

17   defeat device.

18       90.    Likewise, a reasonable and diligent investigation could not have disclosed that

19   Defendants had information in their possession about the existence of its sophisticated

20   emissions deception and that they concealed that information, which was only discovered by

21   Plaintiffs immediately before this action was filed.

22       **b.  Tolling Due to Fraudulent Concealment**

23       91.    Throughout the relevant time period, all applicable statutes of limitation have

24   been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts

25   alleged in this Complaint.

26       92.    Upon information and belief, prior to the date of this Complaint, Defendants

27   knew of the manipulation of tested vehicles, but continued to distribute, sell, and/or lease the

28

CLASS ACTION COMPLAINT

Class Vehicles to Plaintiffs and the class members. In doing so, Defendants concealed and expressly denied the existence of a problem with $CO_2$ emissions and/or failed to notify Plaintiffs and the Class members about the true nature of the emissions in Class Vehicles.

93.    Instead of disclosing their deception, or the emissions from the Class Vehicles were far worse than represented, Defendants falsely represented that its vehicles complied with federal and state emissions standards, and that they were reputable manufacturers whose representations could be trusted.

### c. Estoppel

94.    Defendants had a continuous duty to tell the truth about their products and to disclose to Plaintiffs and the other Class members the facts that they knew about the emissions from Class Vehicles, and of those vehicles' failure to comply with federal and state laws.

95.    Although they had the duty throughout the relevant time period to disclose to Plaintiffs and Class members that they had engaged in the deception described in this Complaint, Defendants chose to evade federal and state emissions and clean air standards with respect to the Class Vehicles, and intentionally misrepresented their blatant and deceptive lack of compliance with federal and state law regulating vehicle emissions and clean air.

96.    Defendants actively concealed this true character, quality, performance, and nature of Class Vehicles, and Plaintiffs and the class members reasonably relied upon Defendants' knowing and active concealment of these facts.

97.    Thus, Defendants are estopped from relying on any statutes of limitations in defense of this action.

### CLASS ACTION ALLEGATIONS

98.    Plaintiffs bring this class action on behalf of themselves and other similarly situated individuals. Pursuant to Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs seek to certify a class (the "Nationwide Class") of:

> All persons and entities in the United States who purchased (other than for resale) and/or leased a Class Vehicle.

In the alternative, Plaintiffs seek certification of the following California Class:

1

2

Alabama State Class: All persons and entities in the state of Alabama who purchased (other than for resale) and/or leased a Class Vehicle.

3

4

Alaska State Class: All persons and entities in the state of Alaska who purchased (other than for resale) and/or leased a Class Vehicle.

5

6

Arizona State Class: All persons and entities in the state of Arizona who purchased (other than for resale) and/or leased a Class Vehicle.

7

8

Arkansas State Class: All persons and entities in the state of Arkansas who purchased (other than for resale) and/or leased a Class Vehicle.

9

California State Class: All persons and entities in the state of California who purchased (other than for resale) and/or leased a Class Vehicle.

10

11

Colorado State Class: All persons and entities in the state of Colorado who purchased (other than for resale) and/or leased a Class Vehicle.

12

13

Connecticut State Class: All persons and entities in the state of Connecticut who purchased (other than for resale) and/or leased a Class Vehicle.

14

Delaware State Class: All persons and entities in the state of Delaware who purchased (other than for resale) and/or leased a Class Vehicle.

15

16

District of Columbia Class: All persons and entities in the District of Columbia who purchased (other than for resale) and/or leased a Class Vehicle.

17

18

Florida State Class: All persons and entities in the state of Florida who purchased (other than for resale) and/or leased a Class Vehicle.

19

20

Georgia State Class: All persons and entities in the state of Georgia who purchased (other than for resale) and/or leased a Class Vehicle.

21

Hawaii State Class: All persons and entities in the state of Hawaii who purchased (other than for resale) and/or leased a Class Vehicle.

22

23

Idaho State Class: All persons and entities in the state of Idaho who purchased (other than for resale) and/or leased a Class Vehicle.

24

25

Illinois State Class: All persons and entities in the state of Illinois who purchased (other than for resale) and/or leased a Class Vehicle

26

Indiana State Class: All persons and entities in the state of Indiana who purchased (other than for resale) and/or leased a Class Vehicle.

27

28

CLASS ACTION COMPLAINT

Iowa State Class: All persons and entities in the state of Iowa who purchased (other than for resale) and/or leased a Class Vehicle.

Kansas State Class: All persons and entities in the state of Kansas who purchased (other than for resale) and/or leased a Class Vehicle.

Kentucky State Class: All persons and entities in the state of Kentucky who purchased (other than for resale) and/or leased a Class Vehicle.

Louisiana State Class: All persons and entities in the state of Louisiana who purchased (other than for resale) and/or leased a Class Vehicle.

Maine State Class: All persons and entities in the state of Maine who purchased (other than for resale) and/or leased a Class Vehicle.

Maryland State Class: All persons and entities in the state of Maryland who purchased (other than for resale) and/or leased a Class Vehicle.

Massachusetts State Class: All persons and entities in the state of Massachusetts who purchased (other than for resale) and/or leased a Class Vehicle.

Michigan State Class: All persons and entities in the state of Michigan who purchased (other than for resale) and/or leased a Class Vehicle.

Minnesota State Class: All persons and entities in the state of Minnesota who purchased (other than for resale) and/or leased a Class Vehicle.

Mississippi State Class: All persons and entities in the state of Mississippi who purchased (other than for resale) and/or leased a Class Vehicle.

Missouri State Class: All persons and entities in the state of Missouri who purchased (other than for resale) and/or leased a Class Vehicle.

Montana State Class: All persons and entities in the state of Montana who purchased (other than for resale) and/or leased a Class Vehicle.

Nebraska State Class: All persons and entities in the state of Nebraska who purchased (other than for resale) and/or leased a Class Vehicle.

Nevada State Class: All persons and entities in the state of Nevada who purchased (other than for resale) and/or leased a Class Vehicle.

New Hampshire State Class: All persons and entities in the state of New Hampshire who purchased (other than for resale) and/or leased a Class Vehicle.

New Jersey State Class: All persons and entities in the state of New Jersey who purchased (other than for resale) and/or leased a Class Vehicle.

CLASS ACTION COMPLAINT

1

2

<u>New Mexico State Class</u>: All persons and entities in the state of New Mexico who purchased (other than for resale) and/or leased a Class Vehicle.

3

4

<u>New York State Class</u>: All persons and entities in the state of New York who purchased (other than for resale) and/or leased a Class Vehicle.

5

6

<u>North Carolina State Class</u>: All persons and entities in the state of North Carolina who purchased (other than for resale) and/or leased a Class Vehicle.

7

<u>North Dakota State Class</u>: All persons and entities in the state of North Dakota who purchased (other than for resale) and/or leased a Class Vehicle.

8

9

<u>Ohio State Class</u>: All persons and entities in the state of Ohio who purchased (other than for resale) and/or leased a Class Vehicle.

10

11

<u>Oklahoma State Class</u>: All persons and entities in the state of Oklahoma who purchased (other than for resale) and/or leased a Class Vehicle.

12

13

<u>Oregon State Class</u>: All persons and entities in the state of Oregon who purchased (other than for resale) and/or leased a Class Vehicle.

14

<u>Pennsylvania State Class</u>: All persons and entities in the state of Pennsylvania who purchased (other than for resale) and/or leased a Class Vehicle.

15

16

<u>Rhode Island State Class</u>: All persons and entities in the state of Rhode Island who purchased (other than for resale) and/or leased a Class Vehicle.

17

18

<u>South Carolina State Class</u>: All persons and entities in the state of South Carolina who purchased (other than for resale) and/or leased a Class Vehicle.

19

20

<u>South Dakota State Class</u>: All persons and entities in the state of South Dakota who purchased (other than for resale) and/or leased a Class Vehicle.

21

<u>Tennessee State Class</u>: All persons and entities in the state of Tennessee who purchased (other than for resale) and/or leased a Class Vehicle.

22

23

<u>Texas State Class</u>: All persons and entities in the state of Texas who purchased (other than for resale) and/or leased a Class Vehicle.

24

25

<u>Utah State Class</u>: All persons and entities in the state of Utah who purchased (other than for resale) and/or leased a Class Vehicle.

26

<u>Vermont State Class</u>: All persons and entities in the state of Vermont who purchased (other than for resale) and/or leased a Class Vehicle.

27

28

CLASS ACTION COMPLAINT

Virginia State Class: All persons and entities in the state of Virginia who purchased (other than for resale) and/or leased a Class Vehicle.

Washington State Class: All persons and entities in the state of Washington who purchased (other than for resale) and/or leased a Class Vehicle.

West Virginia State Class: All persons and entities in the state of West Virginia who purchased (other than for resale) and/or leased a Class Vehicle.

Wisconsin State Class: All persons and entities in the state of Wisconsin who purchased (other than for resale) and/or leased a Class Vehicle.

Wyoming State Class: All persons and entities in the state of Wyoming who purchased (other than for resale) and/or leased a Class Vehicle.

99.    Excluded from the Class are Defendants, any entity in which any Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors. Also excluded from the Class is any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

100.    Numerosity. Porsche sold at least hundreds of thousands of Class Vehicles. Members of the Class are located throughout the United States and are so numerous that joinder is practicable. The precise number of Class members can be determined through discovery, including discovery of Defendants' business records. Notice may be provided as to the pendency of this action by Court-approved methods of notice dissemination, including U.S. mail, e-mail, and publication in print and Internet media

101.    Common Questions of Law and Fact Predominate. There are questions of law and fact common to Plaintiffs and Class members, and those questions predominate over any questions that may affect any individual Class member. Such common questions of law and fact include, but are not limited to:

a.    Whether Defendants engaged in the conduct alleged herein;

b.    Whether Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

c.    Whether Defendants conducted the Drivetrain, ECU, and Sport Plus Manipulation affected Class Vehicles, as described herein;

d.      Whether the transmission control system in the Class Vehicles contains a defect in that it does not comply with EPA requirements outside of lab testing conditions;

e.      Whether the Class Vehicles' disclosed fuel economy rating was improperly inflated;

f.      Whether Defendants installed a yet-unspecified defeat device in Class Vehicles to manipulate test results in order to comply with government emissions standards;

g.      Whether Class Vehicles could have complied with government emissions standards without sacrificing vehicle performance;

h.      Whether Defendants knew it manipulated testing results to comply with government standards, but continued to advertise, market, and sell Class Vehicles to consumers without disclosing the true $CO_2$ and $NOx$ emissions to consumers;

i.      Whether a reasonable consumer would consider the illegally obtained $CO_2$ rating important to the decision to purchase a Class Vehicle;

j.      Whether Porsche breached express and implied warranties associated with the Class Vehicles;

k.      Whether Defendants' conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

l.      Whether Defendants' conduct violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

m.      Whether Plaintiffs and members of the Class overpaid for their Class Vehicles;

n.      Whether Plaintiffs and Class members are entitled to equitable relief, including restitution and injunctive relief; and

o.      Whether Plaintiffs and Class members are entitled to damages or other monetary relief, and if so, in what amount.

102.    <u>Typicality</u>. Plaintiffs' claims are typical of the claims of all members of the Class. Their claims arise from the same practices and conduct that give rise to the claims of all Class members and are based on the same legal theories. Plaintiffs, like all Class members, were

injured by Porsches manipulation of the emissions testing in Class Vehicles. Plaintiffs and the members of the Class would not have purchased, or would have paid substantially less for, their vehicles had they known of Defendants' manipulation of the emission testing in Class Vehicles.

103.    Adequacy. Plaintiffs will fairly and adequately protect the interests of the Class. They have no interests antagonistic to those of the other Class members and are committed to vigorously prosecuting this case. Plaintiffs have retained counsel experienced in consumer class actions and complex litigation involving defective automobiles.

104.    Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Given that the relative amount of each Class member's is small relative to the expense of litigating those claims, and given Defendants' financial resources, no Class member is likely seek legal redress on an individual basis for the violations alleged in this complaint. Individual actions would significantly increase the expense to all parties, burden the court with duplicative litigation, and create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants. Separate actions by individual Class members would also risk adjudications that would, as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. A class action, however, promotes an orderly and expeditious adjudication of the Class claims, presents fewer management difficulties, and ensures comprehensive supervision in a single forum.

105.    Defendants acted and refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the members of the Class as a whole.

106.    All members of the Class are ascertainable by reference to objective criteria. Defendants have, or have access to, address information for Class members which may be used for the purpose of providing notice of the pendency of this class action.

**CAUSES OF ACTION**

1

**A.    Nationwide Claims**

2

**COUNT I COMMON LAW FRAUD**

3      107.    Plaintiffs brings this claim on behalf of herself and the members of the

4    Nationwide Class against Defendants.

5      108.    Plaintiffs re-allege and incorporate by reference the allegations contained in the

6    paragraphs above as if fully set forth herein.

7      109.    Defendants affirmatively misrepresented and concealed the truth about its

8    manipulation of emissions testing in Class Vehicles from Plaintiffs. Defendants affirmatively

9    misrepresented to Plaintiffs in advertising and other forms of communication, including standard

10   and uniform material provided with each car and on its website, that the Vehicles it was selling

11   had no significant defects, and that the vehicles offered high power and low-to-standard

12   emissions.

13     110.    Defendants intentionally concealed that it manipulated the testing of Class

14   Vehicles to comply with government emission requirements and further affirmatively

15   misrepresented to Plaintiffs and Class members in advertising and other forms of

16   communication, including standard and uniform material provided with each car and on its

17   website, that the Class Vehicles had lower $CO_2$ and $NOx$ emissions than they did, higher fuel

18   economy rating than they did, and that Class Vehicles offered both power and efficiency.

19   Defendants knew, or should have known, about the manipulation of emissions testing when

20   making such representations. And yet, at no time did any of the Defendants reveal the truth to

21   Plaintiffs or the Class. To the contrary, each Defendant concealed the truth, intending for

22   Plaintiffs and the Class to rely on their omissions—which they did by purchasing and leasing

23   the Class Vehicles.

24     111.    Plaintiffs reasonably relied on the representations and omissions in purchasing

25   and continuing to drive Class Vehicles. Plaintiffs and Class members were unaware of

26   Defendants' manipulation of testing vehicles, and if they had known the truth, they would not

27   have acted as they did, they would not have purchased the vehicles or would have paid

28

substantially less for them. Moreover, as consumers, Plaintiffs and the Class did not, and could not, unravel the deception on their own.

112.    Defendants had a duty to disclose the manipulation of emissions testing in the Class Vehicles, and that the vehicles consumed more fuel and emitted higher levels of $CO_2$ and NOx during normal driving operation. Defendants had such a duty because the true facts were known and/or accessible only to them and because they knew these facts were not known to or reasonably discoverable by Plaintiffs and the Class.

113.    Defendants also had a duty to disclose the true nature of the Class Vehicles in light of their statements about the qualities and characteristics of the Class Vehicles with respect to emissions standards, fuel efficiency and performance, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the manipulation of emissions testing and actual emissions levels. Having volunteered to provide information to Plaintiffs and the Class, Defendants had the duty to disclose the whole truth, and did not.

114.    Had the truth been revealed, Plaintiffs and the Class would not have purchased the Class Vehicles, or would have paid less for them. Plaintiffs were injured by their justified reliance on Defendants misrepresentations and omissions. Plaintiffs and the Class have also sustained damage because they own or lease Class Vehicles that should never have been placed in the stream of commerce and are diminished in value as a result of Defendants' fraud. Plaintiffs have been damaged in an amount to be proven at trial, including but not limited to compensatory damages, incidental and consequential damages, and other damages allowed by law.

115.    Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the rights of Plaintiffs and the Class; and to enrich themselves. Their misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**COUNT II**
**VIOLATION OF Implied and Express Warranty,**

**Magnuson - Moss Warranty Act (15 U.S.C. §§ 2301, et seq.)**

116.    Plaintiffs brings this claim on behalf of themselves and the members of the Nationwide Class against Defendants.

117.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

118.    Plaintiffs are consumers as defined in 15 U.S.C. § 2301(3).

119.    Defendants are a suppliers and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

120.    15 U.S.C. § 2310(d)(1)(A) and/or § 2310(d)(3)(C) is satisfied because Plaintiffs properly invoke jurisdiction under the Class Action Fairness Act ( CAFA").

121.    Defendants provided Plaintiffs and Class members "written warranties" within the meaning of 15 U.S.C. § 2301(6).

122.    Upon information and belief, Defendants' standard warranty language is identical for all Vehicles sold nationwide. This warranty provides "bumper-to-bumper" limited express warranty coverage for a minimum of 4 years or 50,000 miles, whichever comes first, and includes emissions-related repairs.

123.    In addition, Defendants provided a "performance warrant" and a "designed and defect warrant" –consistent with federal law. These warranties cover the repair and replacement in the event that a vehicle fails an emissions tests. And provide that for all emissions control and emissions-related parts for two years or 24, 000 miles (whichever comes first); and specified major emissions control components, including catalytic converters, electronic emissions control unit or computer and on-board emissions diagnostic device or computer for 8 years or 80,000 miles (whichever comes first).

124.    The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

125.    The terms of these warranties became part of the basis of the bargain when Plaintiffs and each Class member purchased or leased their Class Vehicles.

126. Defendants breached these written and implied warranties as described in detail above. Without limitation, the Class Vehicles share a common design defect in that they emit more pollutants than disclosed to regulators, consumers, and the driving public.

127. Plaintiffs and each Class member have had sufficient direct dealings with either Defendants or their agents (including dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiffs and each Class member, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each Class member are intended third-party beneficiaries of contracts between Defendants and their dealers, and of their implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers only.

128. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle, Defendants knew, or should have known, of their misrepresentations and/or material omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the design defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs or members of the Class resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

129. In addition, given the conduct described herein, any attempts by Defendants, in their capacity as warrantors, to limit the implied warranties in a manner that would exclude coverage of the defect is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defect is null and void.

130. Plaintiffs and the other Class members would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants. Because Defendants are refusing to acknowledge any revocation of acceptance and

have not immediately returned any payments made, Plaintiffs and the Class have not re-accepted their Class Vehicles by retaining them.

131.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

132.    As a direct and proximate result of the Defendants' breach of the written and implied warranties, Plaintiffs and each Class member have suffered damages.

133.    Plaintiffs, individually and on behalf of the Class, seek all damages permitted by law, including compensation for the monetary difference between the Class Vehicles as warranted and as sold or leased; compensation for the reduction in resale value; the cost of purchasing, leasing, or renting replacement vehicles, along with all other incidental and consequential damages, statutory attorney fees, and all other relief allowed by law.

**B.    State Claims**

**ALABAMA COUNT I**
**Violation of Alabama Deceptive Trade Practices Act**
**Ala. Code § 8-19-1, et seq.**
**(On Behalf of the Alabama State Class)**

134.    Plaintiffs brings this claim on behalf of herself and the members of the Class, or alternatively, the Alabama State Class, under the laws of that state, against Defendants.

135.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

136.    Alabama State Class members are "consumers" within the meaning of Ala. Code § 8-19-3(2).

137.    Alabama State Class members and Defendants are "persons" within the meaning of Ala. Code § 8-19-3(5).

138.    The Class Vehicles are "goods" within the meaning of Ala. Code § 8-19-3(3).

139.    Defendants were and are engaged in "trade or commerce" within the meaning of Ala. Code § 8-19-3(8).

140.    The Alabama Deceptive Trade Practices Act ("Alabama DTPA") declares several specific actions to be unlawful, including: "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have," "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and "(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5.

141.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by altering the drivetrains in vehicles submitted for emissions testing so that they differed from vehicles released to consumers; installing software in the ECU of Vehicles designed to lower emissions during testing; and/or falsely promising that Vehicles could pass emissions tests in Sport Plus mode. During normal operations, the Class Vehicles would emit larger quantities of $CO_2$ and consume more fuel.

142.    Alabama State Class members had no way of discerning that Defendants' representations were false and misleading because Defendants' manipulation of emissions-related hardware and software used extremely sophisticated technology and techniques. Alabama Class members did not and could not unravel Defendants' deception on their own.

143.    Defendants thus violated the Alabama DTPA by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

144.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Alabama State Class.

145.    Defendants knew or should have known that their conduct violated the Alabama DTPA.

146.    Defendants owed the Alabama State Class a duty to disclose the illegality and public health risks, and the true nature of the Class Vehicles, because Defendants:

a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

b.    intentionally concealed the foregoing from regulators, Plaintiffs, and/or Alabama State Class members; and/or

c.    made incomplete representations about the Class Vehicles generally, and the Vehicles' ability to deliver high performance and low emissions, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

147.    Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the Alabama State Class.

148.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Alabama Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of Defendants' brands, and the true value of the Class Vehicles.

149.    The Alabama State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information.

150.    Plaintiffs and the Alabama State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information, including but not limited to payment for additional fuel costs required by the lower fuel economy performance in their vehicles.

151.    Pursuant to Ala. Code § 8-19-10(e), Plaintiffs have or will timely provide a notice letter to Defendants. Notice has been previously been provided to Defendants arising out of the facts giving rise to these claims. Additionally, Defendants were provided notice of these issues

by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

152.    The Alabama Class seeks all damages and relief to which it is entitled.

**ALABAMA COUNT II**
**Breach of Express Warranty**
**Ala. Code §§ 7-2-313 and 7-2A-210**
**(On Behalf of the Alabama State Class)**

153.    Plaintiffs brings this claim on behalf of herself and the members of the Class, or alternatively, the Alabama Class, under the laws of that state, against Defendants.

154.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

155.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ala. Code §§ 7-2-104(1) and 7-2A-103(3), and a "seller" of motor vehicles under § 7-2-103(1)(d).

156.    With respect to leases, Defendants are and were at all relevant times a "lessor[s]" of motor vehicles under Ala. Code. § 7-2A-103(1)(p).

157.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ala. Code §§ 7-2-105(1) and 7-2A-103(1)(h).

158.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to cover "any repair to correct a manufacturers defect in materials or workmanship."

159.    Defendants also made numerous representations, descriptions, and promises to Plaintiffs and Alabama State Class members regarding the performance and emission controls of their vehicles.

160.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that

1   it is free from defects in material and workmanship which would cause it not to meet those

2   standards."

3       161.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide

4   two federal emission control warranties: a "Performance Warranty" and a "Design and Defect

5   Warranty."

6       162.    The EPA requires vehicle manufacturers to provide a Performance Warranty with

7   respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty

8   for its vehicles through a Federal Emissions Performance Warranty. The Performance Warranty

9   required by the EPA applies to repairs that are required during the first two years or 24,000

10  miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain

11  major emission control components are covered for the first eight years or 80,000 miles

12  (whichever comes first). These major emission control components subject to the longer

13  warranty include the catalytic converters, the electronic emission control unit, and the onboard

14  emission diagnostic device or computer.

15      163.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties

16  with respect to their vehicles' emission systems. Thus, Defendants also provide an express

17  warranty for their vehicles through a Federal Emission Control System Defect Warranty. The

18  Design and Defect Warranty required by the EPA covers repair of emission control or emission

19  related parts, which fail to function or function improperly because of a defect in materials or

20  workmanship. This warranty provides protection for two years or 24,000 miles, whichever

21  comes first, or, for the major emission control components, for eight years or 80,000 miles,

22  whichever comes first.

23      164.    As manufacturers of light-duty vehicles, Defendants were required to provide

24  these warranties to purchasers or lessees of Class Vehicles.

25      165.    Defendants' warranties formed a basis of the bargain that was reached when

26  consumers purchased or leased Class Vehicles that are equipped with the defeat devices, higher-

27  than-advertised emissions, and overstated fuel economy.

28

---

CLASS ACTION COMPLAINT

166.     Despite the existence of warranties, Defendants failed to inform Alabama State Class members that Defendants, through defeat devices and drivetrain manipulation, caused the Class Vehicles to emit more $CO_2$ and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and failed to fix the defective emission components free of charge.

167.     Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

168.     Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

169.     Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Alabama State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

170.     Accordingly, recovery by the Alabama State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

171.     Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Alabama State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

172.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship, as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or

continued failure to provide such limited remedy within a reasonable time, and any limitation on the Alabama State Class members' remedies would be insufficient to make them whole.

173. Finally, because of Defendants' breach of warranty as set forth herein, Alabama State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

174. Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

175. As a direct and proximate result of Defendants' breach of express warranties, Alabama State Class members have been damaged in an amount to be determined at trial.

**ALABAMA COUNT III**
**Violation of Implied Warranty of Merchantability**
**Ala. Code §§ 7-2-314 and 7-2A-212**
**(On Behalf of the Alabama State Class)**

176. Plaintiffs brings this claim on behalf of herself and the members of the Class, or alternatively, the Alabama State Class, under the laws of that state, against Defendants.

177. Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

178. Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ala. Code §§ 7-2-104(1) and 7-2A-103(3), and a "seller" of motor vehicles under § 7-2-103(1)(d).

179. With respect to leases, Defendants are and were at all relevant times a "lessor[s]" of motor vehicles under Ala. Code. § 7-2A-103(1)(p).

180. The Class Vehicles are and were at all relevant times "goods" within the meaning of Ala. Code §§ 7-2-105(1) and 7-2A-103(1)(h).

181.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ala. Code §§ 7-2-314 and 7-2A-212.

182.     These Class Vehicles, when sold or leased and at all times thereafter, differed materially from the vehicles Defendants submitted for emissions testing. The tested vehicles included manipulated hardware and software that led to inflated and misleading fuel economy and emissions rating, and did not comply with emissions regulations when being driven in Sport Plus mode. Class Vehicles were therefore not fit for the ordinary purpose for which vehicles are used.

183.     Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

184.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Alabama State Class members have been damaged in an amount to be proven at trial.

**ALASKA COUNT I**
**Violation of Alaska Unfair Trade Practices and Consumer Protection Act**
**Alaska Stat. Ann. § 45.50.471 et seq.**
**(On Behalf of the Alaska State Class)**

185.     Plaintiffs brings this claim on behalf of herself and the members of the Class, or alternatively, the Alaska Class, under the laws of that state, against Defendants.

186.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

187.     The Alaska Unfair Trade Practices And Consumer Protection Act ("Alaska CPA") declares unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce unlawful, including: "(4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person

does not have;" "(6) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" "(8) advertising goods or services with intent not to sell them as advertised;" or "(12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged." Alaska Stat. § 45.50.471.

188.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by altering the drivetrains in vehicles submitted for emissions testing so that they differed from vehicles released to consumers; installing software in the ECU of Vehicles designed to lower emissions during testing; and/or falsely promising that Vehicles could pass emissions tests in Sport Plus mode. During normal operations, the Class Vehicles would emit larger quantities of $CO2$, and other pollutants, and consume more fuel.

189.    Alaska State Class members had no way of discerning that Defendants' representations were false and misleading because Defendants' manipulation of emissions-related hardware and software used extremely sophisticated technology and techniques. Alabama Class members did not and could not unravel Defendants' deception on their own.

190.    Defendants thus violated the Alaska CPA by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

191.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Alaska State Class.

1      192.      Defendants knew or should have known that their conduct violated the Alaska

2   CPA.

3      193.      Defendants owed Plaintiffs and the Alaska State Class a duty to disclose the

4   illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

5         a.   possessed exclusive knowledge that they were manufacturing, selling, and

6              distributing vehicles throughout the United States that did not perform as

7              advertised;

8         b.   intentionally concealed the foregoing from regulators, Plaintiffs, and/or Alaska

9              State Class members; and/or

10        c.   made incomplete representations about the Class Vehicles generally, and the

11             Vehicles' ability to deliver high performance and low emissions, while

12             purposefully withholding material facts from Plaintiffs that contradicted these

13             representations.

14     194.      Defendants' fraudulent manipulation of hardware and software in testing

15   vehicles and its concealment of the Class Vehicles' true fuel consumption and emissions were

16   material to the Alaska State Class.

17     195.      Defendants' unfair or deceptive acts or practices were likely to and did in fact

18   deceive regulators and reasonable consumers, including the Alaska Class, about the true

19   environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of Defendants'

20   brands, and the true value of the Class Vehicles.

21     196.      Defendants' violations present a continuing risk to Plaintiffs as well as to the

22   general public. Defendants' unlawful acts and practices complained of herein affect the public

23   interest

24     197.      As a direct and proximate result of Defendants' violations of the Alaska CPA,

25   Plaintiffs and the Alaska State Class have suffered injury-in-fact and/or actual damage.

26     198.      Pursuant to Alaska Stat. § 45.50. 531, Plaintiffs and the Alaska State Class seek

27   monetary relief against Defendants measured as the greater of (a) three times the actual damages

28

in an amount to be determined at trial or (b) $500 for each Plaintiffs and each Alaska State Class member.

199.      Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices pursuant to Alaska Stat. § 45.50. 535, attorneys' fees, and any other just and proper relief available under the Alaska CPA.

200.      Pursuant to Alaska Stat. § 45.50.535, Pursuant to Ala. Code § 8-19-10(e), Plaintiffs have or will timely provide a notice letter to Defendants. Notice has been previously been provided to Defendants arising out of the facts giving rise to these claims. Additionally, Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

201.      The Alaska Class seeks all damages and relief to which it is entitled.

**ALASKA COUNT II**
**Breach of Express Warranty**
**Alaska Stat. §§ 45.02.313 and 45.12.210**
**(On Behalf of the Alaska State Class)**

202.      Plaintiffs brings this claim on behalf of herself and the members of the Class, or alternatively, the Alaska Class, under the laws of that state, against Defendants.

203.      Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

204.      Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Alaska Stat. §§ 45.02.104(a) and 45.12.103(c)(11), and a "seller" of motor vehicles under Alaska Stat. § 45.02.103(a)(4).

205.      With respect to leases, Defendants are and were at all relevant times a "lessor[s]" of motor vehicles under Alaska Stat. § 45.12.103(a)(16).

206.      The Class Vehicles are and were at all relevant times "goods" within the meaning of Alaska Stat. §§ 45.02.105(a) and 45.12.103(a)(8).

207.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to cover "any repair to correct a manufacturers defect in materials or workmanship."

208.    Defendants also made numerous representations, descriptions, and promises to Plaintiffs and Alabama State Class members regarding the performance and emission controls of their vehicles.

209.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

210.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

211.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for its vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

212.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The

Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

213.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

214.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles that are equipped with the defeat devices, higher-than-advertised emissions, and overstated fuel economy.

215.    Despite the existence of warranties, Defendants failed to inform Alaska State Class members that Defendants, through defeat devices and drivetrain manipulation, caused the Class Vehicles to emit more $CO_2$ and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and failed to fix the defective emission components free of charge.

216.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

217.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

218.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Alabama State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

219.    Accordingly, recovery by the Alaska State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

220.     Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Alaska State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

221.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship, as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on the Alaska State Class members' remedies would be insufficient to make them whole.

222.     Finally, because of Defendants' breach of warranty as set forth herein, Alaska State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

223.     Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

224.     As a direct and proximate result of Defendants' breach of express warranties, Alaska State Class members have been damaged in an amount to be determined at trial.

**ALASKA COUNT III**
**Breach of Implied Warranty of Merchantability**
**Alaska Stat. §§ 45.02.314 and 45.12.212**
**(On Behalf of the Alaska State Class)**

225.     Plaintiffs brings this claim on behalf of herself and the members of the Class, or alternatively, the Alaska Class, under the laws of that state, against Defendants.

226.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

227.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Alaska Stat. §§ 45.02.104(a) and 45.12.103(c)(11), and a "seller" of motor vehicles under Alaska Stat. § 45.02.103(a)(4).

228.    With respect to leases, Defendants are and were at all relevant times a "lessor[s]" of motor vehicles under Alaska Stat. § 45.12.103(a)(16).

229.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Alaska Stat. §§ 45.02.105(a) and 45.12.103(a)(8).

230.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Alaska Stat. §§ 45.02.314 and 45.12.212.

231.    These Class Vehicles, when sold or leased and at all times thereafter, differed materially from the vehicles Defendants submitted for emissions testing. The tested vehicles included manipulated hardware and software that led to inflated and misleading fuel economy and emissions rating, and did not comply with emissions regulations when being driven in Sport Plus mode. Class Vehicles were therefore not fit for the ordinary purpose for which vehicles are used.

232.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

233.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Alaska State Class members have been damaged in an amount to be proven at trial.

**ARIZONA COUNT I:**
**Violations of the Arizona Consumer Fraud Act**
**Ariz. Rev. Stat. § 44-1521, et seq.**
**(On Behalf of the Arizona State Class)**

234.    Plaintiffs brings this claim on behalf of herself and the members of the Class, or alternatively, the Arizona Class, under the laws of that state, against Defendants.

235. Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

236. Defendants and the Arizona State Class members are "persons" within the meaning of the Arizona Consumer Fraud Act ("Arizona CFA"), Ariz. Rev. Stat. § 44-1521(6).

237. The Class Vehicles are "merchandise" within the meaning of Ariz. Rev. Stat. § 44-1521(5).

238. The Arizona CFA provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. § 44-1522(A).

239. In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by altering the drivetrains in vehicles submitted for emissions testing so that they differed from vehicles released to consumers; installing software in the ECU of Vehicles designed to lower emissions during testing; and/or falsely promising that Vehicles could pass emissions tests in Sport Plus mode. During normal operations, the Class Vehicles would emit larger quantities of $CO_2$ and consume more fuel.

240. Arizona State Class members had no way of discerning that Defendants' representations were false and misleading because Defendants' manipulation of emissions-related hardware and software used extremely sophisticated technology and techniques. Arizona Class members did not and could not unravel Defendants' deception on their own.

241. Defendants thus violated the Arizona CFA by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and

representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

242.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Alabama State Class.

243.    Defendants knew or should have known that their conduct violated the Arizona CFA.

244.    Defendants owed the Arizona State Class a duty to disclose the illegality and public health risks, and the true nature of the Class Vehicles, because Defendants:

    a.  possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

    b.  intentionally concealed the foregoing from regulators, Plaintiffs, and/or Alaska State Class members; and/or

    c.  made incomplete representations about the Class Vehicles generally, and the Vehicles' ability to deliver high performance and low emissions, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

245.    Defendants' fraudulent manipulation of hardware and software in testing vehicles and its concealment of the Class Vehicles' true fuel consumption and emissions were material to the Arizona State Class.

246.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Arizona Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of Defendants' brands, and the true value of the Class Vehicles.

247.    The Arizona State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information.

248.     Plaintiffs and the Arizona State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information, including but not limited to payment for additional fuel costs required by the lower fuel economy performance in their vehicles.

249.     The Arizona State Class seeks monetary relief against Defendants in an amount to be determined at trial. The Arizona State Class also seeks punitive damages because Defendants engaged in aggravated and outrageous conduct.

250.     The Arizona State Class also seeks an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

**ARIZONA COUNT II:**
**Breach of Express Warranty**
**Ariz. Rev. Stat. §§ 47-2313 and 47-2A210**
**(On Behalf of the Arizona State Class)**

251.     Plaintiffs brings this claim on behalf of herself and the members of the Class, or alternatively, the Arizona Class, under the laws of that state, against Defendants.

252.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

253.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ariz. Rev. Stat. §§ 47-2104(A) and 47-2a103(c); and is a "seller" of motor vehicles under Ariz. Rev. Stat. § 47-2103(A)(4).

254.     With respect to leases, Defendants are and were at all relevant times a "lessor[s]" of motor vehicles under Ariz. Rev. Stat. § 47-2a103(A)(16).

255.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Ariz. Rev. Stat. §§ 47-2105(A) and 47-2a103(A)(8).

256.     In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever

occurs first. This warranty exists to cover "any repair to correct a manufacturers defect in materials or workmanship."

257.    Defendants also made numerous representations, descriptions, and promises to Plaintiffs and Alabama State Class members regarding the performance and emission controls of their vehicles.

258.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

259.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

260.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for its vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

261.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or

workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

262.     As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

263.     Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles that are equipped with the defeat devices, higher-than-advertised emissions, and overstated fuel economy.

264.     Despite the existence of warranties, Defendants failed to inform Arizona State Class members that Defendants, through defeat devices and drivetrain manipulation, caused the Class Vehicles to emit more $CO_2$ and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and failed to fix the defective emission components free of charge.

265.     Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

266.     Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

267.     Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Alabama State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

268.     Accordingly, recovery by the Arizona State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

269.     Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and

did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Arizona State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

270.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship, as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on the Arizona State Class members' remedies would be insufficient to make them whole.

271.    Finally, because of Defendants' breach of warranty as set forth herein, Arizona State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

272.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

273.    As a direct and proximate result of Defendants' breach of express warranties, Arizona State Class members have been damaged in an amount to be determined at trial.

**ARIZONA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Ariz. Rev. Stat. §§ 47-2314 and 47-2A212**
**(On Behalf of the Arizona State Class)**

274.    Plaintiffs brings this claim on behalf of herself and the members of the Class, or alternatively, the Arizona Class, under the laws of that state, against Defendants.

275.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

276.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ariz. Rev. Stat. §§ 47-2104(A) and 47-2a103(c); and is a "seller" of motor vehicles under Ariz. Rev. Stat. § 47-2103(A)(4).

277.    With respect to leases, Defendants are and were at all relevant times a "lessor[s]" of motor vehicles under Ariz. Rev. Stat. § 47-2a103(A)(16).

278.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ariz. Rev. Stat. §§ 47-2105(A) and 47-2a103(A)(8).

279.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ariz. Rev. Stat. §§ 47-2314 and 47-2a212

280.    These Class Vehicles, when sold or leased and at all times thereafter, included software that led to inflated and misleading fuel economy values, and were therefore not fit for the ordinary purpose for which vehicles are used.

281.    Defendants were provided notice of these issues by the investigations of the EPA and California state regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

282.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Arizona State Class members have been damaged in an amount to be proven at trial.

**ARKANSAS COUNT I:**
**Violations of the Deceptive Trade Practices Act**
**Ark. Code Ann. § 4-88-101 et seq.**
**(On Behalf of the Arizona State Class)**

283.    Plaintiffs brings this claim on behalf of herself and the members of the Class, or alternatively, the Arkansas Class, under the laws of that state, against Defendants.

284.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

285.    Defendants and the members of the Arkansas State Class are "persons" within the meaning of Arkansas Deceptive Trade Practices Act ("Arkansas DTPA"), Ark. Code Ann. § 4-88-102(5).

286.    The Class Vehicles are "goods" within the meaning of Ark. Code Ann. § 4-88-102(4).

287.    The Arkansas DTPA prohibits "[d]eceptive and unconscionable trade practices," which include, but are not limited to, a list of enumerated items, including "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade[.]" Ark. Code Ann. § 4-88-107(a)(10). The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission." Ark. Code Ann. § 4-88-108.

288.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by altering the drivetrains in vehicles submitted for emissions testing so that they differed from vehicles released to consumers; installing software in the ECU of Vehicles designed to lower emissions during testing; and/or falsely promising that Vehicles could pass emissions tests in Sport Plus mode. During normal operations, the Class Vehicles would emit larger quantities of $CO_2$ and consume more fuel.

289.    Arkansas State Class members had no way of discerning that Defendants' representations were false and misleading because Defendants' manipulation of emissions-related hardware and software used extremely sophisticated technology and techniques. Arkansas Class members did not and could not unravel Defendants' deception on their own.

290.    Defendants thus violated the Arkansas DTPA by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are

not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

291.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Arkansas State Class.

292.    Defendants knew or should have known that their conduct violated the Arkansas DTPA.

293.    Defendants owed the Arkansas State Class a duty to disclose the illegality and public health risks, and the true nature of the Class Vehicles, because Defendants:

a.  possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

b.  intentionally concealed the foregoing from regulators, Plaintiffs, and/or Arkansas State Class members; and/or

c.  made incomplete representations about the Class Vehicles generally, and the Vehicles' ability to deliver high performance and low emissions, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

294.    Defendants' fraudulent manipulation of hardware and software in testing vehicles and its concealment of the Class Vehicles' true fuel consumption and emissions were material to the Arkansas State Class.

295.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Arkansas Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of Defendants' brands, and the true value of the Class Vehicles.

296.    The Arkansas State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Arkansas DTPA. All owners of Class Vehicles

suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

297.    As a direct and proximate result of Defendants' violations of the Arkansas DTPA, the members of the Arkansas State Class have suffered injury-in-fact and/or actual damage.

298.    The Arkansas State Class seeks monetary relief against Defendants in an amount to be determined at trial. The Arkansas State Class also seeks punitive damages because Defendants acted wantonly in causing the injury or with conscious indifference to the consequences.

299.    Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

**ARKANSAS COUNT II:**
**Breach of Express Warranty**
**Ark Code Ann. §§ 4-2-313 and 4-2A-210**
**(On Behalf of the Arizona State Class)**

300.    Plaintiffs brings this claim on behalf of herself and the members of the Class, or alternatively, the Arkansas Class, under the laws of that state, against Defendants.

301.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

302.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ark. Code §§ 4-2-104(1) and 4-2A-103(3), and "seller[s]" of motor vehicles under § 4-2-103(1)(d).

303.    With respect to leases, Defendants are and were at all relevant times a "lessor[s]" of motor vehicles under Ark. Code § 4-2A-103(1)(p).

304.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ark. Code §§ 4-2-105(1) and 4-2A-103(1)(h).

305.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to cover "any repair to correct a manufacturers defect in materials or workmanship."

306.    Defendants also made numerous representations, descriptions, and promises to Plaintiffs and Arkansas State Class members regarding the performance and emission controls of their vehicles.

307.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

308.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

309.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for its vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

310.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The

Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

311.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

312.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles that are equipped with the defeat devices, higher-than-advertised emissions, and overstated fuel economy.

313.    Despite the existence of warranties, Defendants failed to inform Arkansas State Class members that Defendants, through defeat devices and drivetrain manipulation, caused the Class Vehicles to emit more $CO_2$ and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and failed to fix the defective emission components free of charge.

314.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

315.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

316.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Arkansas State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

317.    Accordingly, recovery by the Arkansas State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

318.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Arkansas State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

319.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship, as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on the Arkansas State Class members' remedies would be insufficient to make them whole.

320.    Finally, because of Defendants' breach of warranty as set forth herein, Arkansas State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

321.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

322.    As a direct and proximate result of Defendants' breach of express warranties, Alabama State Class members have been damaged in an amount to be determined at trial.

**ARKANSAS COUNT II:**
**Breach of Implied Warranty of Merchantability**
**Ark Code Ann. §§ 4-2-314 and 4-2A-212**
**(On Behalf of the Arizona State Class)**

323.    Plaintiffs brings this claim on behalf of herself and the members of the Class, or alternatively, the Arkansas Class, under the laws of that state, against Defendants.

324.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

325.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ark. Code §§ 4-2-104(1) and 4-2A-103(3), and "seller[s]" of motor vehicles under § 4-2-103(1)(d).

326.    With respect to leases, Defendants are and were at all relevant times a "lessor[s]" of motor vehicles under Ark. Code § 4-2A-103(1)(p).

327.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ark. Code §§ 4-2-105(1) and 4-2A-103(1)(h).

328.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ark. Code §§ 4-2-314 and 4-2A-212.

329.    These Class Vehicles, when sold or leased and at all times thereafter, differed materially from the vehicles Defendants submitted for emissions testing. The tested vehicles included manipulated hardware and software that led to inflated and misleading fuel economy and emissions rating, and did not comply with emissions regulations when being driven in Sport Plus mode. Class Vehicles were therefore not fit for the ordinary purpose for which vehicles are used.

330.    Defendants were provided notice of these issues by the investigations of the governmental investigations, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

331.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Arkansas State Class members have been damaged in an amount to be proven at trial.

### CALIFORNIA COUNT I
**Violation of California's Consumer Legal Remedies Act,**
**Cal. Civ. Code § 1750, *et seq.*, ("CLRA")**
**(On Behalf of the California State Class)**

332.    Plaintiff Schubert brings this claim on behalf of himself and the members of the Class, or alternatively, the California Class, under the laws of that state, against Defendants.

333.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

334.     California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

335.     Each Defendant is a "person" as defined by Cal. Civ. Code § 1761(c).

336.     Plaintiffs and Class members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

337.     Defendants provide "goods" or "services" within the meaning of Cal. Civ. Code §§ 1761(a), 1761(b) and 1770. The sale or lease of the Class Vehicles constitutes sale or lease of such goods or services.

338.     Plaintiffs and Class members engaged in "transactions" under Cal. Civ. Code § 1761(e), including the purchase and lease of Defendants' vehicles.

339.     Porsche made misleading representations or omissions concerning the characteristics of the Class Vehicles, including the vehicle's $CO_2$ emissions and performance.

340.     Plaintiffs and Class members were deceived into purchasing or leasing the vehicle by Porsche's failure to disclose that it manipulated testing results and that Class Vehicles had higher-than-advertised $CO_2$ emissions.

341.     The facts, which Defendants misrepresented and concealed as alleged in the preceding paragraphs, were material to Plaintiffs' and Class members' decisions about whether to purchase the Class Vehicle.

342.     In violation of Cal. Civ. Code § 1770(a)(5), Defendants represented that the Class Vehicle had characteristics, uses, and benefits that it does not have.

343.     Additionally, by the conduct described in this complaint, Defendants have violated Cal. Civ. Code § 1770(a)(7), (9), and (16) by representing that the Class Vehicle is of a standard, quality, or grade that it is not; by advertising the Class Vehicle with intent not to sell

the Class Vehicles as advertised; by representing that the Vehicles were supplied in accordance with a previous representation when it was not.

344.     Defendants had a duty to disclose the omitted facts because it had exclusive knowledge of material facts not known to Plaintiffs and Class members (that it had manipulated testing to comply with government emissions standards), because they actively concealed material facts, and because they did not provide Plaintiffs and Class members proper notice of the defect, and because they otherwise suppressed true material facts.

345.     Plaintiffs and members of the Class have suffered harm as a result of these violations of the CLRA because they have paid money to Defendants that they otherwise would not have paid.

346.     Under Cal. Civ. Code § 1780, Plaintiffs and Class members seek appropriate equitable relief, including an order enjoining Defendants from the unlawful practices described herein, as well as recovery of attorneys' fees and costs of litigation

347.     Pursuant to Cal. Civ. Code § 1782, Plaintiffs have or will timely provide a notice letter to Defendants. Notice has been previously been provided to Defendants arising out of the facts giving rise to these claims. Additionally, Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time. If Defendants fail to provide the relief demanded within the time allowed by law, Plaintiffs will amend their complaint to seek actual and punitive damages for violation of the CLRA.

348.     Attached hereto is the venue declaration required by CLRA, Cal. Civ. Code § 1780(d).[41]

**CALIFORNIA COUNT II**
**Violations of the California Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL")**
**(On Behalf of the California State Class)**

---

[41] A declaration may be used in lieu of an affidavit. Cal. Civ. Code § 2015.5.

349.     Plaintiff Schubert brings this claim on behalf of himself and the members of the Class, or alternatively, the California Class, under the laws of that state, against Defendants.

350.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

351.     California Bus. & Prof. Code § 17200, *et seq.*, prohibits acts of unfair competition, including any "unlawful, unfair or fraudulent business act or practice."

352.     Defendants have engaged in a pattern and practice of acts of unfair competition in violation of California's UCL, including the practices alleged herein.

*353.*     By violating the Plaintiffs' and other Class members' rights, and engaging in the activity recited above, Defendants have committed and continue to commit and engage in "unlawful, unfair or fraudulent business acts or practices" as defined in Bus. & Prof. Code § 17200, *et seq.*

354.     Cal. Bus. & Prof. Code § 17204 provides that an action for violation of California's unfair competition law may be brought by persons who have suffered injury in fact and have lost money or property as a result of such unfair competition, and Cal. Bus. & Prof. Code § 17203 provides that a court may grant injunctive and equitable relief to such persons.

355.     The unlawful conduct of Defendants alleged herein, are acts of unfair competition under Cal. Bus. & Prof. Code § 17200, *et seq.*, for which Defendants are liable and for which the court should issue equitable and injunctive relief, including restitution, pursuant to Cal. Bus. & Prof. Code § 17203.

356.     Defendants violated the California's UCL (a) by knowingly and intentionally concealing from Plaintiffs and California State Class members that the Class Vehicles suffer from a design defect while obtaining money from the California State Class members (b) by marketing Class Vehicles as possessing functional and defect-free, EPA-compliant engine systems; and (c) by purposefully designing and manufacturing the Class Vehicles to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and

represented to consumers who purchased or leased them, and failing to fix the defective emission component free of charge.

357.    Through their conduct, Defendants have engaged in unfair business practices in California by employing and utilizing the practices complained of herein. Defendants' use of such unfair business practices constitutes unfair competition that has provided and continues to provide Defendants with an unfair advantage over their competitors.

358.    Defendants' conduct as alleged herein is unlawful, unfair, and fraudulent.

359.    Defendants' conduct as alleged herein is "unlawful" in that, among other things, it violates the California Consumer Legal Remedies Act, state consumer protection acts, the Magnuson -Moss warranty act, and constitutes fraudulent concealment.

360.    Defendants' conduct as alleged herein is also "unfair." Defendants' policy of misrepresenting that their products are not defective and inducing individuals to buy their products by providing these misrepresentations, constitutes an unfair business act or practice within the meaning of Cal. Bus. & Prof. Code § 17200, *et seq.*, in that the justification for Defendants' conduct is outweighed by the gravity of the consequences to the general public. There were reasonable available alternatives for Defendants to further their business interests other than misleading the public. Indeed, the burden and expense of disclosing accurate information about the Class Vehicles $CO_2$ and $NO_x$ emissions would be minimal while the negative impact on the general public in the aggregate is significant. Such conduct is also contrary to public policy, immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

361.    Further, Defendants' conduct constitutes "unfair" business acts and practices because Defendants' practices are "likely to cause substantial injury" to Plaintiffs and members of the general public, which are not "reasonably avoidable" by Plaintiffs and members of the general public and the injury is "not outweighed" by the practice's benefits to Plaintiffs and members of the general public. Such conduct is ongoing and continues to this date.

362.     Plaintiffs and members of the general public relied upon Defendants' unfair business acts and practices - the material representations, omissions, and non-disclosures - to their detriment.

363.     Plaintiffs and members of the general public have suffered injury in fact and have lost money as a result of Defendants' unfair business acts and practices.

364.     Defendants' scheme, as alleged herein, is also "fraudulent," in that it is knowingly calculated and likely to mislead.

365.     As more fully described above, Defendants knowingly and intentionally concealed from Plaintiffs and Class members that the Class Vehicle have higher-than advertised $CO_2$ and $NOx$ emissions, lower fuel economy, and that complying with governmental emissions standards would have sacrificed performance of Class Vehicles.

366.     Defendants knew, recklessly disregarded, or should have known that their representations, omissions, and non-disclosures were false, misleading, untrue, deceptive, or likely to deceive or mislead the public.

367.     Plaintiffs and members of the Class relied upon Defendants' material representations, omissions, and non-disclosures to their detriment.

368.     Plaintiffs and members of the Class have suffered injury in fact and have lost money as a result of Defendants' fraudulent business acts and practices. This injury was directly and substantially caused by Defendants' intentional acts, as alleged above.

369.     Defendants have continued to take steps to perpetuate these deceitful practices against Plaintiffs, Class members, and the general public. Unless enjoined, Defendants will continue to harm Plaintiffs, Class members, and the general public.

370.     As a result of Defendants' unfair business practices, Defendants have reaped unfair benefits and illegal profits at the expense of the Plaintiffs and Class members. Defendants should be made to disgorge its ill-gotten gains and restore such monies to Plaintiffs and Class members. Defendants' unfair business practices furthermore entitle Plaintiffs and Class members herein to obtain preliminary and permanent injunctive relief, including, but not limited

to, orders that Defendants cease its complained-of practices and account for, disgorge, and restore to Plaintiffs and Class members the compensation unlawfully obtained from them.

**CALIFORNIA COUNT III:**
**Violations of the California False Advertising Law**
**Cal. Civ. Code § 17500 et seq.**
**(On Behalf of the California Class)**

371.    Plaintiff Schubert brings this claim on behalf of himself and the members of the Class, or alternatively, the California Class, under the laws of that state, against Defendants.

372.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

373.    California Bus. & Prof. Code § 17500 states: "It is unlawful for any ... corporation ... with intent directly or indirectly to dispose of real or personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, ... or in any other manner or means whatever, including over the Internet, any statement ... which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

374.    Defendants caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including the California State Class members.

375.    Defendants have violated § 17500 because the misrepresentations and omissions regarding the reliability and functionality of Class Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

376.    Plaintiffs and the other California State Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, the California State Class relied on the misrepresentations and/or omissions of Defendants with respect to the

performance and reliability of the Class Vehicles. Defendants' representations turned out not to be true because the Class Vehicles are distributed emit higher-than-advertised emissions and obtained lower fuel economy ratings.

377.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

378.    The California State Class requests that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to the California State Class any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

**CALIFORNIA COUNT IV:**
**Breach of Express Warranty**
**Cal. Com. Code §§ 2313 and 10210**
**(On Behalf of the California Class)**

Plaintiff Schubert brings this claim on behalf of himself and the members of the Class, or alternatively, the California Class, under the laws of that state, against Defendants.

379.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein

380.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and "sellers" of motor vehicles under § 2103(1)(d).

381.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Cal. Com. Code § 10103(a)(16).

382.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

383.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever

occurs first. This warranty exists to cover "any repair to correct a manufacturers defect in materials or workmanship."

384.     Defendants also made numerous representations, descriptions, and promises to Plaintiffs and Alabama State Class members regarding the performance and emission controls of their vehicles.

385.     For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

386.     The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

387.     The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for its vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

388.     The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or

workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

389.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

390.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles that are equipped with the defeat devices, higher-than-advertised emissions, and overstated fuel economy.

391.    Despite the existence of warranties, Defendants failed to inform California State Class members that Defendants, through defeat devices and drivetrain manipulation, caused the Class Vehicles to emit more $CO_2$ and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and failed to fix the defective emission components free of charge.

392.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

393.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

394.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make California State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

395.    Accordingly, recovery by the California State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

396.     Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. California State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

397.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship, as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on the Alabama State Class members' remedies would be insufficient to make them whole.

398.     Finally, because of Defendants' breach of warranty as set forth herein, California State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

399.     Defendants were provided notice of these issues by Porsche's own internal investigations, the investigations of the Stuttgart Public Prosecutor's office and the German Federal Motor Transport Authority (KBA), and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

400.     As a direct and proximate result of Defendants' breach of express warranties, California State Class members have been damaged in an amount to be determined at trial.

**CALIFORNIA COUNT V:**
**Breach of Implied Warranty of Merchantability**
**Cal. Com. Code §§ 2314 and 10212**
**(On Behalf of the California State Class)**

401.     Plaintiff Schubert brings this claim on behalf of himself and the members of the Class, or alternatively, the California Class, under the laws of that state, against Defendants.

402.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein

403.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and "sellers" of motor vehicles under § 2103(1)(d).

404.     With respect to leases, Defendants are and were at all relevant times a "lessor[s]" of motor vehicles under Cal. Com. Code § 10103(a)(16)

405.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

406.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Cal. Com. Code §§ 2314 and 10212.

407.     These Class Vehicles, when sold or leased and at all times thereafter, included software that led to inflated and misleading fuel economy values, and were therefore not fit for the ordinary purpose for which vehicles are used.

408.     Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

409.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, California State Class members have been damaged in an amount to be proven at trial.

**CALIFORNIA COUNT VI:**
**Violation of Song-Beverly Consumer Warranty Act, Breach of Implied Warranty**
**Cal Civ. Code § 1790, *et seq.***
**(On Behalf of the California State Class)**

410.     Plaintiff Schubert brings this claim on behalf of himself and the members of the Class, or alternatively, the California Class, under the laws of that state, against Defendants.

411.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein

CLASS ACTION COMPLAINT

412.    Members of the California State Class who purchased Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791.

413.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

414.    Defendants are the "manufacturer[s]" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

415.    Defendants impliedly warranted to Plaintiffs and the other members of the California State Class that the Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792; however, the Class Vehicles do not have the quality that a buyer would reasonably expect

416.    Defendants' vehicles are not merchantable. The vehicles are unfit for the ordinary purposes for which such goods are used and were not of the same quality of those generally acceptable in the trade. In breach of the implied warranty of merchantability, Defendants placed Class Vehicles that, when sold or leased and at all times thereafter, differed materially from the vehicles Defendants submitted for emissions testing. The tested vehicles included manipulated hardware and software that led to inflated and misleading fuel economy and emissions rating, and did not comply with emissions regulations when being driven in Sport Plus mode. Class Vehicles were therefore not fit for the ordinary purpose for which vehicles are used.

417.    Defendants' vehicles were not reasonably fit for their intended use when Defendants put the Class Vehicles on the market.

418.    The defects in the vehicles were not open or obvious to consumers.

419.    Any purported limitation of the duration and scope of the implied warranty of merchantability given by Defendants is unreasonable, unconscionable and void, because Defendants knew or recklessly disregarded the defect in the fuel tank, which could not be discovered, if at all, until the vehicles were used for a period of time longer than the period of any written warranty, and Defendants willfully withheld information about the defects from purchasers of the vehicles.

420.     Moreover, due to the unequal bargaining power between the parties, Plaintiffs and Class members had no meaningful alternative to accepting Defendants' attempted pro forma limitation of the duration of any warranties.

421.     As a direct and proximate result, Plaintiffs and Class members have been damaged in that, inter alia, they would not have purchased or would have paid substantially less for Defendants' vehicles.

422.     Defendants' breach of the implied warranty was a substantial factor in causing Plaintiffs' and Class members' harm.

**CALIFORNIA COUNT VII:**
**Violation of Song-Beverly Consumer Warranty Act, Breach of Express Warranty**
**Cal Civ. Code § 1790, *et seq.***
**(On Behalf of the California State Class)**

423.     Plaintiff Schubert brings this claim on behalf of himself and the members of the Class, or alternatively, the California Class, under the laws of that state, against Defendants.

424.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein

425.     Members of the California State Class who purchased or leased the Class Vehicles in California are "buyers" within the meaning of California Civil Code § 1791(b).

426.     The Class Vehicles are "consumer goods" within the meaning of California Civil Code § 1791(a).

427.     Defendants are "manufacturer[s]" of the Class Vehicles within the meaning of California Civil Code § 1791(j).

428.     Defendants made express warranties to members of the California State Class within the meaning of California Civil Code §§ 1791.2 and 1793.2, as described above.

429.     As set forth above in detail, Defendants failed to inform California State Class members that Defendants, through defeat devices and drivetrain manipulation, caused the Class Vehicles to emit more $CO_2$ and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and failed to fix the defective emission components free of charge.

430.     As a result of Defendants' breach of their express warranties, members of the California State Class received goods whose defect substantially impairs their value to Plaintiffs and the other members of the California State Class. Members of the California State Class have been damaged as a result of, *inter alia*, the diminished value of Defendants' products.

431.     Pursuant to California Civil Code §§ 1793.2 & 1794, members of the California State Class are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

432.     Pursuant to California Civil Code § 1794, the Class is entitled to costs and attorneys' fees.

**CALIFORNIA COUNT VIII:**
**Breach of Express Emissions Warranties**
**Cal. Civ. Code § 1793.2, *et seq.***
**(On Behalf of the California State Class**

433.     Plaintiff Schubert brings this claim on behalf of himself and the members of the Class, or alternatively, the California Class, under the laws of that state, against Defendants.

434.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein

435.     Each class vehicle is covered by express California Emissions Warranties as a matter of law. See Cal. Health & Safety Code § 43205; Cal. Code Regs. tit. 13, § 2037.

436.     The express California Emissions Warranties generally provide "that the vehicle or engine is . . . [d]esigned, built, and equipped so as to conform with all applicable regulations adopted by the Air Resources Board." *Id.* This provision applies without any time or mileage limitation. *See id.*

437.     The California Emissions Warranties also specifically warrant consumers against any performance failure of the emissions control system for three years or 50,000 miles, whichever occurs first, and against any defect in any emission-related part for seven years or 70,000 miles, whichever occurs first. *See id.*

438.    California law imposes express duties "on the manufacturer of consumer goods sold in this state and for which the manufacturer has made an express warranty." Cal. Civ. Code § 1793.2.

439.    Among those duties, "[i]f the manufacturer or its representative in this state is unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle or promptly make restitution to the buyer" at the vehicle owner's option. *See* Cal. Civ. Code § 1793.2(d)(2).

440.    Plaintiffs and Class members are excused from the requirement to "deliver nonconforming goods to the manufacturer's service and repair facility within this state" because Defendants are refusing to accept them and delivery of the California Vehicles "cannot reasonably be accomplished." Cal. Civ. Code § 1793.2(c).

441.    This Complaint is written notice of nonconformity to Defendants and "shall constitute return of the goods." *Id.*

442.    Plaintiffs and California State Class members are excused from any requirement that they allow a "reasonable number of attempts" to bring California Vehicles into conformity with their California Emissions Warranties based on futility because FCA has no ability to do so at this time.

443.    In addition to all other damages and remedies, California State Class members are entitled to "recover a civil penalty of up to two times the amount of damages" for the aforementioned violation. *See* Cal. Civ. Code § 1794(e)(1).

### CALIFORNIA COUNT IX:
### Failure to Recall/Retrofit
### (On Behalf of the California State Class

444.    Plaintiff Schubert brings this claim on behalf of himself and the members of the Class, or alternatively, the California Class, under the laws of that state, against Defendants.

445.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein

446.    Defendants manufactured, marketed, distributed, sold, or otherwise placed into the stream of U.S. commerce the Class Vehicles, as set forth above.

447.    Defendants knew or reasonably should have known that the Class Vehicles emit a substantially increased amount of pollution and reasonably should have known that the Class Vehicles were likely to be dangerous when used in a reasonably foreseeable manner.

448.    Defendants failed to recall the Class Vehicles in a timely manner or warn of the Class Vehicles' heightened emissions.

449.    A reasonable manufacturer in same or similar circumstances would have timely and properly recalled the Class Vehicles.

450.    Plaintiffs and California State Class members were harmed by Defendants' failure to recall the Class Vehicles properly and in a timely manner and, as a result, have suffered damages, caused by Defendants' ongoing failure to properly recall, retrofit, and fully repair the Class Vehicles.

451.    Defendants' failure to timely recall the Class Vehicles was a substantial factor in causing harm to Plaintiffs and California State Class members as alleged herein.

452.    Plaintiffs brings this claim on behalf of herself and the members of the Class, or alternatively, the Arizona Class, under the laws of that state, against Defendants.

**COLORADO COUNT I:**
**Violations of the Colorado Consumer Protection Act**
**Colo. Rev. Stat. § 6-1-101, *et seq.***
**(On Behalf of the Colorado State Class)**

453.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

454.    This claim is brought on behalf of the Colorado State Class against all Defendants.

455.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein

456.    This claim is brought on behalf of the Colorado State Class against all Defendants.

CLASS ACTION COMPLAINT

457.    Defendants are "person[s]" under § 6-1-102(6) of the Colorado Consumer Protection Act "Colorado CPA"), Col. Rev. Stat. § 6-1-101, *et seq.*

458.    Colorado State Class members are "consumers" for purposes of Col. Rev. Stat § 6-1-113(1)(a) who purchased or leased one or more Class Vehicles.

459.    The Colorado CPA prohibits deceptive trade practices in the course of a person's business. Defendants engaged in deceptive trade practices prohibited by the Colorado CPA, including: (1) knowingly making a false representation as to the characteristics, uses, and benefits of the Class Vehicles that had the capacity or tendency to deceive Colorado State Class members; (2) representing that the Class Vehicles are of a particular standard, quality, and grade even though Defendants knew or should have known they are not; (3) advertising the Class Vehicles with the intent not to sell them as advertised; and (4) failing to disclose material information concerning the Class Vehicles that was known to Defendants at the time of advertisement or sale with the intent to induce Colorado State Class members to purchase, lease or retain the Class Vehicles.

460.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by altering the drivetrains in vehicles submitted for emissions testing so that they differed from vehicles released to consumers; installing software in the ECU of Vehicles designed to lower emissions during testing; and/or falsely promising that Vehicles could pass emissions tests in Sport Plus mode. During normal operations, the Class Vehicles would emit larger quantities of $CO_2$, and other pollutants, and consume more fuel.

461.    Colorado State Class members had no way of discerning that Defendants' representations were false and misleading because Defendants' manipulation of emissions-related hardware and software used extremely sophisticated technology and techniques. Colorado Class members did not and could not unravel Defendants' deception on their own.

462.    Defendants thus violated the Colorado CPA by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have;

representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

463.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Colorado State Class.

464.    Defendants knew or should have known that their conduct violated the Colorado CPA.

465.    Defendants owed Plaintiffs and the Colorado State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

    a.  possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

    b.  intentionally concealed the foregoing from regulators, Plaintiffs, and/or Colorado State Class members; and/or

    c.  made incomplete representations about the Class Vehicles generally, and the Vehicles' ability to deliver high performance and low emissions, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

466.    Defendants' fraudulent manipulation of hardware and software in testing vehicles and its concealment of the Class Vehicles' true fuel consumption and emissions were material to the Colorado State Class.

467.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Colorado Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of Defendants' brands, and the true value of the Class Vehicles.

CLASS ACTION COMPLAINT

468.     Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest

469.     The Colorado State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Colorado CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

**COLORADO COUNT II:**
**Breach of Express Warranty**
**Colo. Rev. Stat. §§ 4-2-313 and 4-2.5-210**
**(On Behalf of the Colorado State Class**

470.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

471.     This claim is brought on behalf of the Colorado State Class against all Defendants.

472.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3), and "sellers" of motor vehicles under § 4-2-103(1)(d).

473.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Colo. Rev. Stat. § 4-2.5-103(1)(p).

474.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

475.     In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

453.    Defendants also made numerous representations, descriptions, and promises to Colorado State Class members regarding the performance and emission controls of their vehicles.

454.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

455.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

456.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

457.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or

emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

458.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

459.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

460.    Despite the existence of warranties, Defendants failed to inform Colorado State Class members that the Class Vehicles were defective and were intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

461.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

462.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

463.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Colorado State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

464.     Accordingly, recovery by Colorado State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

465.     Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Colorado State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

466.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Colorado State Class members' remedies would be insufficient to make them whole.

467.     Finally, because of Defendants' breach of warranty as set forth herein, Colorado State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

476.     Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

477.    As a direct and proximate result of Defendants' breach of express warranties, Colorado State Class members have been damaged in an amount to be determined at trial.

**COLORADO COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Colo. Rev. Stat. §§ 4-2-314 and 4-2.5-212**
**(On Behalf of the Colorado State Class)**

478.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

479.    This count is brought on behalf of the Colorado State Class against all Defendants.

480.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3), and "sellers" of motor vehicles under § 4-2-103(1)(d).

481.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Colo. Rev. Stat. § 4-2.5-103(1)(p).

482.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

483.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Colo. Rev. Stat. 1§§ 4-2-313 and 4-2.5-212.

484.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

485.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

486.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Colorado State Class members have been damaged in an amount to be proven at trial.

**CONNECTICUT COUNT I:**
**Violations of Connecticut Unlawful Trade Practice Act**
**Conn. Gen. Stat. § 42-110a, et seq.**
**(On Behalf of the Connecticut State Class)**

487.     Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

488.     This claim is brought on behalf the Connecticut State Class against all Defendants.

489.     The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).

490.     Defendants are "person[s]" within the meaning of Conn. Gen. Stat. § 42-110a(3).

491.     Defendants engaged in "trade" or "commerce" within the meaning of Conn. Gen. Stat. § 42-110a(4).

492.     Defendants participated in deceptive trade practices that violated the Connecticut UTPA as described herein.

493.     In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

494.     Connecticut State Class members had no way of discerning that Defendants' representations were false and misleading because Connecticut State Class members did not

1    have access to Defendants' emissions certification test vehicles and Defendants' emissions-

2    related hardware and software was extremely sophisticated technology.

3    495.    Defendants thus violated the Connecticut UTPA by, at minimum: employing

4    deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or

5    omission of any material fact with intent that others rely upon such concealment, suppression or

6    omission, in connection with the sale of Class Vehicles.

7    496.    Defendants intentionally and knowingly misrepresented material facts regarding

8    the Class Vehicles with intent to mislead the Connecticut State Class.

9    497.    Defendants knew or should have known that their conduct violated the

10   Connecticut UTPA.

11   498.    Defendants owed the Connecticut State Class a duty to disclose the illegality and

12   public health risks, the true nature of the Class Vehicles, because Defendants:

13           a.    possessed exclusive knowledge that they were manufacturing, selling, and

14               distributing vehicles throughout the United States that did not perform as

15               advertised;

16           b.    intentionally concealed the foregoing from regulators and Connecticut State

17               Class members; and/or

18           c.    made incomplete representations about the Class Vehicles' fuel economy and

19               emissions while purposefully withholding material facts that contradicted these

20               representations.

21   499.    Defendants' concealment of the Class Vehicles' true fuel consumption and

22   emissions was material to the Connecticut State Class.

23   500.    Defendants' unfair or deceptive acts or practices were likely to and did in fact

24   deceive regulators and reasonable consumers, including the Connecticut State Class, about the

25   true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the

26   Defendants' brands, and the true value of the Class Vehicles.

27

28

501.     The Connecticut State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information.

502.     The Connecticut State Class seeks monetary relief against Defendants in an amount to be determined at trial. The Connecticut State Class also seeks punitive damages because Defendants engaged in aggravated and outrageous conduct.

503.     The Connecticut State Class also seeks an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Connecticut CFA.

504.     Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Connecticut UTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

505.     Defendants' violations present a continuing risk to the Connecticut State Class, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

506.     As a direct and proximate result of Defendants' violations of the Connecticut UTPA, the Connecticut State Class have suffered injury-in-fact and/or actual damage.

507.     Class members are entitled to recover their actual damages, punitive damages, and attorneys' fees pursuant to Conn. Gen. Stat. § 42-110g. Defendants acted with a reckless indifference to another's rights or wanton or intentional violation to another's rights and otherwise engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights of others.

**CONNECTICUT COUNT II:**
**Breach of Express Warranty**
**Conn. Gen. Stat. Ann. § 42A-2-313**
**(On Behalf of the Connecticut State Class)**

508.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

509.    This claim is brought on behalf the Connecticut State Class against all Defendants.

510.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Conn. Gen. Stat. Ann. § 42a-2-104(1).

511.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

512.    Defendants also made numerous representations, descriptions, and promises to Connecticut State Class members regarding the performance and emission controls of their vehicles.

513.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

514.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

515.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles

(whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

516.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

517.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

518.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

519.    Despite the existence of warranties, Defendants failed to inform Connecticut State Class members that the Class Vehicles were defective and were intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

520.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

521.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

522.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy

is insufficient to make Connecticut State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

523.    Accordingly, recovery by Connecticut State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

524.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Connecticut State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

525.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Connecticut State Class members' remedies would be insufficient to make them whole.

526.    Finally, because of Defendants' breach of warranty as set forth herein, Connecticut State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

527.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

528.    As a direct and proximate result of Defendants' breach of express warranties, Connecticut State Class members have been damaged in an amount to be determined at trial.

**CONNECTICUT COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Conn. Gen. Stat. Ann. § 42A-2-314**
**(On Behalf of the Connecticut State Class)**

529.     Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

530.     This claim is brought on behalf the Connecticut State Class against all Defendants.

531.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Conn. Gen. Stat. Ann. § 42a-2-104(1).

532.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Conn. Gen. Stat. Ann. § 42a-2-314.

533.     These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

534.     Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

535.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Connecticut State Class members have been damaged in an amount to be proven at trial.

**DELAWARE COUNT I:**
**Violations of the Delaware Consumer Fraud Act**
**6 Del. Code § 2513 et seq.**
**(On Behalf of the Delaware State Class)**

536.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

537.    This count is brought on behalf of the Delaware State Class against all Defendants.

538.    Defendants are "person[s]" within the meaning of 6 Del. Code § 2511(7).

539.    The Delaware Consumer Fraud Act ("Delaware CFA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby." 6 Del. Code § 2513(a).

540.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

541.    Delaware State Class members had no way of discerning that Defendants' representations were false and misleading because the Delaware State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

542.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

543.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Delaware State Class.

544.     Defendants knew or should have known that their conduct violated the Delaware CFA.

545.     Defendants owed the Delaware State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

    a.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

    b.   intentionally concealed the foregoing from regulators and Delaware State Class members; and/or

    c.   made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

546.     Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the Delaware State Class.

547.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Delaware State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of Defendants' brands, and the true value of the Class Vehicles.

548.     Defendants' violations present a continuing risk to the Delaware Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

549.     The Delaware State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Delaware CFA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

550.     As a direct and proximate result of Defendants' violations of the Delaware CFA, the Delaware State Class have suffered injury-in-fact and/or actual damage.

551.     The Delaware State Class seeks damages under the Delaware CFA for injury resulting from the direct and natural consequences of Defendants' unlawful conduct. See, e.g., Stephenson v. Capano Dev., Inc., 462 A.2d 1069, 1077 (Del. 1983). The Delaware State Class also seeks an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Delaware CFA.

552.     Defendants engaged in gross, oppressive or aggravated conduct justifying the imposition of punitive damages.

**DELAWARE COUNT II:**
**Breach of Express Warranty**
**6 Del. Code §§ 2-313 and 2A-210**
**(On Behalf of the Delaware State Class)**

553.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

554.     This count is brought on behalf of the Delaware State Class against all Defendants.

555.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 6 Del. C. §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

556.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 6 Del. C. § 2A-103(1)(p).

557.     The Class Vehicles are and were at all relevant times "goods" within the meaning of 6 Del. C. §§ 2-105(1) and 2A-103(1)(h).

558.     In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever

occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

559.    Defendants also made numerous representations, descriptions, and promises to Delaware State Class members regarding the performance and emission controls of their vehicles.

560.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

561.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

562.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

563.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or

workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

564.     As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

565.     Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

566.     Despite the existence of warranties, Defendants failed to inform Delaware State Class members that the Class Vehicles were defective and were intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

567.     Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

568.     Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

569.     Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Delaware State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

570.     Accordingly, recovery by the Delaware State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

571.     Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently

concealed material facts regarding the Class Vehicles. Delaware State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

572.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Delaware State Class members' remedies would be insufficient to make them whole.

573.    Finally, because of Defendants' breach of warranty as set forth herein, Delaware State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

574.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

575.    As a direct and proximate result of Defendants' breach of express warranties, Delaware State Class members have been damaged in an amount to be determined at trial.

**DELAWARE COUNT III:**
**Breach of Implied Warranty of Merchantability**
**6. Del. Code §§ 2-314 and 7-2A-212**
**(On Behalf of the Delaware State Class)**

576.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

577.    This count is brought on behalf of the Delaware State Class against all Defendants.

578.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 6 Del. C. §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

579.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 6 Del. C. § 2A-103(1)(p).

580.     The Class Vehicles are and were at all relevant times "goods" within the meaning of 6 Del. C. §§ 2-105(1) and 2A-103(1)(h).

581.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 6 Del. C. §§ 2-314 and 2A-212.

582.     These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

583.     Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

584.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Delaware State Class members have been damaged in an amount to be proven at trial.

### DISTRICT OF COLUMBIA COUNT I:
### Violations of the Consumer Protection Procedures Act
### D.C. Code § 28-3901 et seq.
### (On Behalf of the District of Columbia Class)

585.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

586.     This count is brought on behalf of the District of Columbia Class against all Defendants.

587.     Defendants are "person[s]" under the Consumer Protection Procedures Act ("District of Columbia CPPA"), D.C. Code § 28-3901(a)(1).

588.    Class members are "consumers," as defined by D.C. Code § 28-3901(1)(2), who purchased or leased one or more Class Vehicles.

589.    Defendants' actions as set forth herein constitute "trade practices" under D.C. Code § 28-3901.

590.    Defendants participated in unfair or deceptive acts or practices that violated the District of Columbia CPPA. By willfully failing to disclose and actively concealing that they submitted vehicles for emissions testing that were different from production vehicles, installed secret software, and falsely attested that Sport Plus code could pass emissions tests, Defendants engaged in unfair or deceptive practices prohibited by the District of Columbia CPPA, D.C. Code § 28-3901, et seq., including: (1) representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Class Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Class Vehicles with the intent not to sell them as advertised; (4) representing that the subject of a transaction involving the Class Vehicles has been supplied in accordance with a previous representation when it has not; (5) misrepresenting as to a material fact which has a tendency to mislead; and (6) failing to state a material fact when such failure tends to mislead.

591.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

592.    District of Columbia Class members had no way of discerning that Defendants' representations were false and misleading because the District of Columbia Class Members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

593.     Defendants thus violated the District of Columbia CPPA by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

594.     Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the District of Columbia Class.

595.     Defendants knew or should have known that their conduct violated the District of Columbia CPPA.

596.     Defendants the District of Columbia Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

    a.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

    b.   intentionally concealed the foregoing from regulators and District of Columbia Class members; and/or

    c.   made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

597.     Defendants' concealment of the true characteristics of the Class Vehicles' fuel consumption and emissions were material to the District of Columbia Class.

598.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the District of Columbia Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

599.    Defendants' violations present a continuing risk to the District of Columbia Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

600.    The District of Columbia Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the District of Columbia CPPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

601.    As a direct and proximate result of Defendants' violations of the District of Columbia CPPA, the District of Columbia Class have suffered injury-in-fact and/or actual damage.

602.    The District of Columbia Class are entitled to recover treble damages or $1,500, whichever is greater, punitive damages, reasonable attorneys' fees, and any other relief the Court deems proper, under D.C. Code § 28-3901.

603.    The District of Columbia Class seeks punitive damages against Defendants because their conduct evidences egregious conduct. Defendants egregiously misrepresented the fuel economy and emissions of the Class Vehicles and concealed material facts that only they knew. Defendants' unlawful conduct warrants punitive damages.

**DISTRICT OF COLUMBIA COUNT II:**
**Breach of Express Warranty**
**D.C. Code §§ 28:2-313 and 28:2A-210**
**(On Behalf of the District of Columbia Class)**

604.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

605.    This count is brought on behalf of the District of Columbia Class against all Defendants.

606.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under D.C. Code §§ 28:2-104(1) and 28:2A-103(a)(20), and "sellers" of motor vehicles under § 28:2-103(1)(d).

607.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under D.C. Code § 28:2A-103(a)(16).

608.    The Class Vehicles are and were at all relevant times "goods" within the meaning of D.C. Code §§ 28:2-105(1) and 28:2A-103(a)(8).

609.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

610.    Defendants also made numerous representations, descriptions, and promises to District of Columbia Class members regarding the performance and emission controls of their vehicles.

611.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

612.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

613.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty,

certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

614.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

615.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

616.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

617.    Despite the existence of warranties, Defendants failed to inform District of Columbia Class members that the Class Vehicles were defective and were intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

618.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

619.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

620.     Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make District of Columbia Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

621.     Accordingly, recovery by District of Columbia Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

622.     Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. District of Columbia Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

623.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on District of Columbia Class members' remedies would be insufficient to make them whole.

624.     Finally, because of Defendants' breach of warranty as set forth herein, District of Columbia Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

625.     Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

626.     As a direct and proximate result of Defendants' breach of express warranties, District of Columbia Class members have been damaged in an amount to be determined at trial.

### DISTRICT OF COLUMBIA COUNT III:
### Breach of Implied Warranty of Merchantability
### D.C. Code §§ 28:2-314 and 28:2A-212
### (On Behalf of the District of Columbia Class)

627.     Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

628.     This count is brought on behalf of the District of Columbia Class against all Defendants.

629.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under D.C. Code §§ 28:2-104(1) and 28:2A-103(a)(20), and "sellers" of motor vehicles under § 28:2-103(1)(d).

630.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under D.C. Code § 28:2A-103(a)(16).

631.     The Class Vehicles are and were at all relevant times "goods" within the meaning of D.C. Code §§ 28:2-105(1) and 28:2A-103(a)(8).

632.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to D.C. Code §§ 28:2-314 and 28:2A-212.

633.     These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

634.     Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

635.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, District of Columbia Class members have been damaged in an amount to be proven at trial.

**FLORIDA COUNT I:**
**Violations of the Florida Unfair & Deceptive Trade Practices Act**
**Fla. Stat. § 501.201, et seq.**
**(On Behalf of the Florida State Class)**

636.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

637.    This claim is brought on behalf the Florida State Class against all Defendants.

638.    Members of the Florida State Class are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), Fla. Stat. § 501.203(7).

639.    Defendants engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

640.    FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . ." Fla. Stat. § 501.204(1). Defendants participated in unfair and deceptive trade practices that violated the FUDTPA as described herein.

641.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

642.    Florida State Class members had no way of discerning that Defendants' representations were false and misleading because Florida State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

643.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

644.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Florida State Class.

645.    Defendants knew or should have known that their conduct violated the FUDTPA.

646.    Defendants owed the Florida State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

    a.  possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

    b.  intentionally concealed the foregoing from regulators and Florida State Class members; and/or

    c.  made incomplete representations about the Class Vehicles' fuel economy and emissions, while purposefully withholding material facts from the Florida State Class that contradicted these representations.

647.    Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the Florida State Class.

648.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Florida State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

649.    Defendants' violations present a continuing risk to the Florida State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

650.    The Florida State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the FUDTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

651.    As a direct and proximate result of Defendants' violations of the FUDTPA, members of the Florida State Class have suffered injury-in-fact and/or actual damage.

652.    The Florida State Class is entitled to recover actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

653.    The Florida State Class also seeks an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FUDTPA.

**FLORIDA COUNT II:**
**Breach of Express Warranty**
**F.S.A. §§ 672.313 and 680.21**
**(On Behalf of the Florida State Class)**

654.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

655.    This claim is brought on behalf the Florida State Class against all Defendants.

656.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under F.S.A. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of motor vehicles under § 672.103(1)(d).

657.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under F.S.A. § 680.1031(1)(p).

658.     The Class Vehicles are and were at all relevant times "goods" within the meaning of F.S.A. §§ 672.105(1) and 680.1031(1)(h).

659.     In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

660.     Defendants also made numerous representations, descriptions, and promises to Florida State Class members regarding the performance and emission controls of their vehicles.

661.     For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

662.     The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

663.     The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

664.     The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express

warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

665.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

666.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

667.    Despite the existence of warranties, Defendants failed to inform Florida State Class members that the Class Vehicles were defective and were intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

668.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

669.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

670.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Florida State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

671.    Accordingly, recovery by Florida State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

CLASS ACTION COMPLAINT

672.     Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Florida State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

673.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on the Florida State Class members' remedies would be insufficient to make them whole.

674.     Finally, because of Defendants' breach of warranty as set forth herein, Florida State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

675.     Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

676.     As a direct and proximate result of Defendants' breach of express warranties, Florida State Class members have been damaged in an amount to be determined at trial.

**FLORIDA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**F.S.A. §§ 672.314 and 680.212**
**(On Behalf of the Florida State Class)**

677.     Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

678.     This claim is brought on behalf the Florida State Class against all Defendants.

679.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under F.S.A. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of motor vehicles under § 672.103(1)(d).

680.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under F.S.A. § 680.1031(1)(p).

681.     The Class Vehicles are and were at all relevant times "goods" within the meaning of F.S.A. §§ 672.105(1) and 680.1031(1)(h).

682.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to F.S.A. §§ 672.314 and 680.212.

683.     These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

684.     Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

685.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Florida State Class members have been damaged in an amount to be proven at trial.

**GEORGIA COUNT I:**
**Violations of Georgia's Fair Business Practices Act**
**Ga. Code Ann. § 10-1-390 et seq.**
**(On Behalf of the Georgia State Class)**

686.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

687.     This claim is brought on behalf the Georgia State Class against all Defendants.

CLASS ACTION COMPLAINT

688.    The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code. Ann. § 10-1-393(a), including but not limited to "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised," Ga. Code. Ann. § 10-1-393(b).

689.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

690.    Georgia State Class members had no way of discerning that Defendants' representations were false and misleading because Georgia State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

691.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Georgia State Class.

692.    Defendants knew or should have known that their conduct violated the Georgia FBPA.

693.    Defendants owed the Georgia State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

      a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

b.   intentionally concealed the foregoing from regulators and Georgia State Class members; and/or

c.   made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts from George State Class members that contradicted these representations.

694.    Defendants' concealment of the true characteristics of the Class Vehicles' fuel consumption and emissions were material to the Georgia State Class.

695.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Georgia State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

696.    Defendants' violations present a continuing risk to the Georgia State Class, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

697.    The Georgia State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Georgia FBPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

698.    As a direct and proximate result of Defendants' violations of the Georgia FBPA, the Georgia State Class has suffered injury-in-fact and/or actual damage.

699.    The Georgia State Class is entitled to recover damages and exemplary damages (for intentional violations) per Ga. Code. Ann. § 10-1-399(a).

700.    The Georgia State Class also seeks an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia FBPA per Ga. Code. Ann. § 10-1-399.

701.     Pursuant to Ga. Code Ann. § 10-1-399, Plaintiffs have or will timely provide a notice letter to Defendants. Notice has been previously been provided to Defendants arising out of the facts giving rise to these claims. Additionally, Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time. The Georgia State Class seeks all damages and relief to which it is entitled.

**GEORGIA COUNT II:**
**Violations of Georgia's Uniform Deceptive Trade Practices Act**
**Ga. Code Ann. § 10-1-370 et seq.**
**(On Behalf of the Georgia State Class)**

702.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

703.     This claim is brought on behalf the Georgia State Class against all Defendants.

704.     Defendants and members of the Georgia State Class are "persons" within the meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), Ga. Code. Ann. § 10-1-371(5).

705.     The Georgia UDTPA prohibits "deceptive trade practices," which include the "misrepresentation of standard or quality of goods or services," and "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code. Ann. § 10-1-372(a).

706.     In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

707.     Georgia State Class members had no way of discerning that Defendants' representations were false and misleading because Georgia State Class members did not have

1    access to Defendants' emissions certification test vehicles and Defendants' emissions-related

2    hardware and software was extremely sophisticated technology.

3        708.        Defendants thus violated the Act by, at minimum: representing that Class

4    Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing

5    that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising

6    Class Vehicles with the intent not to sell or lease them as advertised; and representing that the

7    subject of a transaction involving Class Vehicles has been supplied in accordance with a

8    previous representation when it has not.

9        709.        Defendants intentionally and knowingly misrepresented material facts regarding

10   the Class Vehicles with intent to mislead the Georgia State Class.

11       710.        Defendants knew or should have known that their conduct violated the Georgia

12   UDTPA.

13       711.        Defendants owed the Georgia State Class a duty to disclose the illegality and

14   public health risks, the true nature of the Class Vehicles, because Defendants:

15             a.    possessed exclusive knowledge that they were manufacturing, selling, and

16                   distributing vehicles throughout the United States that did not perform as

17                   advertised;

18             b.    intentionally concealed the foregoing from regulators and Georgia State Class

19                   members; and/or

20             c.    made incomplete representations about the Class Vehicles' fuel economy and

21                   emissions while purposefully withholding material facts that contradicted these

22                   representations.

23       712.        Defendants' concealment of the Class Vehicles' true fuel consumption and

24   emissions was material to the Georgia State Class.

25       713.        Defendants' unfair or deceptive acts or practices were likely to and did in fact

26   deceive regulators and reasonable consumers, including the Georgia State Class, about the true

27

28

environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

714.    Defendants' violations present a continuing risk to the Georgia State Class, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

715.    The Georgia State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Georgia UDTPA. All owners and lessees of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

716.    As a direct and proximate result of Defendants' violations of the Georgia UDTPA, the Georgia State Class have suffered injury-in-fact and/or actual damage.

717.    The Georgia State Class seeks an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA per Ga. Code. Ann § 10-1-373.

**GEORGIA COUNT III:**
**Breach of Express Warranty**
**Ga. Code Ann. §§ 11-2-313 and 11-2A-210**
**(On Behalf of the Georgia State Class)**

718.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

719.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

720.    This claim is brought on behalf the Georgia State Class against all Defendants.

721.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and a "seller" of motor vehicles under § 11-2-103(1)(d).

722.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ga. Code Ann. § 11-2A-103(1)(p).

723.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

724.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

725.    Defendants also made numerous representations, descriptions, and promises to Georgia State Class members regarding the performance and emission controls of their vehicles.

726.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

727.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

728.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

729.      The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

730.      As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

731.      Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

732.      Despite the existence of warranties, Defendants failed to inform Georgia State Class members that the Class Vehicles were defective and were intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

733.      Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

734.      Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

735.      Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Georgia State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

736.     Accordingly, recovery by Georgia State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

737.     Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Georgia State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

738.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Georgia State Class members' remedies would be insufficient to make them whole.

739.     Finally, because of Defendants' breach of warranty as set forth herein, Georgia State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

740.     Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

741.     As a direct and proximate result of Defendants' breach of express warranties, Georgia State Class members have been damaged in an amount to be determined at trial.

**GEORGIA COUNT IV:**
**Breach of Implied Warranty of Merchantability**
**Ga. Code Ann. §§ 11-2-314 and 11-2A-212**
**(On Behalf of the Georgia State Class)**

742.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

743.    This claim is brought on behalf the Georgia State Class against all Defendants.

744.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and a "seller" of motor vehicles under § 11-2-103(1)(d).

745.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ga. Code Ann. § 11-2A-103(1)(p).

746.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

747.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ga. Code Ann. §§ 11-2-314 and 11-2A-212.

748.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

749.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

750.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Georgia State Class members have been damaged in an amount to be proven at trial.

**HAWAII COUNT I:**
**Unfair and Deceptive Acts in Violation of Hawaii Law**
**Haw. Rev. Stat. § 480 et seq.**
**(On Behalf of the Hawaii State Class)**

751.    Plaintiffs re-allege and incorporate by reference each preceding paragraph as though fully set forth herein.

752.    This count is brought on behalf of the Hawaii State Class against all Defendants.

753.    Defendants are "person[s]" under Haw. Rev. Stat. § 480-1.

754.    Hawaii State Class members are "consumer[s]" as defined by Haw. Rev. Stat. § 480-1, who purchased or leased one or more Class Vehicles.

755.    Defendants' acts or practices as set forth above occurred in the conduct of trade or commerce.

756.    The Hawaii Act § 480-2(a) prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ."

757.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

758.    Hawaii State Class members had no way of discerning that Defendants' representations were false and misleading because Hawaii State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

759.    Defendants thus violated the Hawaii Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

760.     Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Hawaii State Class.

761.     Defendants knew or should have known that their conduct violated Hawaii law.

762.     Defendants owed the Hawaii State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

    a.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

    b.   intentionally concealed the foregoing from regulators and Hawaii State Class members; and/or

    c.   made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

763.     Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the Hawaii State Class.

764.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Hawaii State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

765.     Defendants' violations present a continuing risk to the Hawaii State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

766.     The Hawaii State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under Hawaii law. All owners of Class Vehicles suffered

ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

**HAWAII COUNT II:**
**Breach of Express Warranty**
**Haw. Rev. Stat. §§ 490:2-313 and 490:2A-210**
**(On Behalf of the Hawaii State Class)**

767.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

768.     This count is brought on behalf of the Hawaii State Class against all Defendants.

769.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Haw. Rev. Stat. §§ 490:2-104(1) and 490:2A-103(b), and a "seller" of motor vehicles under § 490:2-103(1)(d).

770.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Haw. Rev. Stat. § 490:2A-103(a)(16).

771.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Haw. Rev. Stat. §§ 490:2-105(1) and 490:2A-103(a)(8).

772.     In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

773.     Defendants also made numerous representations, descriptions, and promises to Hawaii State Class members regarding the performance and emission controls of their vehicles.

774.     For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

775.     The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

776.     The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

777.     The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

778.     As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

779.     Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

780.     Despite the existence of warranties, Defendants failed to inform Hawaii State Class members that the Class Vehicles were defective and were intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what

1    was disclosed to regulators and represented to consumers who purchased or leased them, and

2    Defendants failed to fix the defective emission components free of charge.

3        781.    Defendants breached the express warranty promising to repair and correct

4    Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted,

5    and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

6        782.    Affording Defendants a reasonable opportunity to cure their breach of written

7    warranties would be unnecessary and futile here.

8        783.    Furthermore, the limited warranty promising to repair and correct Defendants'

9    defect in materials and workmanship fails in its essential purpose because the contractual remedy

10   is insufficient to make Hawaii State Class members whole and because Defendants have failed

11   and/or have refused to adequately provide the promised remedies within a reasonable time.

12       784.    Accordingly, recovery by Hawaii State Class members is not restricted to the

13   limited warranty promising to repair and correct Defendants' defect in materials and

14   workmanship, and they seek all remedies as allowed by law.

15       785.    Also, as alleged in more detail herein, at the time Defendants warranted and sold

16   or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and

17   did not conform to their warranties; further, Defendants had wrongfully and fraudulently

18   concealed material facts regarding the Class Vehicles. Hawaii State Class members were

19   therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

20       786.    Moreover, many of the injuries flowing from the Class Vehicles cannot be

21   resolved through the limited remedy of repairing and correcting Defendants' defect in materials

22   and workmanship as many incidental and consequential damages have already been suffered

23   because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or

24   continued failure to provide such limited remedy within a reasonable time, and any limitation

25   on Hawaii State Class members' remedies would be insufficient to make them whole.

26       787.    Finally, because of Defendants' breach of warranty as set forth herein, Hawaii

27   State Class members assert, as additional and/or alternative remedies, the revocation of

28

acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

788.      Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

789.      As a direct and proximate result of Defendants' breach of express warranties, Hawaii State Class members have been damaged in an amount to be determined at trial.

### HAWAII COUNT III:
### Breach of Implied Warranty of Merchantability
### Haw. Rev. Stat. §§ 490:2-314 and 490:2A-212
### (On Behalf of the Hawaii State Class)

790.      Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

791.      This count is brought on behalf of the Hawaii State Class against all Defendants.

792.      Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Haw. Rev. Stat. §§ 490:2-104(1) and 490:2A-103(b), and a "seller" of motor vehicles under § 490:2-103(1)(d).

793.      With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Haw. Rev. Stat. § 490:2A-103(a)(16).

794.      The Class Vehicles are and were at all relevant times "goods" within the meaning of Haw. Rev. Stat. §§ 490:2-105(1) and 490:2A-103(a)(8).

795.      A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Haw. Rev. Stat. §§ 490:2-314 and 490:2A-212.

796.      These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply

with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

797.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

798.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Hawaii State Class members have been damaged in an amount to be proven at trial.

## IDAHO COUNT I:
### Violations of the Idaho Consumer Protection Act
### Idaho Code § 48-601 et seq.
### (On Behalf of the Idaho State Class)

799.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

800.    This count is brought on behalf of the Idaho State Class against all Defendants.

801.    Defendants are "person[s]" under the Idaho Consumer Protection Act ("Idaho CPA"), Idaho Code § 48-602(1).

802.    Defendants' acts or practices as set forth above occurred in the conduct of "trade" or "commerce" under Idaho Code § 48-602(2).

803.    Defendants participated in misleading, false, or deceptive acts that violated the Idaho CPA.

804.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

805.     Idaho State Class members had no way of discerning that Defendants' representations were false and misleading because the Idaho State Class did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

806.     Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

807.     Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Idaho State Class.

808.     Defendants knew or should have known that their conduct violated the Idaho CPA.

809.     Defendants owed the Idaho State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

    a.  possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

    b.  intentionally concealed the foregoing from regulators and Idaho State Class members; and/or

    c.  made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

810.     Defendants' concealment of the Class Vehicles' true fuel consumption and emissions were material to the Idaho State Class.

811.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Idaho State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

812.    Defendants' violations present a continuing risk to the Idaho State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

813.    The Idaho State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Idaho CPA. All owners of Class Vehicles suffered ascertainable

814.    loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

815.    As a direct and proximate result of Defendants' violations of the Idaho CPA, the Idaho State Class has suffered injury-in-fact and/or actual damage.

816.    Pursuant to Idaho Code § 48-608, the Idaho State Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $1,000 for each Idaho State Class member.

817.    The Idaho State Class also seeks an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Idaho CPA.

818.    The Idaho State Class also seeks punitive damages against Defendants because Defendants conduct evidences an extreme deviation from reasonable standards. Defendants flagrantly and fraudulently misrepresented the reliability of the Class Vehicles, deceived Class members, and concealed material facts that only they knew—all to avoid the expense and public

relations nightmare of correcting a flaw in the Class Vehicles. Defendants' unlawful conduct constitutes oppression and fraud warranting punitive damages.

**IDAHO COUNT II:**
**Breach of Express Warranty**
**Idaho Code §§ 28-2-313 and 28-12-210**
**(On Behalf of the Idaho State Class)**

819.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

820.     This count is brought on behalf of the Idaho State Class against all Defendants.

821.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Idaho Code §§ 28-2-104(1) and 28-12-103(3), and "sellers" of motor vehicles under § 28-2-103(1)(d).

822.     With respect to leases, Defendants are and were at all relevant times "lessors" ofmotor vehicles under Idaho Code § 28-12-103(1)(p).

823.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Idaho Code §§ 28-2-105(1) and 28-12-103(1)(h).

824.     In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

825.     Defendants also made numerous representations, descriptions, and promises to Idaho State Class members regarding the performance and emission controls of their vehicles.

826.     For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

827.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

828.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

829.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

830.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

831.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

832.    Despite the existence of warranties, Defendants failed to inform Idaho State Class members that the Class Vehicles were defective and were intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what

was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

833.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

834.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

835.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Idaho State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

836.    Accordingly, recovery by Idaho State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

837.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Idaho State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

838.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on the Idaho State Class members' remedies would be insufficient to make them whole.

839.    Finally, because of Defendants' breach of warranty as set forth herein, Idaho State Class members assert, as additional and/or alternative remedies, the revocation of

acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

840. Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

841. As a direct and proximate result of Defendants' breach of express warranties, Idaho State Class members have been damaged in an amount to be determined at trial.

**IDAHO COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Idaho Code §§ 28-2-314 and 28-12-212**
**(On Behalf of the Idaho State Class)**

842. Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

843. This count is brought on behalf of the Idaho State Class against all Defendants.

844. Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Idaho Code §§ 28-2-104(1) and 28-12-103(3), and "sellers" of motor vehicles under § 28-2-103(1)(d).

845. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Idaho Code § 28-12-103(1)(p).

846. The Class Vehicles are and were at all relevant times "goods" within the meaning of Idaho Code §§ 28-2-105(1) and 28-12-103(1)(h).

847. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Idaho Code §§ 28-2-314 and 28-12-212.

848. These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply

with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

849.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

850.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Idaho State Class members have been damaged in an amount to be proven at trial.

**ILLINOIS COUNT I:**
**Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ILCS 505/1, et seq. and 720 ILCS 295/1a**
**(On Behalf of the Illinois State Class)**

851.    Plaintiffs incorporate by reference each preceding paragraph as though fully setforth herein.

852.    This count is brought on behalf of the Illinois State Class against all Defendants.

853.    Defendants are "person[s]" as that term is defined in 815 ILCS 505/1(c).

854.    Members of the Illinois State Class are "consumers" as that term is defined in 8ILCS 505/1(e).

855.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact…in the conduct of trade or commerce…whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

856.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software

1    program that caused the vehicles to perform differently during emissions testing than on the

2    road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could

3    pass emissions tests when they in fact did not.

4         857.    Illinois State Class members had no way of discerning that Defendants'

5    representations were false and misleading because Illinois State Class members did not have

6    access to Defendants' emissions certification test vehicles and Defendants' emissions-related

7    hardware and software was extremely sophisticated technology. Illinois State Class members

8    did not and could not unravel Defendants' deception on their own.

9         858.    Defendants thus violated the Illinois CFA by, at minimum: representing that

10   Class Vehicles have characteristics, uses, benefits, and qualities which they do not have;

11   representing that Class Vehicles are of a particular standard, quality, and grade when they are

12   not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and

13   representing that the subject of a transaction involving Class Vehicles has been supplied in

14   accordance with a previous representation when it has not.

15        859.    Defendants intentionally and knowingly misrepresented material facts regarding

16   the Class Vehicles with intent to mislead the Illinois State Class.

17        860.    Defendants knew or should have known that their conduct violated the Illinois

18   CFA.

19        861.    Defendants owed the Illinois State Class a duty to disclose the illegality and

20   public health risks, the true nature of the Class Vehicles, because Defendants:

21            a.   possessed exclusive knowledge that they were manufacturing, selling, and

22                distributing vehicles throughout the United States that did not perform as

23                advertised;

24            b.   intentionally concealed the foregoing from regulators and Illinois State Class

25                members; and/or

26

27

28

c.  made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

862.    Defendants' concealment of the Class Vehicles' fuel consumption and emissions was material to the Illinois State Class.

863.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Illinois State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

864.    Defendants' violations present a continuing risk to the Illinois State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

865.    The Illinois State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Illinois CFA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

866.    As a direct and proximate result of Defendants' violations of the Illinois CFA, members of the Illinois State Class have suffered injury-in-fact and/or actual damage.

867.    Pursuant to 815 ILCS 505/10a(a), the Illinois State Class seeks monetary relief against Defendants in the amount of actual damages, as well as punitive damages because Defendants acted with fraud and/or malice and/or was grossly negligent.

868.    The Illinois State Class also seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1 et seq.

**ILLINOIS COUNT II:**
**Breach of Express Warranty**
**810 Ill. Comp. Stat. §§ 5/2-313 and 5/2A-210**
**(On Behalf of the Illinois State Class)**

869.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

870.     This count is brought on behalf of the Illinois State Class against all Defendants.

871.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and "sellers" of motor vehicles under § 5/2-103(1)(d).

872.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 810 Ill. Comp. Stat. § 5/2A-103(1)(p).

873.     The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 5/2-105(1) and 5/2A-103(1)(h).

874.     In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

875.     Defendants also made numerous representations, descriptions, and promises to Illinois State Class members regarding the performance and emission controls of their vehicles.

876.     For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

877.     The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

878.     The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

879.     The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

880.     As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

881.     Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

882.     Despite the existence of warranties, Defendants failed to inform Illinois State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to 2fix the defective emission components free of charge.

883.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

884.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

885.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Illinois State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

886.    Accordingly, recovery by Illinois State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

887.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Illinois State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

888.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on the Illinois State Class members' remedies would be insufficient to make them whole.

889.    Finally, because of Defendants' breach of warranty as set forth herein, Illinois State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

890. Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

891. As a direct and proximate result of Defendants' breach of express warranties, Illinois State Class members have been damaged in an amount to be determined at trial.

## ILLINOIS COUNT III:
### Breach of Implied Warranty of Merchantability
### 810 Ill. Comp. Stat. §§ 5/2-314 and 5/2A-212
### (On Behalf of the Illinois State Class)

892. Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

893. This count is brought on behalf of the Illinois State Class against all Defendants.

894. Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and "sellers" of motor vehicles under § 5/2-103(1)(d).

895. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 810 Ill. Comp. Stat. § 5/2A-103(1)(p).

896. The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 5/2-105(1) and 5/2A-103(1)(h).

897. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 810 Ill. Comp. Stat. 1§§ 28-2-314 and 28-12-212.

898. These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

899.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

900.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Illinois State Class members have been damaged in an amount to be proven at trial.

**INDIANA COUNT I:**
**Violations of the Indiana Deceptive Consumer Sales Act**
**Ind. Code § 24-5-0.5-3**
**(On Behalf of the Indiana State Class)**

901.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

902.    This count is brought on behalf of the Indiana State Class against all Defendants.

903.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

904.    Indiana State Class members had no way of discerning that Defendants' representations were false and misleading because Indiana State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology. Indiana State Class members did not and could not unravel Defendants' deception on their own.

905.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the

subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

906.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Indiana State Class.

907.    Defendants knew or should have known that their conduct violated the Indiana DCSA.

908.    Defendants owed the Indiana State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

    a.  possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

    b.  intentionally concealed the foregoing from regulators and Indiana State Class members; and/or

    c.  made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

909.    Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the Indiana State Class.

910.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Indiana State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of Defendants' brands, and the true value of the Class Vehicles.

911.    Defendants' violations present a continuing risk to the Indiana State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

912.    The Indiana State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to

disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Indiana DCSA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

913.    As a direct and proximate result of Defendants' violations of the Indiana DCSA, members of the Indiana State Class have suffered injury-in-fact and/or actual damage.

914.    Pursuant to Ind. Code § 24-5-0.5-4, the Indiana State Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each Indiana State Class member, including treble damages up to $1,000 for Defendants' willfully deceptive acts.

915.    The Indiana State Class also seeks punitive damages based on the outrageousness and recklessness of the Defendants' conduct and Defendants' high net worth.

916.    Pursuant to Ind. Code § 24-5-0.5-5(a), Plaintiffs have or will timely provide a notice letter to Defendants. Notice has been previously been provided to Defendants arising out of the facts giving rise to these claims. Additionally, Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time. The Indiana State Class seeks all damages and relief to which it is entitled.

**INDIANA COUNT II:**
**Breach of Express Warranty**
**Ind. Code §§ 26-1-3-313 and 26-1-2.1-2**
**(On Behalf of the Indiana State Class)**

917.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

918.    This count is brought on behalf of the Indiana State Class against all Defendants.

919.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ind. Code §§ 26-1-2-104(1) and 26-1-2.1-103(3), and "sellers" of motor vehicles under § 26-1-2-103(1)(d).

920. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ind. Code § 26-1-2.1-103(1)(p).

921. The Class Vehicles are and were at all relevant times "goods" within the meaning of Ind. Code §§ 26-1-2-105(1) and 26-1-2.1-103(1)(h).

922. In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

923. Defendants also made numerous representations, descriptions, and promises to Indiana State Class members regarding the performance and emission controls of their vehicles.

924. For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

925. The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

926. The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

927.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

928.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

929.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased the Class Vehicles.

930.    Despite the existence of warranties, Defendants failed to inform Indiana State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

931.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

932.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

933.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Indiana State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

934.    Accordingly, recovery by Indiana State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

935.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Indiana State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

936.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on the Indiana State Class members' remedies would be insufficient to make them whole.

937.    Finally, because of Defendants' breach of warranty as set forth herein, Indiana State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

938.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

939.    As a direct and proximate result of Defendants' breach of express warranties, Indiana State Class members have been damaged in an amount to be determined at trial.

**INDIANA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Ind. Code §§ 26-1-3-314 and 26-1-2.1-2**
**(On Behalf of the Indiana State Class)**

940.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

941.    This count is brought on behalf of the Indiana State Class against all Defendants.

942.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ind. Code §§ 26-1-2-104(1) and 26-1-2.1-103(3), and "sellers" of motor vehicles under § 26-1-2-103(1)(d).

943.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ind. Code § 26-1-2.1-103(1)(p).

944.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ind. Code §§ 26-1-2-105(1) and 26-1-2.1-103(1)(h).

945.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ind. Code §§ 26-1-2-314 and 26-1-2.1-212.

946.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

947.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

948.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Indiana State Class members have been damaged in an amount to be proven at trial.

**IOWA COUNT I:**
**Violations of the Private Right of Action For Consumer Frauds Act**
**Iowa Code § 714h.1, et seq.**
**(On Behalf of the Iowa State Class)**

949.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

950.    This count is brought on behalf of the Iowa State Class against all Defendants.

951.    Defendants are "person[s]" under Iowa Code § 714H.2(7).

952.    Iowa State Class members are "consumers," as defined by Iowa Code § 14H.2(3), who purchased or leased one or more Class Vehicles.

953.    The Iowa Private Right of Action for Consumer Frauds Act ("Iowa CFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise." Iowa Code § 714H.3.

954.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

955.    Iowa State Class members had no way of discerning that Defendants' representations were false and misleading because Iowa State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

956.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the

subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

957.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Iowa State Class.

958.    Defendants knew or should have known that their conduct violated the Iowa CFA.

959.    Defendants owed the Iowa State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

    a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

    b.    intentionally concealed the foregoing from regulators and Iowa State Class members; and/or

    c.    made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

960.    Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the Iowa State Class.

961.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Iowa State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

962.    Defendants' violations present a continuing risk to the Iowa State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

963.    The Iowa State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to

disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Iowa CFA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

964.     As a direct and proximate result of Defendants' violations of the Iowa CFA, members of the Iowa State Class have suffered injury-in-fact and/or actual damage.

965.     Pursuant to Iowa Code § 714H.5, the Iowa State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices; actual damages; in addition to an award of actual damages, statutory damages up to three times the amount of actual damages awarded as a result of Defendants' willful and wanton disregard for the rights of others; attorneys' fees; and such other equitable relief as the Court deems necessary to protect the public from further violations of the Iowa CFA.

**IOWA COUNT II:**
**Breach of Express Warranty**
**Iowa Code §§ 554.2313 and 554.13210**
**(On Behalf of the Iowa State Class)**

966.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

967.     This count is brought on behalf of the Iowa State Class against all Defendants.

968.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Iowa Code §§ 554.2104(1) and 554.13103(3), and "sellers" of motor vehicles under § 554.2103(1)(d).

969.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Iowa Code § 554.13103(1)(p).

970.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Iowa Code §§ 554.2105(1) and 554.13103(1)(h).

971.     In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever

occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

972.    Defendants also made numerous representations, descriptions, and promises to Iowa State Class members regarding the performance and emission controls of their vehicles.

973.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

974.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

975.    The EPA requires vehicle manufacturers to provide a Performance Warranty with

976.    respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

977.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever

comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

978.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

979.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

980.    Despite the existence of warranties, Defendants failed to inform Iowa State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

981.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

982.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

983.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Iowa State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

984.    Accordingly, recovery by Iowa State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

985.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently

concealed material facts regarding the Class Vehicles. Iowa State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

986.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Iowa State Class members' remedies would be insufficient to make them whole.

987.    Finally, because of Defendants' breach of warranty as set forth herein, Iowa State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

988.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

989.    As a direct and proximate result of Defendants' breach of express warranties, Iowa State Class members have been damaged in an amount to be determined at trial.

**IOWA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Iowa Code §§ 554.2314 and 554.13212**
**(On Behalf of the Iowa State Class)**

990.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

991.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

992.    This count is brought on behalf of the Iowa State Class against all Defendants.

CLASS ACTION COMPLAINT

993.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Iowa Code §§ 554.2104(1) and 554.13103(3), and "sellers" of motor vehicles under § 554.2103(1)(d).

994.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Iowa Code § 554.13103(1)(p).

995.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Iowa Code §§ 554.2105(1) and 554.13103(1)(h).

996.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Iowa Code §§ 554.2314 and 554.13212.

997.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

998.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

999.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Iowa State Class members have been damaged in an amount to be proven at trial.

**KANSAS COUNT I:**
**Violations of the Kansas Consumer Protection Act**
**1Kan. Stat. Ann. § 50-623 et seq.**
**(On Behalf of the Kansas State Class)**

1000.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1001.    This count is brought on behalf of the Kansas State Class against all Defendants.

1002. Each Defendant is a "supplier" under the Kansas Consumer Protection Act ("Kansas CPA"), Kan. Stat. Ann. § 50-624(l).

1003. Kansas State Class members are "consumers," within the meaning of Kan. Stat. Ann. § 50-624(b), who purchased or leased one or more Class Vehicles.

1004. The sale of the Class Vehicles to the Kansas State Class members was a "consumer transaction" within the meaning of Kan. Stat. Ann. § 50-624(c).

1005. The Kansas CPA states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction," Kan. Stat. Ann. § 50-626(a), and that deceptive acts or practices include: (1) knowingly making representations or with reason to know that "(A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;" and "(D) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation;" "(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;" and "(3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact." The Kansas CPA also provides that "[n]o supplier shall engage in any unconscionable act or practice in connection with a consumer transaction." Kan. Stat. Ann. § 50-627(a).

1006. In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1007. Kansas State Class members had no way of discerning that Defendants' representations were false and misleading because Kansas State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1008.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1009.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Kansas State Class.

1010.    Defendants knew or should have known that their conduct violated the Kansas CPA.

1011.    Defendants owed the Kansas State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

b.    intentionally concealed the foregoing from regulators and Kansas State Class members; and/or

c.    made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

1012.    Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the Kansas State Class.

1013.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Kansas State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1014.    Defendants' violations present a continuing risk to the Kansas State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1015.    Members of the Kansas State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Kansas CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1016.    As a direct and proximate result of Defendants' violations of the Kansas CPA, the Kansas State Class have suffered injury-in-fact and/or actual damage.

1017.    Pursuant to Kan. Stat. Ann. § 50-634, the Kansas State Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $10,000 for each Kansas State Class member.

1018.    Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under Kan. Stat. Ann § 50-623, et seq.

**KANSAS COUNT II:**
**Breach of Express Warranty**
**Kan. Stat. §§ 84-2-313 and 84-2A-210**
**(On Behalf of the Kansas State Class)**

1019.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1020.    This count is brought on behalf of the Kansas State Class against all Defendants.

1021.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Kan. Stat. §§ 84-2-104(1) and 84-2A-103(3), and "sellers" of motor vehicles under § 84-2-103(1)(d).

1022.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Kan. Stat. § 84-2A-103(1)(p).

1023.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Kan. Stat. §§ 84-2-105(1) and 84-2A-103(1)(h).

1024.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use." Defendants also made numerous representations, descriptions, and promises to Kansas State Class members regarding the performance and emission controls of their vehicles.

1025.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1026.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1027.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1028.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1029.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

1030.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1031.    Despite the existence of warranties, Defendants failed to inform Kansas State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

1032.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1033.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

1034.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Kansas State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1035.    Accordingly, recovery by Kansas State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1036.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Kansas State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1037.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Kansas State Class members' remedies would be insufficient to make them whole.

1038.    Finally, because of Defendants' breach of warranty as set forth herein, Kansas State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1039.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1040.    As a direct and proximate result of Defendants' breach of express warranties, Kansas State Class members have been damaged in an amount to be determined at trial.

**KANSAS COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Kan. Stat. §§ 84-2-314 and 84-2A-212**
**(On Behalf of the Kansas State Class)**

1041.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1042.    This count is brought on behalf of the Kansas State Class against all Defendants.

1043.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Kan. Stat. §§ 84-2-104(1) and 84-2A-103(3), and "sellers" of motor vehicles under § 84-2-103(1)(d).

1044.    With respect to leases, Defendants are and were at all relevant times "lessors" of

1045.    motor vehicles under Kan. Stat. § 84-2A-103(1)(p).

1046.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Kan. Stat. §§ 84-2-105(1) and 84-2A-103(1)(h).

1047.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Kan. Stat. §§ 84-2-3and 84-2A-212.

1048.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1049.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1050.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Kansas State Class members have been damaged in an amount to be proven at trial.

**KENTUCKY COUNT I:**
**Violations of the Kentucky Consumer Protection Act**
**Ky. Rev. Stat. Ann. § 367.110 et seq.**
**(On Behalf of the Kentucky State Class)**

CLASS ACTION COMPLAINT

1051.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1052.    This count is brought on behalf of the Kentucky State Class against all Defendants.

1053.    Defendants, Plaintiffs, and the Kentucky State Class are "persons" within the meaning of the Ky. Rev. Stat. § 367.110(1).

1054.    Defendants engaged in "trade" or "commerce" within the meaning of Ky. Rev. Stat. § 367.110(2).

1055.    The Kentucky Consumer Protection Act ("Kentucky CPA") makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce . . . ." Ky. Rev. Stat. § 367.170(1). Defendants participated in misleading, false, or deceptive acts that violated the Kentucky CPA. By failing to disclose and by actively concealing the defects identified herein, marketing their vehicles as reliable, efficient, and of high quality, and by presenting themselves as reputable manufacturers that valued environmental cleanliness and fuel efficiency, and stood behind their vehicles after they were sold, Defendants engaged in deceptive business practices prohibited by the Kentucky CPA.

1056.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1057.    Kentucky State Class members had no way of discerning that Defendants' representations were false and misleading because the Kentucky State Class did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1058.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1059.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Kentucky State Class.

1060.    Defendants knew or should have known that their conduct violated the Kentucky CPA.

1061.    Defendants owed the Kentucky State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

    a.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

    b.   intentionally concealed the foregoing from regulators and Kentucky State Class members; and/or

    c.   made incomplete representations about the Class Vehicles' fuel economy and emissions, while purposefully withholding material facts that contradicted these representations.

1062.    Defendants' fraudulent concealment of the Class Vehicles' true fuel consumption were material to the Kentucky State Class.

1063.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Kentucky State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1064.     Defendants' violations present a continuing risk to the Kentucky State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1065.     Members of the Kentucky State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Kentucky CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1066.     As a direct and proximate result of Defendants' violations of the Kentucky CPA, Kentucky State Class members have suffered injury-in-fact and/or actual damage.

1067.     Pursuant to Ky. Rev. Stat. Ann. § 367.220, the Kentucky State Class seeks to recover actual damages in an amount to be determined at trial; an order enjoining Defendants' unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under Ky. Rev. Stat. Ann. § 367.220.

**KENTUCKY COUNT II:**
**Breach of Express Warranty**
**Ky. Rev. Stat. §§ 335.2-313 and 355.2A-2**
**(On Behalf of the Kentucky State Class)**

1068.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1069.     This count is brought on behalf of the Kentucky State Class against all Defendants.

1070.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ky. Rev. Stat. §§ 355.2-104(1) and 355.2A-103(3), and "sellers" of motor vehicles under § 355.2-103(1)(d).

1071.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ky. Rev. Stat. § 355.2A-103(1)(p).

1072.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ky. Rev. Stat. §§ 355.2-105(1) and 355.2A-103(1)(h).

1073.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1074.    Defendants also made numerous representations, descriptions, and promises to Kentucky State Class members regarding the performance and emission controls of their vehicles.

1075.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1076.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1077.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

CLASS ACTION COMPLAINT

1078.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1079.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles. Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1080.    Despite the existence of warranties, Defendants failed to inform Kentucky State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

1081.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1082.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

1083.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Kentucky State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1084.     Accordingly, recovery by Kentucky State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1085.     Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Kentucky State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1086.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Kentucky State Class members' remedies would be insufficient to make them whole.

1087.     Finally, because of Defendants' breach of warranty as set forth herein, Kentucky State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1088.     Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1089.     As a direct and proximate result of Defendants' breach of express warranties, Kentucky State Class members have been damaged in an amount to be determined at trial.

**KENTUCKY COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Ky. Rev. Stat. §§ 335.2-314 and 355.2A-2**
**(On Behalf of the Kentucky State Class)**

1090.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1091.    This count is brought on behalf of the Kentucky State Class against all Defendants.

1092.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ky. Rev. Stat. §§ 355.2-104(1) and 355.2A-103(3), and "sellers" of motor vehicles under § 355.2-103(1)(d).

1093.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ky. Rev. Stat. § 355.2A-103(1)(p).

1094.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ky. Rev. Stat. §§ 355.2-105(1) and 355.2A-103(1)(h).

1095.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ky. Rev. Stat. §§ 335.2-314 and 355.2A-212.

1096.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1097.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1098.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Kentucky State Class members have been damaged in an amount to be proven at trial.

1

2

3

**LOUISIANA COUNT I:**
**Violations of the Louisiana Unfair Trade Practices and Consumer Protection Law**
**La. Stat. Ann. § 51:1401 et seq.**
**(On Behalf of the Louisiana State Class)**

4       1099.    Plaintiffs incorporate by reference each preceding paragraph as though fully set

5    forth herein.

6       1100.    This count is brought on behalf of the Louisiana State Class against all

7    Defendants.

8       1101.    Defendants, Plaintiffs, and the Louisiana State Class are "persons" within the

9    meaning of the La. Rev. Stat. § 51:1402(8)

10      1102.    Louisiana State Class members are "consumers" within the meaning of La.

11   Rev.Stat. § 51:1402(1).

12      1103.    Defendants engaged in "trade" or "commerce" within the meaning of La. Rev.

13   Stat. § 51:1402(10).

14      1104.    The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana

15   CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce."

16   La. Rev. Stat. § 51:1405(A). Defendants participated in misleading, false, or deceptive acts that

17   violated the Louisiana CPL.

18      1105.    In the course of their business, Defendants concealed and suppressed material

19   facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles

20   for emissions testing that were different from production vehicles, (b) installing a secret software

21   program that caused the vehicles to perform differently during emissions testing than on the

22   road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could

23   pass emissions tests when they in fact did not.

24      1106.    Louisiana State Class members had no way of discerning that Defendants'

25   representations were false and misleading because the Louisiana State Class did not have access

26   to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware

27   and software was extremely sophisticated technology.

28

1107.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1108.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Louisiana State Class.

1109.    Defendants knew or should have known that their conduct violated the Louisiana CPL.

1110.    Defendants owed the Louisiana State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

a.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

b.   intentionally concealed the foregoing from regulators and Louisiana State Class members; and/or

c.   made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

1111.    Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the Louisiana State Class.

1112.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Louisiana State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

CLASS ACTION COMPLAINT

1113.    Defendants' violations present a continuing risk to the Louisiana State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1114.    The Louisiana State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Louisiana CPL. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1115.    As a direct and proximate result of Defendants' violations of the Louisiana CPL, the Louisiana State Class has suffered injury-in-fact and/or actual damage.

1116.    Pursuant to La. Rev. Stat. § 51:1409, the Louisiana State Class seeks to recover actual damages in an amount to be determined at trial; treble damages for Defendants' knowing violations of the Louisiana CPL; an order enjoining Defendants' unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under La. Rev. Stat. § 51:1409.

**LOUISIANA COUNT II:**
**Breach of Implied Warranty of Merchantability/**
**Warranty Against Prohibitory Defects**
**La. Civ. Code Art. 2520, 25**
**(On Behalf of the Louisiana State Class)**

1117.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

1118.    This count is brought on behalf of the Louisiana State Class against all Defendants.

1119.    Defendants are and were at all relevant times merchants with respect to motor vehicles.

1120.    A warranty that the Class Vehicles were in merchantable condition is implied bylaw in the instant transactions. These Class Vehicles, when sold or leased and at all times

thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1121.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1122.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Louisiana State Class members have been damaged in an amount to be proven at trial.

**MAINE COUNT I:**
**Violations of the Maine Unfair Trade Practices Act**
**Me. Rev. Stat. Ann. Tit. 5, § 205-A *et seq.***
**On Behalf of the Maine State Class)**

1123.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1124.    This count is brought on behalf of the Maine State Class against all Defendants. Defendants, Plaintiffs, and the Maine State Class are "persons" within the meaning of Me. Rev. Stat. Ann. Tit. 5, § 206(2).

1125.    Defendants engaged in "trade" or "commerce" within the meaning of Me. Rev. Stat. Ann. Tit. 5, § 206(3).

1126.    The Maine Unfair Trade Practices Act ("Maine UTPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" Me. Rev. Stat. Ann. Tit. 5 § 207.

1127.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the

road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1128.    Maine State Class members had no way of discerning that Defendants' representations were false and misleading because the Maine State Class did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1129.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1130.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Maine State Class.

1131.    Defendants knew or should have known that their conduct violated the Maine UTPA.

1132.    Defendants owed the Maine State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

      a.  possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

      b.  intentionally concealed the foregoing from regulators and Maine State Class members; and/or

      c.  made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

1133.    Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the Maine State Class.

1134.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Maine State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1135.    Defendants' violations present a continuing risk to the Maine State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1136.    The Maine State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Maine UTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1137.    As a direct and proximate result of Defendants' violations of the Maine UTPA, the Maine State Class has suffered injury-in-fact and/or actual damage. 21128. Pursuant to Me. Rev. Stat. Ann. Tit. 5 § 213, the Maine State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Maine UTPA.

1138.    Pursuant to Me. Rev. Stat. Ann. Title 5, § 50-634(g), Plaintiffs have or will timely provide a notice letter to Defendants. Notice has been previously been provided to Defendants arising out of the facts giving rise to these claims. Additionally, Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time. The Maine State Class seeks all damages and relief to which it is entitled.

**MAINE COUNT II:**
**Breach of Express Warranty**
**Me. Rev. Stat. Tit. 11 §§ 2-313 and 2-1210**
**(On Behalf of the Maine State Class)**

1139.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein

1140.    This count is brought on behalf of the Maine State Class against all Defendants.

1141.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Me. Rev. Stat. Ann. Tit. 11,§§ 2-104(1), and 2-1103(3), and is a "seller" of motor vehicles under § 2-103(1)(d).

1142.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Me. Rev. Stat. Ann. Tit. 11,§ 2-1103(1)(p).

1143.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Me. Rev. Stat. Ann. Tit. 11,§§ 2-105(1), and 2-1103(1)(h).

1144.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1145.    Defendants also made numerous representations, descriptions, and promises to Maine State Class members regarding the performance and emission controls of their vehicles.

1146.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1147.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1148.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1149.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1150.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

1151.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1152.    Despite the existence of warranties, Defendants failed to inform Maine State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

CLASS ACTION COMPLAINT

1153.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1154.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

1155.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Maine State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1156.    Accordingly, recovery by Maine State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1157.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Maine State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1158.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Maine State Class members' remedies would be insufficient to make them whole.

1159.    Finally, because of Defendants' breach of warranty as set forth herein, Maine State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1160.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1161.    As a direct and proximate result of Defendants' breach of express warranties, Maine State Class members have been damaged in an amount to be determined at trial.

**MAINE COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Me. Rev. Stat. Tit. 11 §§ 2-314 and 2-1212**
**(On Behalf of the Maine State Class)**

1162.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1163.    This count is brought on behalf of the Maine State Class against all Defendants.

1164.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Me. Rev. Stat. Ann. Tit. 11,§§ 2-104(1), and 2-1103(3), and is a "seller" of motor vehicles under § 2-103(1)(d).

1165.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Me. Rev. Stat. Ann. Tit. 11,§ 2-1103(1)(p).

1166.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Me. Rev. Stat. Ann. Tit. 11,§§ 2-105(1), and 2-1103(1)(h).

1167.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Me. Rev. Stat. Ann. Tit. 11,§§ 2-314, and 2-1212.

1168.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1169.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1170.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Maine State Class members have been damaged in an amount to be proven at trial.

**MARYLAND COUNT I:**
**Violations of the Maryland Consumer Protection Act**
**Md. Code Com. Law § 13-101 et seq.**
**(On Behalf of the Maryland State Class)**

1171.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1172.    This count is brought on behalf of the Maryland State Class against all Defendants.

1173.    Defendants and the Maryland State Class are "persons" within the meaning of Md. Code Com. Law § 13-101(h).

1174.    The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer good. Md. Code Com. Law § 13-303. Defendants participated in misleading, false, or deceptive acts that violated the Maryland CPA.

1175.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1176.    Maryland State Class members had no way of discerning that Defendants' representations were false and misleading because the Maryland State Class Members did not

1    have access to Defendants' emissions certification test vehicles and Defendants' emissions-

2    related hardware and software was extremely sophisticated technology. Maryland State Class

3    members did not and could not unravel Defendants' deception on their own.

4        1177.    Defendants thus violated the Act by, at minimum: representing that Class

5    Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing

6    that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising

7    Class Vehicles with the intent not to sell or lease them as advertised; and representing that the

8    subject of a transaction involving Class Vehicles has been supplied in accordance with a

9    previous representation when it has not.

10       1178.    Defendants intentionally and knowingly misrepresented material facts regarding

11   the Class Vehicles with intent to mislead the Maryland State Class.

12       1179.    Defendants knew or should have known that their conduct violated the Maryland

13   CPA.

14       1180.    Defendants owed the Maryland State Class a duty to disclose the illegality and

15   public health risks, the true nature of the Class Vehicles, because Defendants:

16           a.   possessed exclusive knowledge that they were manufacturing, selling, and

17               distributing vehicles throughout the United States that did not perform as

18               advertised;

19           b.   intentionally concealed the foregoing from regulators and Maryland State Class

20               members; and/or

21           c.   made incomplete representations about the Class Vehicles' fuel economy and

22               emissions while purposefully withholding material facts that contradicted these

23               representations.

24       1181.    Defendants' concealment of the Class Vehicles' true fuel consumption and

25   emissions was material to the Maryland State Class.

26       1182.    Defendants' unfair or deceptive acts or practices were likely to and did in fact

27   deceive regulators and reasonable consumers, including the Maryland State Class, about the true

28

environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1183.    Defendants' violations present a continuing risk to the Maryland State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1184.    The Maryland State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Maryland CPA. All owners and lessees of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1185.    As a direct and proximate result of Defendants' violations of the Maryland CPA, the Maryland State Class has suffered injury-in-fact and/or actual damage.

1186.    Pursuant to Md. Code Com. Law § 13-408, the Maryland State Class seeks actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

**MARYLAND COUNT II:**
**Maryland Lemon Law**
**Md. Code Com. Law § 14-1501 et seq.**
**(On Behalf of the Maryland State Class)**

1187.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth.

1188.    This count is brought on behalf of the Maryland State Class against all Defendants.

1189.    The Maryland State Class own or lease "motor vehicles" within the meaning of Md. Code, Com. Law § 14-1501(f), because these vehicles were registered in the state and fall

within the categories of vehicles manufactured, assembled, or distributed by Defendants. These vehicles are not auto homes.

1190.    Defendants are "manufacturer[s]" of the Class Vehicles within the meaning of Md. Code, Com. Law § 14-1501(d).

1191.    The Maryland State Class members are "consumers" within the meaning of Md. Code Com. Law § 14-1501(b) because they: purchased the Class Vehicles, were transferred the Class Vehicles during the warranty period, or are otherwise entitled to the attendant terms of warranty.

1192.    The Class Vehicles did not conform to their "warranties" under Md. Code Com. Law § 14-1501(g) during the warranty period because they had inflated and misleading fuel economy and emissions values, and were therefore not fit for the ordinary purpose for which vehicles are used.

1193.    Defendants had actual knowledge of the conformities during the "warranty period" within the meaning of Md. Code, Com. Law § 14-1501(e). But the nonconformities continued to exist throughout this term, as they have not been fixed. Maryland State Class members are excused from notifying Defendants of the nonconformities because it was already fully aware of the problem—it intentionally created it—and any repair attempt is futile.

1194.    Defendants have had a reasonable opportunity to cure the nonconformities during the warranty period because of its actual knowledge of, creation of, and attempt to conceal the nonconformities, but has not done so as required under Md. Code, Com. Law § 14-1502.

1195.    The Maryland State Class demands a full refund of the purchase price, including all license fees, registration fees, and any similar governmental charges. Md. Code Com. Law § 14-1502(c). Once payment has been tendered, Maryland State Class members will return their vehicles.

**MARYLAND COUNT III:**
**Breach of Express Warranty**
**Md. Code Com. Law §§ 2-313 and 2a-210**
**(On Behalf of the Maryland State Class)**

1196.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1197.    This count is brought on behalf of the Maryland State Class against all Defendants.

1198.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Md. Code Com. Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

1199.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Md. Code Com. Law § 2A-103(1)(p).

1200.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Md. Code Com. Law §§ 2-105(1) and 2a-103(1)(h).

1201.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1202.    Defendants also made numerous representations, descriptions, and promises to Maryland State Class members regarding the performance and emission controls of their vehicles.

1203.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1204.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

CLASS ACTION COMPLAINT

1205.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1206.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1207.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

1208.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1209.    Despite the existence of warranties, Defendants failed to inform Maryland State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

CLASS ACTION COMPLAINT

1210.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1211.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

1212.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Maryland State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1213.    Accordingly, recovery by Maryland State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1214.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Maryland State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1215.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Maryland State Class members' remedies would be insufficient to make them whole.

1216.    Finally, because of Defendants' breach of warranty as set forth herein, Maryland State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1217.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1218.    As a direct and proximate result of Defendants' breach of express warranties, Maryland State Class members have been damaged in an amount to be determined at trial.

**MARYLAND COUNT IV:**
**Breach of Implied Warranty of Merchantability**
**Md. Code Com. Law §§ 2-314 and 2a-212**
**(On Behalf of the Maryland State Class)**

1219.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1220.    This count is brought on behalf of the Maryland State Class against all Defendants.

1221.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Md. Code Com. Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

1222.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Md. Code Com. Law § 2A-103(1)(p).

1223.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Md. Code Com. Law §§ 2-105(1) and 2a-103(1)(h).

1224.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Md. Code Com. Law §§ 2-314, and 2a-212.

1225.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1226.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1227.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Maryland State Class members have been damaged in an amount to be proven at trial.

**MASSACHUSETTS COUNT I:**
**Deceptive Acts or Practices Prohibited by Massachusetts Law**
**Mass. Gen. Laws Ch. 93a, § 1, et seq.**
**(On Behalf of the Massachusetts State Class)**

1228.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1229.    This count is brought on behalf of the Massachusetts State Class against all Defendants.

1230.    Defendants, Plaintiffs, and the Massachusetts State Class are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

1231.    Defendants engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws ch. 93A, § 1(b).

1232.    Massachusetts law (the "Massachusetts Act") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2. Defendants participated in misleading, false, or deceptive acts that violated the Massachusetts Act.

1233.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1234.    Massachusetts State Class members had no way of discerning that Defendants' representations were false and misleading because Massachusetts State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1235.    Massachusetts State Class members did not and could not unravel Defendants' deception on their own.

1236.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Massachusetts State Class.

1237.    Defendants knew or should have known that their conduct violated the Massachusetts Act.

1238.    Defendants owed the Massachusetts State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

    a.  possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

    b.  intentionally concealed the foregoing from regulators and Massachusetts2State Class members; and/or

    c.  made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

1239.    Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the Massachusetts State Class.

1240.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Massachusetts State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1241.    Defendants' violations present a continuing risk to the Massachusetts State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1242.    The Massachusetts State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Massachusetts Act. All owners and lessees of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1243.    As a direct and proximate result of Defendants' violations of the Massachusetts Act, the Massachusetts State Class have suffered injury-in-fact and/or actual damage.

1244.    Pursuant to Mass. Gen. Laws ch. 93A, § 9, the Massachusetts State Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each Massachusetts State Class member. Because Defendants' conduct was committed willfully and knowingly, each

1245.    Massachusetts State Class member is entitled to recover up to three times actual damages, but no less than two times actual damages.

1246.    The Massachusetts State Class also seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Massachusetts Act.

1247.    Pursuant to Mass. Gen. Laws ch. 93A, § 9(3), Plaintiffs have or will timely provide a notice letter to Defendants. Notice has been previously been provided to Defendants

arising out of the facts giving rise to these claims. Additionally, Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time. The Massachusetts State Class seeks all damages and relief to which it is entitled.

1248.    As a result of Defendants' conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**MASSACHUSETTS COUNT II: Massachusetts Lemon Law**
**Mass. Gen. Laws Ch. 90, § 7N1/2(1)**
**(On Behalf of the Massachusetts State Class)**

1249.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1250.    This count is brought on behalf of the Massachusetts State Class against all Defendants.

1251.    Massachusetts State Class members own or lease "motor vehicles" within the meaning of Mass. Gen. Laws Ch. 90, § 7N1/2(1), because these vehicles were constructed or designed for propulsion by power and were sold, leased, or replaced by Defendants. These vehicles are not: (1) auto homes, (2) vehicles built primarily for off-read use, and (3) used primarily for business purposes. Defendants are "manufacturer[s]" of the Class Vehicles within the meaning of Mass. Gen. Laws Ch. 90, § 7N1/2(1).

1252.    The Massachusetts State Class members are "consumers" within the meaning of Mass. Gen. Laws Ch. 90, § 7N1/2(1) because they bought or leased the Class Vehicles or are otherwise entitled to the attendant terms of warranty.

1253.    The Class Vehicles did not conform to their express and implied warranties because they included software that led to inflated and misleading fuel economy values and misleading emissions values and were therefore not fit for the ordinary purpose for which vehicles are used.

1254.    Defendants had actual knowledge of the conformities during the "term of protection" within the meaning of Mass. Gen. Laws Ch. 90, §§ 7N1/2(1)–7N1/2(2). But the

nonconformities continued to exist throughout this term, as they have not been fixed. Massachusetts State Class members are excused from notifying Defendants of the nonconformities because it was already fully aware of the problem—it intentionally created it—and any repair attempt is futile.

1255.    Defendants have had a reasonable opportunity to cure the nonconformities because of its actual knowledge of, creation of, and attempt to conceal the nonconformities, but has not done so as required under Mass. Gen. Laws Ch. 90, § 7N1/2(3).

1256.    For vehicles purchased, the Massachusetts State Class demands a full refund of the contract price. For vehicles leased, the Massachusetts State Class demands a full refund of all payments made under the lease agreement. The Massachusetts State Class exercise their "unqualified right" to reject an offer of replacement and will retain their vehicles until payment is tendered under Mass. Gen. Laws Ch. 90, § 7N1/2(3).

**MASSACHUSETTS COUNT III: Breach of Express Warranty**
**Mass. Gen. Laws c. 106 §§ 2-313 and 2A-2**
**(On Behalf of the Massachusetts State Class)**

1257.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1258.    This count is brought on behalf of the Massachusetts State Class against all Defendants.

1259.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under M.G.L. c. 106 § 2-104(1) and is a "seller" of motor vehicles under § 2-103(1)(d).

1260.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under M.G.L. c. 106 § 2A-103(1)(p).

1261.    The Class Vehicles are and were at all relevant times "goods" within the meaning of M.G.L. c. 106 §§ 2-105(1) and 2A-103(1)(h).

1262.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever

1    occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed

2    during normal use."

3        1263.    Defendants also made numerous representations, descriptions, and promises to

4    Massachusetts State Class members regarding the performance and emission controls of their

5    vehicles.

6        1264.    For example, Defendants included in the warranty booklets for some or all of the

7    Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at

8    the time of sale with all U.S. emission standards applicable at the time of manufacture, and that

9    it is free from defects in material and workmanship which would cause it not to meet those

10   standards."

11       1265.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide

12   two federal emission control warranties: a "Performance Warranty" and a "Design and Defect

13   Warranty."

14       1266.    The EPA requires vehicle manufacturers to provide a Performance Warranty with

15   respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty

16   for their vehicles through a Federal Emissions Performance Warranty. The Performance

17   Warranty required by the EPA applies to repairs that are required during the first two years or

18   24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty,

19   certain major emission control components are covered for the first eight years or 80,000 miles

20   (whichever comes first). These major emission control components subject to the longer

21   warranty include the catalytic converters, the electronic emission control unit, and the onboard

22   emission diagnostic device or computer.

23       1267.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties

24   with respect to their vehicles' emission systems. Thus, Defendants also provide an express

25   warranty for their vehicles through a Federal Emission Control System Defect Warranty. The

26   Design and Defect Warranty required by the EPA covers repair of emission control or emission

27   related parts, which fail to function or function improperly because of a defect in materials or

28

CLASS ACTION COMPLAINT

workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1268.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

1269.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1270.    Despite the existence of warranties, Defendants failed to inform Massachusetts State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

1271.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1272.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

1273.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Massachusetts State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1274.    Accordingly, recovery by Massachusetts State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1275.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and

did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Massachusetts State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1276.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Massachusetts State Class members' remedies would be insufficient to make them whole.

1277.    Finally, because of Defendants' breach of warranty as set forth herein, Massachusetts State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1278.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1279.    As a direct and proximate result of Defendants' breach of express warranties, Massachusetts State Class members have been damaged in an amount to be determined at trial.

**MASSACHUSETTS COUNT IV: Breach of Implied Warranty of Merchantability**
**Mass. Gen. Laws c. 106 §§ 2-314 and 2A-2**
**(On Behalf of the Massachusetts State Class)**

1280.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1281.    This count is brought on behalf of the Massachusetts State Class against all Defendants.

1282.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under M.G.L. c. 106 § 2-104(1) and is a "seller" of motor vehicles under § 2-103(1)(d).

1283.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under M.G.L. c. 106 § 2A-103(1)(p).

1284.   The Class Vehicles are and were at all relevant times "goods" within the meaning of M.G.L. c. 106 §§ 2-105(1) and 2A-103(1)(h).

1285.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to M.G.L. c. 106 §§ 2-314 and 2A-212.

1286.   These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1287.   Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1288.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Massachusetts State Class members have been damaged in an amount to be proven at trial.

**MICHIGAN COUNT I:**
**Violations of the Michigan Consumer Protection Act**
**Mich. Comp. Laws § 445.903 et seq.**
**(On Behalf of the Michigan State Class)**

1289.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1290.   This count is brought on behalf of the Michigan State Class against all Defendants. Michigan State Class members are "person[s]" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

1291.    Defendants are "person[s]" engaged in "trade or commerce" within the meaning of the Mich. Comp. Laws § 445.902(1)(d) and (g).

1292.    The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce . . ." Mich. Comp. Laws § 445.903(1). Defendants engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the Michigan CPA, including: "(c) Representing that goods or services have . . . characteristics . . . that they do not have.     . . . ;" "(e) Representing that goods or services are of a particular standard . . . if they are of another;" "(i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1).

1293.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1294.    Michigan State Class members had no way of discerning that Defendants' representations were false and misleading because Michigan State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1295.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing

that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1296.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Michigan State Class.

1297.    Defendants knew or should have known that their conduct violated the Michigan CPA.

1298.    Defendants owed the Michigan State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

    a.  possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

    b.  intentionally concealed the foregoing from regulators and Michigan State Class members; and/or

    c.  made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

1299.    Defendants' concealment of the true characteristics of the Class Vehicles' fuel consumption and emissions were material to the Michigan State Class.

1300.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Michigan State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1301.    Defendants' violations present a continuing risk to the Michigan State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1302.    Michigan State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Michigan CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1303.    As a direct and proximate result of Defendants' violations of the Michigan CPA, Michigan State Class members have suffered injury-in-fact and/or actual damage.

1304.    The Michigan State Class seeks injunctive relief to enjoin Defendants from continuing its unfair and deceptive acts; monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for each Michigan State Class member; reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911.

1305.    The Michigan State Class also seeks punitive damages against Defendants because it carried out despicable conduct with willful and conscious disregard of the rights of others. Defendants intentionally and willfully misrepresented the reliability of the Class Vehicles and concealed material facts that only they knew—all to avoid the expense and public relations nightmare of correcting a flaw in the Class Vehicles. Defendants' unlawful conduct constitutes oppression and fraud warranting punitive damages.

**MICHIGAN COUNT II:**
**Breach of Express Warranty**
**Mich. Comp. Laws §§ 440.2313 and 440.2860**
**(On Behalf of the Michigan State Class)**

1306.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1307.    This count is brought on behalf of the Michigan State Class against all Defendants.

1308.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Mich. Comp. Laws § 440.2104(1) and "sellers" of motor vehicles under 1§ 440.2103(1)(d).

1309.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Mich. Comp. Laws § 440.2803(1)(p).

1310.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Mich. Comp. Laws §§ 440.2105(1) and 440.2803(1)(h).

1311.     In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1312.     Defendants also made numerous representations, descriptions, and promises to Michigan State Class members regarding the performance and emission controls of their vehicles.

1313.     For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1314.     The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1315.     The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty,

certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1316.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1317.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

1318.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1319.    Despite the existence of warranties, Defendants failed to inform Michigan State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

1320.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1321.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

1322.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Michigan State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1323.    Accordingly, recovery by the Michigan State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1324.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Michigan State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1325.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Michigan State Class members' remedies would be insufficient to make them whole.

1326.    Finally, because of Defendants' breach of warranty as set forth herein, Michigan State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1327.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1328.    As a direct and proximate result of Defendants' breach of express warranties, Michigan State Class members have been damaged in an amount to be determined at trial.

**MICHIGAN COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Mich. Comp. Laws §§ 440.2314 and 440.2860**
**(On Behalf of the Michigan State Class)**

1329.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1330.    This count is brought on behalf of the Michigan State Class against all Defendants.

1331.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Mich. Comp. Laws § 440.2104(1) and "sellers" of motor vehicles under § 440.2103(1)(d).

1332.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Mich. Comp. Laws § 440.2803(1)(p).

1333.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Mich. Comp. Laws §§ 440.2105(1) and 440.2803(1)(h).

1334.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Mich. Comp. Laws §§ 440.2314 and 440.2862.

1335.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1336.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1337.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Michigan State Class members have been damaged in an amount to be proven at trial.

**MINNESOTA COUNT I:**
**Violations of the Minnesota Prevention of Consumer Fraud Act**
**Minn. Stat. § 325F.68 et seq.**
**(On Behalf of the Minnesota State Class)**

1338.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1339.    This count is brought on behalf of the Minnesota State Class against all Defendants.

1340.    The Class Vehicles constitute "merchandise" within the meaning of Minn. Stat.§ 325F.68(2).

1341.    The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby " Minn. Stat. § 325F.69(1). Defendants participated in misleading, false, or deceptive acts that violated the Minnesota CFA.

1342.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1343.    Minnesota State Class members had no way of discerning that Defendants' representations were false and misleading because Minnesota State Class members did not have

1    access to Defendants' emissions certification test vehicles and Defendants' emissions-related

2    hardware and software was extremely sophisticated technology.

3        1344.    Defendants thus violated the Act by, at minimum: representing that Class

4    Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing

5    that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising

6    Class Vehicles with the intent not to sell or lease them as advertised; and representing that the

7    subject of a transaction involving Class Vehicles has been supplied in accordance with a

8    previous representation when it has not.

9        1345.    Defendants intentionally and knowingly misrepresented material facts regarding

10   the Class Vehicles with intent to mislead the Minnesota State Class.

11       1346.    Defendants knew or should have known that their conduct violated the Minnesota

12   CFA.

13       1347.    Defendants owed the Minnesota State Class a duty to disclose the illegality and

14   public health risks, the true nature of the Class Vehicles, because Defendants:

15           a.   possessed exclusive knowledge that they were manufacturing, selling, and

16                distributing vehicles throughout the United States that did not perform as

17                advertised;

18           b.   intentionally concealed the foregoing from regulators and Minnesota State Class

19                members; and/or

20           c.   made incomplete representations about the Class Vehicles' fuel economy and

21                emissions while purposefully withholding material facts that contradicted these

22                representations.

23       1348.    Defendants' concealment of the Class Vehicles' true fuel consumption and

24   emissions was material to the Minnesota State Class.

25       1349.    Defendants' unfair or deceptive acts or practices were likely to and did in fact

26   deceive regulators and reasonable consumers, including the Minnesota State Class, about the

27

28

true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1350.    Defendants' violations present a continuing risk to the Minnesota State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1351.    Minnesota State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Minnesota CFA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1352.    As a direct and proximate result of Defendants' violations of the Minnesota CFA, Minnesota State Class members have suffered injury-in-fact and/or actual damage.

1353.    Pursuant to Minn. Stat. § 8.31(3a), Minnesota State Class members seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

1354.    Minnesota State Class members also seek punitive damages under Minn. Stat. § 549.20(1)(a) given the clear and convincing evidence that Defendants' acts show deliberate disregard for the rights of others.

**MINNESOTA COUNT II:**
**Violations of the Minnesota Uniform Deceptive Trade Practices Act**
**Minn. Stat. § 325D.43-48 et seq.**
**(On Behalf of the Minnesota State Class)**

1355.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1356.    This count is brought on behalf the Minnesota State Class against all Defendants.

1357.    The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA") prohibits deceptive trade practices, which occur when a person "(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and "(9) advertises goods or services with intent not to sell them as advertised." Minn. Stat. § 325D.44. In the course of the Defendants' business, it engaged in deceptive practices by representing that Class Vehicles have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have; representing that Class Vehicles are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and advertising Class Vehicles with intent not to sell them as advertised. Defendants participated in misleading, false, or deceptive acts that violated the Minnesota DTPA.

1358.    By submitting vehicles for emissions testing that were different from production vehicles, installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, falsely attesting that certain vehicles' high performance (Sport 1Plus) mode could pass emissions tests when they in fact did not, by marketing its vehicles as reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Defendants engaged in deceptive business practices prohibited by the Minnesota DTPA.

1359.    Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1360.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the

road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1361.    Minnesota State Class members had no way of discerning that Defendants' representations were false and misleading because Minnesota State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1362.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1363.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Minnesota State Class.

1364.    Defendants knew or should have known that their conduct violated the Minnesota DTPA.

1365.    Defendants owed the Minnesota State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

      a.  possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

      b.  intentionally concealed the foregoing from regulators and Minnesota State Class members; and/or

      c.  made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these presentations.

1366.    Defendants' concealment of the true characteristics of the Class Vehicles' true fuel consumption and emissions were material to the Minnesota State Class.

1367.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Minnesota State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, the devaluing of environmental cleanliness and integrity at Defendant companies, and the true value of the Class Vehicles.

1368.    Defendants' violations present a continuing risk to the Minnesota State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1369.    Minnesota State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Minnesota DTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1370.    As a direct and proximate result of Defendants' violations of the Minnesota DTPA, Minnesota State Class members have suffered injury-in-fact and/or actual damage.

1371.    Pursuant Minn. Stat. §§ 8.31(3a) and 325D.45, the Minnesota State Class seeks actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota DTPA.

**MINNESOTA COUNT III:**
**Breach of Express Warranty**
**Minn. Stat. §§ 336.2-313 and 336.2A-210**
**(On Behalf of the Minnesota State Class)**

1372.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1373.    This count is brought on behalf of the Minnesota State Class against all Defendants.

1374.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Minn. Stat. § 336.2-104(1) and "sellers" of motor vehicles under § 336.2-103(1)(d).

1375.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Minn. Stat. § 336.2A-103(1)(p).

1376.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Minn. Stat. §§ 336.2-105(1) and 336.2A-103(1)(h).

1377.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1378.    Defendants also made numerous representations, descriptions, and promises to Minnesota State Class members regarding the performance and emission controls of their vehicles.

1379.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1380.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1381.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance

CLASS ACTION COMPLAINT

Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1382.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1383.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

1384.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1385.    Despite the existence of warranties, Defendants failed to inform Minnesota State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

1386.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1387.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

1388.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Minnesota State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1389.    Accordingly, recovery by Minnesota State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1390.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Minnesota State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1391.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on the Minnesota State Class members' remedies would be insufficient to make them whole.

1392.    Finally, because of Defendants' breach of warranty as set forth herein, Minnesota State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1393.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1394.    As a direct and proximate result of Defendants' breach of express warranties, Minnesota State Class members have been damaged in an amount to be determined at trial

**MINNESOTA COUNT IV:**
**Breach of Implied Warranty of Merchantability**
**Minn. Stat. §§ 336.2-314 and 336.2A-212**
**(On Behalf of the Minnesota State Class)**

1395.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1396.    This count is brought on behalf of the Minnesota State Class against all Defendants.

1397.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Minn. Stat. § 336.2-104(1) and "sellers" of motor vehicles under § 336.2-103(1)(d).

1398.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Minn. Stat. § 336.2A-103(1)(p).

1399.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Minn. Stat. §§ 336.2-105(1) and 336.2A-103(1)(h).

1400.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Minn. Stat. §§ 336.2-314 and 336.2A-212.

1401.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1402.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1403.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Minnesota State Class members have been damaged in an amount to be proven at trial.

**MISSISSIPPI COUNT I:**
**Violations of Mississippi Consumer Protection Act**
**Miss. Code. Ann. § 75-24-1, et seq.**
**(On Behalf of the Mississippi State Class)**

1404.    Plaintiffs incorporate by reference each preceding paragraph as though fully setforth herein.

1405.    This count is brought on behalf of the Mississippi State Class against all Defendants.

1406.    The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits "unfair or deceptive trade practices in or affecting commerce." Miss. Code. Ann. § 75-24-5(1). Unfair or deceptive practices include, but are not limited to, "(e) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;" "(g) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and "(i) Advertising goods or services with intent not to sell them as advertised." Miss. Code. Ann. § 75-24-5. Defendants participated in deceptive trade practices that violated the Mississippi CPA as described herein, including representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard and quality when they are not; and advertising Class Vehicles with the intent not to sell them as advertised.

1407.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1408.    Mississippi State Class members had no way of discerning that Defendants' representations were false and misleading because Mississippi State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1409.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1410.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Mississippi State Class.

1411.    Defendants knew or should have known that their conduct violated the Mississippi CPA.

1412.    Defendants owed the Mississippi State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

    a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

    b.    intentionally concealed the foregoing from regulators and Mississippi State Class members; and/or

c.  made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

1413.    Defendants' concealment of the Class Vehicles' true fuel consumption and emissions were material to the Mississippi State Class.

1414.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Mississippi State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1415.    Defendants' violations present a continuing risk to the Mississippi State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect 1the public interest.

1416.    Mississippi State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Mississippi CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1417.    As a direct and proximate result of Defendants' violations of the Mississippi CPA, Mississippi State Class members have suffered injury-in-fact and/or actual damage.

1418.    Plaintiffs' seek actual damages in an amount to be determined at trial any other just and proper relief available under the Mississippi CPA.

**MISSISSIPPI COUNT II:**
**Breach of Express Warranty**
**Miss. Code §§ 75-2-313 and 75-2A-210**
**(On Behalf of the Mississippi State Class)**

1419.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1420.    This count is brought on behalf of the Mississippi State Class against all Defendants.

1421.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Miss. Code § 75-2-104(1) and "sellers" of motor vehicles under § 75-2-103(1)(d).

1422.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Miss. Code § 75-2A-103(1)(p).

1423.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Miss. Code §§ 75-2-105(1) and 75-2A-103(1)(h).

1424.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1425.    Defendants also made numerous representations, descriptions, and promises to Mississippi State Class members regarding the performance and emission controls of their vehicles.

1426.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1427.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1428.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty

for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1429.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1430.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

1431.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1432.    Despite the existence of warranties, Defendants failed to inform Mississippi State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

1433.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1434.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

1435.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Mississippi State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1436.    Accordingly, recovery by Mississippi State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1437.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Mississippi State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1438.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Mississippi State Class members' remedies would be insufficient to make them whole. Finally, because of Defendants' breach of warranty as set forth herein, Mississippi State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1439.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1440.    As a direct and proximate result of Defendants' breach of express warranties, Mississippi State Class members have been damaged in an amount to be determined at trial.

**MISSISSIPPI COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Miss. Code §§ 75-2-314 and 75-2A-212**
**(On Behalf of the Mississippi State Class)**

1441.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1442.    This count is brought on behalf of the Mississippi State Class against all Defendants.

1443.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Miss. Code § 75-2-104(1) and "sellers" of motor vehicles under § 75-2-103(1)(d).

1444.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Miss. Code § 75-2A-103(1)(p).

1445.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Miss. Code §§ 75-2-105(1) and 75-2A-103(1)(h).

1446.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Miss. Code §§ 75-2-3and 75-2A-212.

1447.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1448.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1449.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Mississippi State Class members have been damaged in an amount to be proven at trial.

**MISSOURI COUNT I:**
**Violations of the Missouri Merchandising Practices Act**
**Mo. Rev. Stat. § 407.010 et seq.**
**(On Behalf of the Missouri State Class)**

1450.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1451.    This count is brought on behalf of the Missouri State Class against all Defendants.

1452.    Defendants and the Missouri State Class are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

1453.    Defendants engaged in "trade" or "commerce" in the State of Missouri within the meaning of Mo. Rev. Stat. § 407.010(7).

1454.    The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise Mo. Rev. Stat. § 407.020.

1455.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1456.    Missouri State Class members had no way of discerning that Defendants' representations were false and misleading because Missouri State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1457.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles

1458.    have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1459.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Missouri State Class.

1460.    Defendants knew or should have known that their conduct violated the Missouri MPA.

1461.    Defendants owed the Missouri State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

    a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

    b.    intentionally concealed the foregoing from regulators and Missouri State Class members; and/or

    c.    made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

1462.    Defendants' concealment of the true fuel consumption and emissions was material to the Missouri State Class.

1463. Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Missouri State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1464. Defendants' violations present a continuing risk to the Missouri State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1465. Missouri State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Missouri MPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1466. As a direct and proximate result of Defendants' violations of the Missouri MPA, Missouri State Class members have suffered injury-in-fact and/or actual damage.

1467. Defendants are liable to the Missouri State Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Defendants' unfair and deceptive practices, and any other just and proper relief under Mo. Rev. Stat. § 407.025.

**MISSOURI COUNT II:**
**Breach of Express Warranty**
**Mo. Stat. §§ 400.2-313 and 400.2A-2**
**(On Behalf of the Missouri State Class)**

1468. Plaintiffs re-allege and incorporate by reference all preceding allegations as thoughtfully set forth herein

1469. This count is brought on behalf of the Missouri State Class against all Defendants.

1470. Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Mo. Stat. § 400.2-104(1) and "sellers" of motor vehicles under § 400.2-103(1)(d).

1471.    With respect to leases, Defendants are and were at all relevant times "lessors" of

1472.    motor vehicles under Mo. Stat. § 400.2A-103(1)(p).

1473.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Mo. Stat. § 400.2-105(1) and Mo. Stat. § 400.2A-103(1)(h).

1474.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1475.    Defendants also made numerous representations, descriptions, and promises to Missouri State Class members regarding the performance and emission controls of their vehicles. For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1476.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1477.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1478.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1479.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

1480.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1481.    Despite the existence of warranties, Defendants failed to inform Missouri State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

1482.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1483.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

1484.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Missouri State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1485.    Accordingly, recovery by Missouri State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1486.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Missouri State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1487.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Missouri State Class members' remedies would be insufficient to make them whole.

1488.    Finally, because of Defendants' breach of warranty as set forth herein, Missouri State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1489.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1490.    As a direct and proximate result of Defendants' breach of express warranties, Missouri State Class members have been damaged in an amount to be determined at trial.

**MISSOURI COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Mo. Stat. §§ 400.2-314 and 400.2A-2**
**(On Behalf of the Missouri State Class)**

1491.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1492.    This count is brought on behalf of the Missouri State Class against all Defendants.

1493.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Mo. Stat. § 400.2-104(1) and "sellers" of motor vehicles under § 400.2-103(1)(d).

1494.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Mo. Stat. § 400.2A-103(1)(p).

1495.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Mo. Stat. § 400.2-105(1) and Mo. Stat. § 400.2A-103(1)(h).

1496.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Mo. Stat. § 400.2-3and Mo. Stat. § 400.2A-212.

1497.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1498.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1499.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Missouri State Class members have been damaged in an amount to be proven at trial.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MONTANA COUNT I:**

**Violations of the Montana Unfair Trade Practices and Consumer Protection Act of 1973**
**Mont. Code Ann. § 30-14-101 et seq.**
**(On Behalf of the Montana State Class)**

1500.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1501.     This count is brought on behalf of the Montana State Class against all Defendants.

1502.     Defendants and the Montana State Class are "persons" within the meaning of Mont. Code Ann. § 30-14-102(6). 1496. Montana State Class members are "consumer[s]" under MONT. CODE ANN. § 30-14-102(1).

1503.     The sale or lease of the Class Vehicles to Montana State Class members occurred within "trade and commerce" within the meaning of Mont. Code Ann. § 30-14-102(8), and Defendants committed deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory section.

1504.     The Montana Unfair Trade Practices and Consumer Protection Act ("Montana CPA") makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mont. Code Ann. § 30-14-103.

1505.     In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

251

1506. Montana State Class members had no way of discerning that Defendants' representations were false and misleading because Montana State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1507. Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Montana State Class.

1508. Defendants knew or should have known that their conduct violated the Montana CPA.

1509. Defendants owed the Montana State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

    a. possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

    b. intentionally concealed the foregoing from regulators and Montana State Class members; and/or

    c. made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

1510.    Defendants' concealment of the true characteristics of the Class Vehicles' fuel economy and emissions was material to the Montana State Class.

1511.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Montana State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1512.    Defendants' violations present a continuing risk to the Montana State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1513.    Montana State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Montana CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1514.    As a direct and proximate result of Defendants' violations of the Montana CPA, Montana State Class members have suffered injury-in-fact and/or actual damage.

1515.    Because Defendants' unlawful methods, acts, and practices have caused Montana State Class members to suffer an ascertainable loss of money and property, the Montana State Class seeks from Defendants actual damages or $500, whichever is greater, discretionary treble damages, reasonable attorneys' fees, an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, and any other relief the Court considers necessary or proper, under Mont. Code Ann. 1§ 30-14-133.

**MONTANA COUNT II:**
**Breach of Express Warranty**
**Mont. Code §§ 30-2-313 and 30-2A-210**
**(On Behalf of the Montana State Class)**

1516.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1517.    This count is brought on behalf of the Montana State Class against all Defendants.

1518.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Mont. Code § 30-2-104(1) and "sellers" of motor vehicles under § 30-2-103(1)(d).

1519.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Mont. Code § 30-2A-103(1)(p).

1520.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Mont. Code §§ 30-2-105(1) and 30-2A-103(1)(h).

1521.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1522.    Defendants also made numerous representations, descriptions, and promises to Montana State Class members regarding the performance and emission controls of their vehicles.

1523.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of

manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards." The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1524.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1525.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1526.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

1527.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1528.    Despite the existence of warranties, Defendants failed to inform Montana State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

1529.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1530.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

1531.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Montana State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1532.    Accordingly, recovery by Montana State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1533.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently

concealed material facts regarding the Class Vehicles. Montana State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1534.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Montana State Class members' remedies would be insufficient to make them whole.

1535.    Finally, because of Defendants' breach of warranty as set forth herein, Montana State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1536.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1537.    As a direct and proximate result of Defendants' breach of express warranties, Montana State Class members have been damaged in an amount to be determined at trial.

**MONTANA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Mont. Code §§ 30-2-314 and 30-2A-212**
**(On Behalf of the Montana State Class)**

1538.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1539.    This count is brought on behalf of the Montana State Class against all Defendants.

1540.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Mont. Code § 30-2-104(1) and "sellers" of motor vehicles under § 30-2-103(1)(d).

1541.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Mont. Code § 30-2A-103(1)(p).

1542.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Mont. Code §§ 30-2-105(1) and 30-2A-103(1)(h).

1543.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Mont. Code §§ 30-2-314 and 30-2A-212.

1544.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1545.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1546.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Montana State Class members have been damaged in an amount to be proven at trial.

**NEBRASKA COUNT I:**
**Violations of the Nebraska Consumer Protection Act**
**Neb. Rev. Stat. § 59-1601 et seq.**
**(On Behalf of the Nebraska State Class)**

1547. This count is brought on behalf of the Nebraska State Class against all Defendants.

1548. Defendants and Nebraska State Class members are "person[s]" under the Nebraska

1549. Consumer Protection Act ("Nebraska CPA"), Neb. Rev. Stat. § 59-1601(1).

1550. Defendants' actions as set forth herein occurred in the conduct of trade or commerce as defined under Neb. Rev. Stat. § 59-1601(2).

1551. The Nebraska CPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Neb. Rev. Stat. § 59-1602. The conduct Defendants engaged in as set forth herein constitutes unfair or deceptive acts or practices.

1552. In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles by (a) submitting vehicles for emissions testing that were materially different from production vehicles, (b) installing a secret software program that caused their vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode would pass emissions tests when they in fact could not.

1553. Nebraska State Class members had no way of discerning that Defendants' representations were false and misleading because the Nebraska State Class did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1554. Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the

1    subject of a transaction involving Class Vehicles has been supplied in accordance with a
2    previous representation when it has not.

3    1555.    Defendants intentionally and knowingly misrepresented material facts regarding
4    the Class Vehicles with the intent to mislead the Nebraska State Class.

5    1556.    Defendants knew or should have known that their conduct violated the Nebraska
6    CPA.

7    1557.    Defendants owed the Nebraska State Class a duty to disclose the illegality, public
8    health risks, and true nature of the Class Vehicles, because Defendants:

9        a.   possessed exclusive knowledge that they were manufacturing, selling, and
10            distributing vehicles throughout the United States that did not perform as
11            advertised;

12       b.   intentionally concealed this fact from regulators and Nebraska State Class
13            members; and/or

14       c.   made incomplete representations about the Class Vehicles' fuel economy and
15            emissions performance while purposefully withholding material facts that
16            contradicted these representations.

17    1558.    Defendants' concealment of the Class Vehicles' true fuel consumption and
18    emissions was material to the Nebraska State Class.

19    1559.    Defendants' unfair or deceptive acts or practices were likely to and did in fact
20    deceive regulators and reasonable consumers, including the Nebraska State Class, about the true
21    environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the
22    Defendants' brands, and the true value of the Class Vehicles.

23    1560.    Defendants' violations present a continuing risk to the Nebraska State Class as
24    well as to the general public. Defendants' unlawful acts and practices complained of herein
25    affect the public interest.

26    1561.    Nebraska State Class members suffered ascertainable loss and actual damages as
27    a direct and proximate result of Defendants' misrepresentations and concealment of and failure

28

to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Nebraska CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1562.    As a direct and proximate result of Defendants' violations of the Nebraska CPA, Nebraska State Class members have suffered injury-in-fact and/or actual damage.

1563.    Because Defendants' conduct caused injury to Nebraska State Class members' property through violations of the Nebraska CPA, the Nebraska State Class seeks recovery of actual damages, as well as enhanced damages up to $1,000, an order enjoining Defendants' unfair or deceptive acts and practices, costs of Court, reasonable attorneys' fees, and any other just and proper relief available under Neb. Rev. Stat. § 59-1609.

**NEBRASKA COUNT II:**
**Breach of Express Warranty**
**Neb. Rev. St. U.C.C. §§ 2-313 and 2A-2**
**(On Behalf of the Nebraska State Class)**

1564.    Plaintiffs re-allege and incorporate by reference all preceding allegations as thoughtfully set forth herein.

1565.    This count is brought on behalf of the Nebraska State Class against all Defendants.

1566.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Neb. Rev. St. U.C.C. § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

1567.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Neb. Rev. St. U.C.C. § 2A-103(1)(p).

1568.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Neb. Rev. St. U.C.C. §§ 2-105(1) and 2A-103(1)(h).

1569.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever

occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1570.    Defendants also made numerous representations, descriptions, and promises to Nebraska State Class members regarding the performance and emission controls of their vehicles.

1571.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1572.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1573.    The EPA requires vehicle manufacturers to provide a Performance Warranty withrespect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1574.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or

workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1575.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

1576.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1577.    Despite the existence of warranties, Defendants failed to inform Nebraska State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

1578.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1579.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

1580.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Nebraska State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1581.    Accordingly, recovery by Nebraska State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1582.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently

1    concealed material facts regarding the Class Vehicles. Nebraska State Class members were

2    therefore induced purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

3    1583.    Moreover, many of the injuries flowing from the Class Vehicles cannot be

4    resolved

5    1584.    through the limited remedy of repairing and correcting Defendants' defect in

6    materials and workmanship as many incidental and consequential damages have already been

7    suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure

8    and/or continued failure to provide such limited remedy within a reasonable time, and any

9    limitation on Nebraska State Class members' remedies would be insufficient to make them

10   whole.

11   1585.    Finally, because of Defendants' breach of warranty as set forth herein, Nebraska

12   State Class members assert, as additional and/or alternative remedies, the revocation of

13   acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles

14   currently owned or leased, and for such other incidental and consequential damages as allowed.

15   1586.    Defendants were provided notice of these issues by the investigations of

16   governmental regulators, and numerous complaints filed against it including the instant

17   complaint, within a reasonable amount of time.

18   1587.    As a direct and proximate result of Defendants' breach of express warranties,

19   Nebraska State Class members have been damaged in an amount to be determined at trial.

20   **NEBRASKA COUNT III:**
**Breach of Implied Warranty of Merchantability**
21   **Neb. Rev. St. U.C.C. §§ 2-314 and 2A-212**
**(On Behalf of the Nebraska State Class)**
22   1588.    Plaintiffs re-allege and incorporate by reference all preceding allegations as

23   though fully set forth herein.

24   1589.    This count is brought on behalf of the Nebraska State Class against all

25   Defendants.

26

27

28

1590.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Neb. Rev. St. U.C.C. § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

1591.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Neb. Rev. St. U.C.C. § 2A-103(1)(p).

1592.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Neb. Rev. St. U.C.C. §§ 2-105(1) and 2A-103(1)(h).

1593.     In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1594.     Defendants also made numerous representations, descriptions, and promises to Nebraska State Class members regarding the performance and emission controls of their vehicles.

1595.     For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1596.     The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1597.     The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty,

certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1598.     The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1599.     As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

1600.     Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1601.     Despite the existence of warranties, Defendants failed to inform Nebraska State Class members that the Class Vehicles were defective and were intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

1602.     Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1603.     Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

1604.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Nebraska State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1605.    Accordingly, recovery by Nebraska State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1606.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Nebraska State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1607.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Nebraska State Class members' remedies would be insufficient to make them whole.

1608.    Finally, because of Defendants' breach of warranty as set forth herein, Nebraska State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1609.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1610.    As a direct and proximate result of Defendants' breach of express warranties, Nebraska State Class members have been damaged in an amount to be determined at trial.

**NEVADA COUNT I:**
**Violations of the Nevada Deceptive Trade Practices Act**
**Nev. Rev. Stat. § 598.0903 et seq.**
**(On Behalf of the Nevada State Class)**

1611.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1612.    This count is brought on behalf of the Nevada State Class against all Defendants.

1613.    The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat. § 598.0903, et seq. prohibits deceptive trade practices. Nev. Rev. Stat. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person: "5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; "7. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; "9. Advertises goods or services with intent not to sell or lease them as advertised"; or "15. Knowingly makes any other false representation in a transaction."

1614.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode would pass emissions tests when they in fact could not.

1615.    Nevada State Class members had no way of discerning that Defendants' representations were false and misleading because the Nevada State Class did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1616.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1617.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Nevada State Class.

1618.    Defendants knew or should have known that their conduct violated the Nevada DTPA.

1619.    Defendants owed the Nevada State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

    a.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

    b.   intentionally concealed the foregoing from regulators and Nevada State Class members; and/or

    c.   made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

1620.    Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the Nevada State Class.

1621.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Nevada State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1622.   Defendants' violations present a continuing risk to the Nevada State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1623.   Nevada State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Nevada DTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

**NEVADA COUNT II:**
**Breach of Express Warranty**
**N.R.S. §§ 104.2313 and 104A.2210**
**(On Behalf of the Nevada State Class)**

1624.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1625.   This count is brought on behalf of the Nevada State Class against all Defendants.

1626.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.R.S. § 104.2104(1) and "sellers" of motor vehicles under § 104.2103(1)(c).

1627.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.R.S. § 104A.2103(1)(p).

1628.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.R.S. §§ 104.2105(1) and 104A.2103(1)(h).

1629.   In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1630.   Defendants also made numerous representations, descriptions, and promises to Nevada State Class members regarding the performance and emission controls of their vehicles.

1631.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1632.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1633.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1634.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1635.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

1636.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1637.    Despite the existence of warranties, Defendants failed to inform Nevada State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

1638.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1639.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

1640.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Nevada State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1641.    Accordingly, recovery by Nevada State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1642.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Nevada State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1643.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered

because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Nevada State Class members' remedies would be insufficient to make them whole.

1644.    Finally, because of Defendants' breach of warranty as set forth herein, Nevada State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1645.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1646.    As a direct and proximate result of Defendants' breach of express warranties, Nevada State Class members have been damaged in an amount to be determined at trial.

## NEVADA COUNT III:
### Breach of Implied Warranty of Merchantability
### N.R.S. §§ 104.2314 and 104A.2212
### (On Behalf of the Nevada State Class)

1647.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1648.    This count is brought on behalf of the Nevada State Class against all Defendants.

1649.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.R.S. § 104.2104(1) and "sellers" of motor vehicles under § 104.2103(1)(c).

1650.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.R.S. § 104A.2103(1)(p).

1651.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.R.S. §§ 104.2105(1) and 104A.2103(1)(h).

1652.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.R.S. §§ 104.2314 and 104A.2212.

1653.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1654.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1655.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Nevada State Class members have been damaged in an amount to be proven at trial.

**NEW HAMPSHIRE COUNT I:**
**Violations of the New Hampshire Consumer Protection Act**
**N.H. Rev. Stat. § 358-A:1 et seq.**
**(On Behalf of the New Hampshire State Class)**

1656.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1657.    This count is brought on behalf of the New Hampshire State Class against all Defendants.

1658.    The New Hampshire State Class and Defendants are "persons" under the New Hampshire Consumer Protection Act ("New Hampshire CPA"), N.H. Rev. Stat. § 358-A:1.

1659.    Defendants' actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. Rev. Stat. § 358-A:1.

1660.    The New Hampshire CPA prohibits a person, in the conduct of any trade or commerce, from using "any unfair or deceptive act or practice," including "but . . . not limited to, the following: . . . (V) Representing that goods or services have . . . characteristics, . . . uses, benefits, or quantities that they do not have;" "(VII) Representing that goods or services are of

274
CLASS ACTION COMPLAINT

a particular standard, quality, or grade, . . . if they are of another;" and "(IX) Advertising goods or services with intent not to sell them as advertised." N.H. Rev. Stat. § 358-A:2.

1661.     In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1662.     New Hampshire State Class members had no way of discerning that Defendants' representations were false and misleading because New Hampshire State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1663.     Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1664.     Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the New Hampshire State Class.

1665.     Defendants knew or should have known that their conduct violated the New Hampshire CPA.

1666.     Defendants owed the New Hampshire State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

1667.     possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

1668.    intentionally concealed the foregoing from regulators and New Hampshire State Class members; and/or

1669.    made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

1670.    Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the New Hampshire State Class.

1671.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including New Hampshire State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1672.    Defendants' violations present a continuing risk to the New Hampshire State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1673.    New Hampshire State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the New Hampshire CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

**NEW HAMPSHIRE COUNT II:**
**Breach of Express Warranty**
**N.H. Rev. Stat. §§ 382-A:2-313 and 382-A:2A-210**
**(On Behalf of the New Hampshire State Class**

1674.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1675.    This count is brought on behalf of the New Hampshire State Class against all Defendants.

1676.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.H. Rev. Stat. § 382-A:2-104(1) and "sellers" of motor vehicles under § 382-A:2-103(1)(d).

1677.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.H. Rev. Stat. § 382-A:2A-103(1)(p).

1678.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.H. Rev. Stat. §§ 382-A:2-105(1) and 382-A:2A-103(1)(h).

1679.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1680.    Defendants also made numerous representations, descriptions, and promises to New Hampshire State Class members regarding the performance and emission controls of their vehicles.

1681.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1682.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1683.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty,

certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1684.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1685.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

1686.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1687.    Despite the existence of warranties, Defendants failed to inform New Hampshire State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

1688.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1689.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

1690.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make New Hampshire State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1691.    Accordingly, recovery by the New Hampshire State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1692.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. New Hampshire State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1693.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on New Hampshire State Class members' remedies would be insufficient to make them whole.

1694.    Finally, because of Defendants' breach of warranty as set forth herein, New Hampshire State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1695.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1696.    As a direct and proximate result of Defendants' breach of express warranties, New Hampshire State Class members have been damaged in an amount to be determined at trial.

### NEW HAMPSHIRE COUNT III:
#### Breach of Implied Warranty of Merchantability
#### N.H. Rev. Stat. §§ 382-A:2-314 and 382-A:2A-212
#### (On Behalf of the New Hampshire State Class)

1697.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1698.    This count is brought on behalf of the New Hampshire State Class against all Defendants.

1699.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.H. Rev. Stat. § 382-A:2-104(1) and "sellers" of motor vehicles under § 382-A:2-103(1)(d).

1700.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.H. Rev. Stat. § 382-A:2A-103(1)(p).

1701.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.H. Rev. Stat. §§ 382-A:2-105(1) and 382-A:2A-103(1)(h).

1702.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.H. Rev. Stat. §§ 382-A:2-314 and 382-A:2A-212.

1703.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1704.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1705.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, New Hampshire State Class members have been damaged in an amount to be proven at trial.

**NEW JERSEY COUNT I:**
**Violations of the New Jersey Consumer Fraud Act**
**N.J. Stat. Ann. § 56:8-1 et seq.**
**(On Behalf of the New Jersey State Class)**

1706.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

1707.    This count is brought on behalf of the New Jersey State Class against all Defendants.

1708.    The New Jersey State Class and Defendants are "persons" under the New Jersey Consumer Fraud Act ("New Jersey CFA"), N.J. Stat. § 56:8-1(d).

1709.    Defendants engaged in "sales" of "merchandise" within the meaning of N.J. Stat. §56:8-1(c), (e). Defendants' actions as set forth herein occurred in the conduct of trade or commerce.

1710.    The New Jersey CFA makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J. Stat. § 56:8-2.

1711.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1712.    Plaintiffs and New Jersey State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiffs and New Jersey State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1713.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1714.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the New Jersey State Class.

1715.    Defendants knew or should have known that their conduct violated the New Jersey CFA.

1716.    Defendants owed Plaintiffs and the New Jersey State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

    a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

    b.    intentionally concealed the foregoing from regulators, Plaintiff, and New Jersey State Class members; and/or

    c.    made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

1717.    Defendants' concealment of the true characteristics of the Class Vehicles' fuel consumption and emissions was material to Plaintiffs and the New Jersey State Class.

1718.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs and the New Jersey State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, the devaluing of environmental cleanliness and integrity at Defendant companies, and the true value of the Class Vehicles.

1719.    Defendants' violations present a continuing risk to Plaintiffs and the New Jersey State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1720.    Plaintiffs and New Jersey State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the New Jersey CFA. All owners and lessees of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1721.    As a direct and proximate result of Defendants' violations of the New Jersey CFA, Plaintiffs and the New Jersey State Class have suffered injury-in-fact and/or actual damage in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual and statutory damages, treble damages, an order enjoining Defendants' deceptive and unfair conduct, costs and reasonable attorneys' fees under N.J. Stat. § 56:8-19, and all other just and appropriate relief.

**NEW JERSEY COUNT II:**
**Breach of Express Warranty**
**N.J.S. 12A:2-313 and 2A-210**
**(On Behalf of the New Jersey State Class)**

1722.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1723.    This count is brought on behalf of the New Jersey State Class against all Defendants.

1724.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.J.S. 12A:2-104(1) and "sellers" of motor vehicles under 2-103(1)(d).

1725.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.J.S. 12A:2A-103(1)(p).

1726.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.J.S. 12A:2-105(1) and 2A-103(1)(h).

1727.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1728.    Defendants also made numerous representations, descriptions, and promises to Plaintiffs and New Jersey State Class members regarding the performance and emission controls of their vehicles.

1729.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1730.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1731.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles

(whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1732.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1733.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

1734.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1735.    Despite the existence of warranties, Defendants failed to inform Plaintiffs and New Jersey State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

1736.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1737.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

1738.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy

is insufficient to make Plaintiffs and New Jersey State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1739.    Accordingly, recovery by Plaintiffs and New Jersey State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1740.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Plaintiffs and New Jersey State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1741.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and New Jersey State Class members' remedies would be insufficient to make them whole.

1742.    Finally, because of Defendants' breach of warranty as set forth herein, Plaintiffs and New Jersey State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1743.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1744.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and New Jersey State Class members have been damaged in an amount to be determined at trial.

**NEW JERSEY COUNT III:**
**Breach of Implied Warranty**
**N.J.S. 12A:2-314 and 2A-2**
**(On Behalf of the New Jersey State Class)**

1745.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1746.    This count is brought on behalf of the New Jersey State Class against all Defendants.

1747.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.J.S. 12A:2-104(1) and "sellers" of motor vehicles under 2-103(1)(d). With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.J.S. 12A:2A-103(1)(p).

1748.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.J.S. 12A:2-105(1) and 2A-103(1)(h).

1749.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.J.S. 12A:2-314 and 2A-212.

1750.    These Class Vehicles, when sold or leased and at all times thereafter, included software that led to inflated and misleading fuel economy values, and were therefore not fit for the ordinary purpose for which vehicles are used. Defendants were provided reasonable notice of these issues by way of a letter sent Plaintiffs as well as the regulators' investigations.

1751.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and New Jersey State Class members have been damaged in an amount to be proven at trial.

CLASS ACTION COMPLAINT

**NEW MEXICO COUNT I:**
**Violations of the New Mexico Unfair Trade Practices Act**
**N.M. Stat. Ann. § 57-12-1 et seq.**
**(On Behalf of the New Mexico State Class)**

1752.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

1753.    This count is brought on behalf of the New Mexico State Class against all Defendants.

1754.    Defendants and New Mexico State Class members are "person[s]" under the New Mexico Unfair Trade Practices Act ("New Mexico UTPA"), N.M. Stat. Ann. § 57-12-2.

1755.    Defendants' actions as set forth herein occurred in the conduct of trade or commerce as defined under N.M. Stat. Ann. § 57-12-2.

1756.    The New Mexico UTPA makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person," including but not limited to "failing to state a material fact if doing so deceives or tends to deceive." N.M. Stat. Ann. § 57-12-2(D). Defendants' acts and omissions described herein constitute unfair or deceptive acts or practices under N.M. Stat. Ann. § 57-12-2(D). In addition, Defendants' actions constitute unconscionable actions under N.M. Stat. Ann. § 57-12-2(E), since they took advantage of the lack of knowledge, ability, experience, and capacity of New Mexico State Class members to a grossly unfair degree.

1757.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1758.    New Mexico State Class members had no way of discerning that Defendants' representations were false and misleading because New Mexico State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1759.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1760.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the New Mexico State Class.

1761.    Defendants knew or should have known that their conduct violated the New Mexico UTPA.

1762.    Defendants owed the New Mexico State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

      a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

      b.    intentionally concealed the foregoing from regulators and New Mexico State Class members; and/or

      c.    made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

1763.    Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the New Mexico State Class.

1764.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the New Mexico State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1765.    Defendants' violations present a continuing risk to the New Mexico State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1766.    New Mexico State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the New Mexico UTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1767.    As a direct and proximate result of Defendants' violations of the New Mexico UTPA, New Mexico State Class members have suffered injury-in-fact and/or actual damage.

1768.    Because Defendants' unconscionable, willful conduct caused actual harm to New Mexico State Class members, the New Mexico State Class seeks recovery of actual damages or $100, whichever is greater, discretionary treble damages, punitive damages, and reasonable attorneys' fees and costs, as well as all other proper and just relief available under N.M. Stat. Ann. § 57-12-10.

1769.    New Mexico State Class members also seek punitive damages against Defendants because Defendants' conduct was malicious, willful, reckless, wanton, fraudulent and in bad faith.

**NEW MEXICO COUNT II:**
**Breach of Express Warranty**
**N.M. Stat. §§ 55-2-313 and 55-2A-210**
**(On Behalf of the New Mexico State Class)**

1770.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1771.    This count is brought on behalf of the New Mexico State Class against all Defendants.

1772.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.M. Stat. § 55-2-104(1) and "sellers" of motor vehicles under § 55-2-103(1)(d).

1773.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.M. Stat. § 55-2A-103(1)(p).

1774.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.M. Stat. §§ 55-2-105(1) and 55-2A-103(1)(h).

1775.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1776.    Defendants also made numerous representations, descriptions, and promises to New Mexico State Class members regarding the performance and emission controls of their vehicles.

1777.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1778.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1779.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or

24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1780.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1781.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

1782.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1783.    Despite the existence of warranties, Defendants failed to inform New Mexico State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

1784.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1785.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

1786.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make New Mexico State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1787.    Accordingly, recovery by New Mexico State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1788.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. New Mexico State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1789.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on New Mexico State Class members' remedies would be insufficient to make them whole.

1790.    Finally, because of Defendants' breach of warranty as set forth herein, New Mexico State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1791.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1792.    As a direct and proximate result of Defendants' breach of express warranties, New Mexico State Class members have been damaged in an amount to be determined at trial.

**NEW MEXICO COUNT III:**
**Breach of Implied Warranty of Merchantability**
**N.M. Stat. §§ 55-2-314 and 55-2A-212**
**(On Behalf of the New Mexico State Class)**

1793.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1794.    This count is brought on behalf of the New Mexico State Class against all Defendants.

1795.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.M. Stat. § 55-2-104(1) and "sellers" of motor vehicles under § 55-2-103(1)(d).

1796.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.M. Stat. § 55-2A-103(1)(p).

1797.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.M. Stat. §§ 55-2-105(1) and 55-2A-103(1)(h).

1798.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.M. Stat. §§ 55-2-314 and 55-2A-212.

1799.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1800.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1801.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, New Mexico State Class members have been damaged in an amount to be proven at trial.

**NEW YORK COUNT I:**
**Violations of the New York General Business Law § 349**
**N.Y. Gen. Bus. Law § 349**
**(On Behalf of the New York State Class)**

1802.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

1803.    This count is brought on behalf of the New York State Class against all Defendants.

1804.    The New York State Class members and Defendants are "persons" under N.Y. Gen. Bus. Law § 349(h), the New York Deceptive Acts and Practices Act ("NY DAPA").

1805.    Defendants' actions as set forth herein occurred in the conduct of trade or commerce under the NY DAPA.

1806.    The NY DAPA makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. Defendants' conduct, as set forth herein, constitutes deceptive acts or practices under this section.

1807.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1808.    New York State Class members had no way of discerning that Defendants' representations were false and misleading because New York State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1809.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1810.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the New York State Class.

1811.    Defendants knew or should have known that their conduct violated the NY DAPA.

1812.    Defendants owed the New York State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

1813.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

1814.    intentionally concealed the foregoing from regulators and New York State Class members; and/or

1815.    made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

1816.    Defendants' concealment of the true characteristics of the Class Vehicles' true fuel consumption and emissions was material to the New York State Class.

1817.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the New York State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1818.    Defendants' violations present a continuing risk to the New York State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1819.    New York State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the NY DAPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1820.    As a direct and proximate result of Defendants' violations of the NY DAPA, New York State Class members have suffered injury-in-fact and/or actual damage.

1821.    As a result of the foregoing willful, knowing, and wrongful conduct of Defendants, New York State Class members have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including but not limited to actual damages or $50, whichever is greater, treble damages up to $1,000, punitive damages to the extent available under the law, reasonable attorneys' fees and costs, an order enjoining Defendants' deceptive and unfair conduct, and all other just and appropriate relief available under the NY DAPA.

**NEW YORK COUNT II:**
**Violations of the New York General Business Law § 350**
**N.Y. Gen. Bus. Law § 350**
**(On Behalf of the New York State Class)**

1822.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

1823.    This count is brought on behalf of the New York State Class against all Defendants.

1824.    Defendants were engaged in the "conduct of business, trade or commerce," within the meaning of N.Y. Gen. Bus. Law § 350, the New York False Advertising Act ("NY FAA").

1825.    The NY FAA makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect,"

1    taking into account "the extent to which the advertising fails to reveal facts material in light of .

2    . . representations [made] with respect to the commodity . . . ." N.Y. Gen. Bus. Law § 350-a.

3        1826.    Defendants caused to be made or disseminated through New York, through

4    advertising, marketing, and other publications, statements and omissions that were untrue or

5    misleading, and that were known by Defendants, or that through the exercise of reasonable care

6    should have been known by Defendants, to be untrue and misleading to the New York State

7    Class.

8        1827.    Defendants made numerous material misrepresentations and omissions of fact

9    with intent to mislead and deceive concerning the Class Vehicles, particularly concerning the

10    illegality, efficacy and functioning of the emissions systems on the Class Vehicles. Specifically,

11    Defendants intentionally concealed and suppressed material facts concerning the legality and

12    quality of the Class Vehicles to intentionally and grossly defraud and mislead the New York

13    State Class concerning the true emissions produced by the Class Vehicles.

14        1828.    The misrepresentations and omissions regarding fuel economy and emissions set

15    forth above were material and likely to deceive a reasonable consumer.

16        1829.    Defendants intentionally and knowingly misrepresented material facts regarding

17    the Class Vehicles with intent to mislead the New York State Class.

18        1830.    Defendants' false advertising was likely to and did in fact deceive regulators and

19    reasonable consumers, including the New York State Class, about the illegality and true

20    characteristics of the Class Vehicles, the quality of Defendants brand and the true value of the

21    Class Vehicles.

22        1831.    Defendants' violations of the NY FAA present a continuing risk to New York

23    State Class members and to the general public. Defendants' deceptive acts and practices affect

24    the public interest.

25        1832.    The Class Vehicles do not perform as advertised and are not compliant with EPA

26    regulations, making them far less valuable than advertised.

27

28

1833.    New York State Class members have suffered injury-in-fact and/or actual damages and ascertainable loss as a direct and proximate result of the Defendant's false advertising in violation of the NY FAA.

1834.    The New York State Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial, and (b) statutory damages in the amount of $500 each for New York State Class members. Because Defendants' conduct was committed willingly and knowingly, New York State Class members are entitled to recover three times actual damages, up to $10,000.

1835.    The New York State Class also seeks an order enjoining Defendants' false advertising and providing for attorneys' fees and any other just and proper relief under N.Y. Gen. Bus. Law § 350.

**NEW YORK COUNT III:**
**Breach of Express Warranty**
**N.Y. U.C.C. Law §§ 2-313 and 2A-210**
**(On Behalf of the New York State Class)**

1836.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1837.    This count is brought on behalf of the New York State Class against all Defendants.

1838.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.Y. UCC Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

1839.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.Y. UCC Law § 2A-103(1)(p).

1840.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

1841.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1842.    Defendants also made numerous representations, descriptions, and promises to New York State Class members regarding the performance and emission controls of their vehicles.

1843.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1844.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1845.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1846.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever

comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1847.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

1848.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1849.    Despite the existence of warranties, Defendants failed to inform New York State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

1850.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1851.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

1852.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make New York State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1853.    Accordingly, recovery by New York State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1854.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently

concealed material facts regarding the Class Vehicles. New York State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1855.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on New York State Class members' remedies would be insufficient to make them whole.

1856.    Finally, because of Defendants' breach of warranty as set forth herein, New York State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1857.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1858.    As a direct and proximate result of Defendants' breach of express warranties, New York State Class members have been damaged in an amount to be determined at trial.

**NEW YORK COUNT IV:**
**Breach of Implied Warranty of Merchantability**
**N.Y. U.C.C. Law §§ 2-314 and 2A-212**
**(On Behalf of the New York State Class)**

1859.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1860.    This count is brought on behalf of the New York State Class against all Defendants.

1861.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.Y. UCC Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

1862.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.Y. UCC Law § 2A-103(1)(p).

1863.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

1864.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.Y. UCC Law §§ 2-314 and 2A-212.

1865.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1866.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1867.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, New York State Class members have been damaged in an amount to be proven at trial.

**NORTH CAROLINA COUNT I:**
**Violations of the North Carolina Unfair and Deceptive Acts and Practices Act**
**N.C. Gen. Stat. § 75-1.1 et seq.**
**(On Behalf of the North Carolina State Class)**

1868.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1869.    This count is brought on behalf of the North Carolina State Class against all Defendants.

1870.    Plaintiffs and North Carolina State Class members are persons under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, et seq. ("NCUDTPA").

CLASS ACTION COMPLAINT

1871.    Defendants' acts and practices complained of herein were performed in the course of Defendants' trade or business and thus occurred in or affected "commerce," as defined in N.C. Gen. Stat. § 75-1.1(b).

1872.    The NCUDTPA makes unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or operation in violation of" the NCUDTPA. N.C. Gen. Stat. § 75-16.

1873.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1874.    Plaintiffs and North Carolina State Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiffs and North Carolina State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1875.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1876.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the North Carolina State Class.

1    1877.    Defendants knew or should have known that their conduct violated the

2    NCUDTPA.

3    1878.    Defendants owed to Plaintiffs and the North Carolina State Class a duty to

4    disclose the illegality and public health risks, the true nature of the Class Vehicles, because

5    Defendants:

6          a.    possessed exclusive knowledge that they were manufacturing, selling, and

7                distributing vehicles throughout the United States that did not perform as

8                advertised;

9          b.    intentionally concealed the foregoing from regulators, Plaintiff, and North

10                Carolina State Class members; and/or

11          c.    made incomplete representations about the Class Vehicles' fuel economy and

12                emissions while purposefully withholding material facts from Plaintiffs and the

13                North Carolina State Class that contradicted these representations.

14    1879.    Defendants' concealment of the Class Vehicles' true fuel consumption and

15    emissions were material to Plaintiffs and the North Carolina State Class.

16    1880.    Defendants' unfair or deceptive acts or practices were likely to and did in fact

17    deceive regulators and reasonable consumers, including Plaintiffs and the North Carolina State

18    Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality

19    of the Defendants' brands, the devaluing of environmental cleanliness and integrity at Defendant

20    companies, and the true value of the Class Vehicles.

21    1881.    Defendants' violations present a continuing risk to Plaintiffs and the North

22    Carolina State Class, as well as to the general public. Defendants' unlawful acts and practices

23    complained of herein affect the public interest.

24    1882.    Plaintiffs and North Carolina State Class members suffered ascertainable loss

25    and actual damages as a direct and proximate result of Defendants' misrepresentations and

26    concealment of and failure to disclose material information. Defendants had an ongoing duty to

27    all their customers to refrain from unfair and deceptive practices under the NCUDTPA. All

28

owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1883.    As a result of the foregoing wrongful conduct of Defendants, Plaintiffs and the North Carolina State Class has been damaged in an amount to be proven at trial, and seek all just and proper remedies, including but not limited to treble damages, an order enjoining Defendants' deceptive and unfair conduct, court costs and reasonable attorneys' fees, and any other just and proper relief available under N.C. Gen. Stat. § 75-16.

**NORTH CAROLINA COUNT II:**
**Breach of Express Warranty**
**N.C.G.S.A. §§ 25-2-313 and 252A-210**
**(On Behalf of the North Carolina State Class)**

1884.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1885.    This count is brought on behalf of the North Carolina State Class against all Defendants.

1886.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.C.G.S.A. § 25-2-104(1) and "sellers" of motor vehicles under § 25-2-103(1)(d).

1887.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.C.G.S.A. § 25-2A-103(1)(p).

1888.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.C.G.S.A. § 25-2-105(1) and N.C.G.S.A. § 25-2A-103(1)(h).

1889.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1890.    Defendants also made numerous representations, descriptions, and promises to North Carolina State Class members regarding the performance and emission controls of their vehicles.

1891.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1892.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1893.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1894.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1895.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

1896.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1897.    Despite the existence of warranties, Defendants failed to inform North Carolina State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

1898.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1899.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

1900.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make North Carolina State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1901.    Accordingly, recovery by North Carolina State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1902.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. North Carolina State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1903.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials

and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on North Carolina State Class members' remedies would be insufficient to make them whole.

1904.    Finally, because of Defendants' breach of warranty as set forth herein, North Carolina State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1905.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1906.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and North Carolina State Class members have been damaged in an amount to be determined at trial.

**NORTH CAROLINA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**N.C.G.S.A. §§ 25-2-314 and 252A-212**
**(On Behalf of the North Carolina State Class)**

1907.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1908.    This count is brought on behalf of the North Carolina State Class against all Defendants.

1909.    . Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.C.G.S.A. § 25-2-104(1) and "sellers" of motor vehicles under § 25-2-103(1)(d).

1910.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.C.G.S.A. § 25-2A-103(1)(p).

1911.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.C.G.S.A. § 25-2-105(1) and N.C.G.S.A. § 25-2A-103(1)(h).

1912.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.C.G.S.A. § 25-2-314 and N.C.G.S.A. § 25-2A-212.

1913.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1914.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1915.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and North Carolina State Class members have been damaged in an amount to be proven at trial.

**NORTH DAKOTA COUNT I:**
**Violations of the North Dakota Consumer Fraud Act**
**N.D. Cent. Code § 51-15-02**
**(On Behalf of the North Dakota State Class)**

1916.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1917.    This count is brought on behalf of the North Dakota State Class against all Defendants.

1918.    North Dakota State Class members and Defendants are "persons" within the meaning of N.D. Cent. Code § 51-15-02(4).

1919.    Defendants engaged in the "sale" of "merchandise" within the meaning of N.D. Cent Code § 51-15-02(3), (5).

1920.    The North Dakota Consumer Fraud Act ("North Dakota CFA") makes unlawful "[t]he act, use, or employment by any person of any deceptive act or practice, fraud, false

pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise . . . ." N.D. Cent. Code § 51-15-02. As set forth above and below, Defendants committed deceptive acts or practices, with the intent that North Dakota State Class members rely thereon in connection with their purchase or lease of the Class Vehicles.

1921.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1922.    North Dakota State Class members had no way of discerning that Defendants' representations were false and misleading because North Dakota State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1923.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1924.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the North Dakota State Class.

1925.    Defendants knew or should have known that their conduct violated the North Dakota CFA.

1926.    Defendants owed the North Dakota State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

a.  possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

b.  intentionally concealed the foregoing from regulators and North Dakota State Class members; and/or

c.  made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

1927.    Defendants' concealment of the true characteristics of the Class Vehicles' fuel consumption and emissions was material to the North Dakota State Class.

1928.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the North Dakota State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1929.    Defendants' violations present a continuing risk to the North Dakota State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1930.    North Dakota State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the North Dakota CFA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1931.    As a direct and proximate result of Defendants' violations of the North Dakota CFA, North Dakota State Class members have suffered injury-in-fact and/or actual damage.

1932.    North Dakota State Class members seek punitive damages against Defendants because Defendants' conduct was egregious. Defendants' egregious conduct warrants punitive damages.

1933.    Furthermore, Defendants knowingly committed the conduct described above, and thus, under N.D. Cent. Code § 51-15-09, Defendants are liable to the North Dakota State Class for treble damages in amounts to be proven at trial, as well as attorneys' fees, costs, and disbursements. Plaintiffs further seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and other just and proper available relief under the North Dakota CFA.

**NORTH DAKOTA COUNT II:**
**Breach of Express Warranty**
**N.D. Cent. Code §§ 41-02-30 and 41-02.1-19**
**(On Behalf of the North Dakota State Class)**

1934.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

1935.    This count is brought on behalf of the North Dakota State Class against all Defendants.

1936.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.D. Cent. Code § 41-02.04(3) and "sellers" of motor vehicles under § 41-02-03(1)(d).

1937.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.D. Cent. Code § 41-02.1-03(1)(p).

1938.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.D. Cent. Code § 41-02-05(2) and N.D. Cent. Code § 41-02.1-03(1)(h).

1939.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

1940.     Defendants also made numerous representations, descriptions, and promises to North Dakota State Class members regarding the performance and emission controls of their vehicles.

1941.     For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

1942.     The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

1943.     The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

1944.     The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever

comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1945.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

1946.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

1947.    Despite the existence of warranties, Defendants failed to inform North Dakota State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

1948.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

1949.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

1950.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make North Dakota State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1951.    Accordingly, recovery by North Dakota State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

1952.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently

concealed material facts regarding the Class Vehicles. North Dakota State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1953.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on North Dakota State Class members' remedies would be insufficient to make them whole.

1954.    Finally, because of Defendants' breach of warranty as set forth herein, North Dakota State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1955.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1956.    As a direct and proximate result of Defendants' breach of express warranties, North Dakota State Class members have been damaged in an amount to be determined at trial.

**NORTH DAKOTA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**N.D. Cent. Code §§ 41-02-31 and 41-02.1-21**
**(On Behalf of the North Dakota State Class)**

1957.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1958.    This count is brought on behalf of the North Dakota State Class against all Defendants.

1959.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.D. Cent. Code § 41-02.04(3) and "sellers" of motor vehicles under § 41-02-03(1)(d).

1960.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.D. Cent. Code § 41-02.1-03(1)(p).

1961.     The Class Vehicles are and were at all relevant times "goods" within the meaning of N.D. Cent. Code § 41-02-05(2) and N.D. Cent. Code § 41-02.1-03(1)(h).

1962.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.D. Cent. Code § 41-02-31 and N.D. Cent. Code § 41-02.1-21.

1963.     These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

1964.     Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

1965.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, North Dakota State Class members have been damaged in an amount to be proven at trial.

**OHIO COUNT I:**
**Violations of the Ohio Consumer Sales Practices Act**
**Ohio Rev. Code § 1345.01 et seq.**
**(On Behalf of the Ohio State Class)**

1966.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1967.     This count is brought on behalf of the Ohio State Class against all Defendants.

1968.     Defendants and the Ohio State Class are "persons" within the meaning of Ohio Rev. Code § 1345.01(B). Defendants are a "supplier" as defined by Ohio Rev. Code § 1345.01(C).

1969. Ohio State Class members are "consumers" as that term is defined in Ohio Rev. Code § 1345.01(D), and their purchase and leases of the Class Vehicles with the Defeat Devices installed in them are "consumer transactions" within the meaning of Ohio Rev. Code § 1345.01(A).

1970. Ohio Rev. Code § 1345.02, prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Ohio CSPA prohibits a supplier from (i) representing that goods have characteristics, uses or benefits which the goods do not have; (ii) representing that their goods are of a particular quality or grade that the product is not; and (iii) representing that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not.

1971. In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1972. Ohio State Class members had no way of discerning that Defendants' representations were false and misleading because Ohio State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1973. Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1974.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Ohio State Class.

1975.    Defendants knew or should have known that their conduct violated the Ohio CSPA.

1976.    The Ohio Attorney General has made available for public inspection prior state court decisions which have held that the acts and omissions of Defendants in this Complaint, including, but not limited to, the failure to honor both implied warranties and express warranties, the making and distribution of false, deceptive, and/or misleading representations, and the concealment and/or non-disclosure of a substantial defect, constitute deceptive sales practices in violation of the CSPA. These cases include, but are not limited to, the following:

      a.   *Mason v. Mercedes Benz USA, LLC* (OPIF #10002382);

      b.   *State ex rel. Betty D. Montgomery v. Ford Motor Co.* (OPIF #10002123);

      c.   *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF #10002025);

      d.   *Bellinger v. Hewlett-Packard Co.*, No. 20744, 2002 Ohio App. LEXIS 1573 (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077);

      e.   *Borror v. MarineMax of Ohio*, No. OT-06-010, 2007 Ohio App. LEXIS 525 (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388);

      f.   *State ex rel. Jim Petro v. Craftmatic Organization, Inc.* (OPIF #10002347);

      g.   *Cranford v. Joseph Airport Toyota, Inc.* (OPIF #10001586);

      h.   *Brown v. Spears* (OPIF #10000403);

      i.   *Brinkman v. Mazda Motor of America, Inc.* (OPIF #10001427);

      j.   *Mosley v. Performance Mitsubishi aka Automanage* (OPIF #10001326); and

      k.   *Walls v. Harry Williams dba Butch's Auto Sales* (OPIF #10001524).

1977.    Defendants owed the Ohio State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

   a.  possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

   b.  intentionally concealed the foregoing from regulators and Ohio State Class members; and/or

   c.  made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

1978.    Defendants' concealment of the true characteristics of the Class Vehicles' fuel consumption and emissions was material to the Ohio State Class.

1979.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Ohio State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1980.    Defendants' violations present a continuing risk to the Ohio State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1981.    Ohio State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Ohio CSPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1982.    Pursuant to Ohio Rev. Code § 1345.09, the Ohio State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, actual damages - trebled, and attorneys' fees, costs, and any other just and proper relief, to the extend available under the Ohio CSPA.

**OHIO COUNT II:**
**Violations of the Ohio Deceptive Trade Practices Act**
**Ohio Rev. Code § 4165.01 et seq.**
**(On Behalf of the Ohio State Class)**

1983.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1984.     This count is brought on behalf of the Ohio State Class against all Defendants.

1985.     Defendants and the Ohio State Class are "persons" within the meaning of Ohio Rev. Code § 4165.01(D).

1986.     Defendants engaged in "the course of [its] business" within the meaning of Ohio Rev. Code § 4165.02(A) with respect to the acts alleged herein.

1987.     The Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.02(A) ("Ohio DTPA") provides that a "person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation," the person does any of the following: "(2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; . . . (7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; . . . (9) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . [or] (11) Advertises goods or services with intent not to sell them as advertised."

1988.     In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

1989.    Ohio State Class members had no way of discerning that Defendants' representations were false and misleading because Ohio State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

1990.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

1991.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Ohio State Class.

1992.    Defendants knew or should have known that their conduct violated the Ohio DTPA.

1993.    Defendants owed the Ohio State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

    a.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

    b.   intentionally concealed the foregoing from regulators and Ohio State Class members; and/or

    c.   made incomplete representations about the Class Vehicles' true fuel consumption and emissions while purposefully withholding material facts that contradicted these representations.

1994.    Defendants' concealment of the true characteristics of the Class Vehicles' fuel consumption and emissions was material to the Ohio State Class.

1995.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Ohio State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

1996.    Defendants' violations present a continuing risk to the Ohio State Class, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1997.    Ohio State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Ohio DTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

1998.    Pursuant to Ohio Rev. Code § 4165.03, the Ohio State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Ohio DTPA.

**OHIO COUNT III:**
**Breach of Express Warranty**
**Ohio. Rev. Code § 1302.26, et seq. / U.C.C. § 2-313**
**(On Behalf of the Ohio State Class)**

1999.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

2000.    This count is brought on behalf of the Ohio State Class against all Defendants.

2001.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ohio Rev. Code §§ 1302.01(5) and 1310.01(A)(20), and "sellers" of motor vehicles under § 1302.01(4).

2002.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ohio Rev. Code § 1310.01(A)(20).

2003.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ohio Rev. Code §§ 1302.01(8), and 1310.01(A)(8).

2004.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2005.    Defendants also made numerous representations, descriptions, and promises to Ohio State Class members regarding the performance and emission controls of their vehicles.

2006.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

2007.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2008.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

2009.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express

warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2010.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

2011.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

2012.    Despite the existence of warranties, Defendants failed to inform Ohio State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

2013.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

2014.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

2015.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Ohio State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2016.    Accordingly, recovery by Ohio State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

2017.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Ohio State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2018.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Ohio State Class members' remedies would be insufficient to make them whole.

2019.    Finally, because of Defendants' breach of warranty as set forth herein, Ohio State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

2020.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2021.    As a direct and proximate result of Defendants' breach of express warranties, Ohio State Class members have been damaged in an amount to be determined at trial.

**OHIO COUNT IV:**
**Breach of Implied Warranty of Merchantability**
**Ohio Rev. Code Ann. §§ 1302.27 and 1310.19**
**(On Behalf of the Ohio State Class)**

2022.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2023.    This count is brought on behalf of the Ohio State Class against all Defendants.

2024.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ohio Rev. Code §§ 1302.01(5) and 1310.01(A)(20), and "sellers" of motor vehicles under § 1302.01(4).

2025.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ohio Rev. Code § 1310.01(A)(20).

2026.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ohio Rev. Code §§ 1302.01(8), and 1310.01(A)(8).

2027.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ohio Rev. Code §§ 1302.27 and 1310.19.

2028.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

2029.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2030.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Ohio State Class members have been damaged in an amount to be proven at trial.

**OKLAHOMA COUNT I:**
**Violations of the Oklahoma Consumer Protection Act**
**Okla. Stat. Tit. 15 § 751 et seq.**
**(On Behalf of the Oklahoma State Class)**

2031.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2032.    This count is brought on behalf of the Oklahoma State Class against all Defendants.

2033.    Defendants and the Oklahoma State Class are "persons" within the meaning of Okla. Stat. Tit. 15 § 752.1.

2034.    Defendants engaged in "the course of [its] business" within the meaning of Okla. Stat. Tit. 15 § 752.3 with respect to the acts alleged herein.

2035.    The Oklahoma Consumer Protection Act ("Oklahoma CPA") prohibits, in the course of business: "mak[ing] a false or misleading representation, knowingly or with reason to know, as to the characteristics . . ., uses, [or] benefits, of the subject of a consumer transaction," or making a false representation, "knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another or "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised;" and otherwise committing "an unfair or deceptive trade practice." Okla. Stat. Tit. 753.

2036.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

2037.    Oklahoma State Class members had no way of discerning that Defendants' representations were false and misleading because Oklahoma State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

2038.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising

Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

2039.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Oklahoma State Class.

2040.   Defendants knew or should have known that their conduct violated the Oklahoma CPA.

2041.   Defendants owed the Oklahoma State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

      a.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

      b.   intentionally concealed the foregoing from regulators and Oklahoma State Class members; and/or

      c.   made incomplete representations about the Class Vehicles' true fuel consumption and emissions while purposefully withholding material facts that contradicted these representations.

2042.   Defendants' concealment of the true characteristics of the Class Vehicles' true fuel consumption and emissions was material to the Oklahoma State Class.

2043.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Oklahoma State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

2044.   Defendants' violations present a continuing risk to the Oklahoma State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2045.     Oklahoma State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Oklahoma CPA. All owners and lessees of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

2046.     Pursuant to Okla. Stat. Tit. 15 § 761.1, the Oklahoma State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Oklahoma CPA.

**OKLAHOMA COUNT II:**
**Breach of Express Warranty**
**Okla. Stat. Tit. 12 §§ 2-313 and 2A-210**
**(On Behalf of the Oklahoma State Class)**

2047.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

2048.     This count is brought on behalf of the Oklahoma State Class against all Defendants.

2049.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Okla. Stat. Tit. 12A §§ 2-104(1) and 2-1103(3), and "sellers" of motor vehicles under § 2A-103(1)(t).

2050.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Okla. Stat. Tit. 12A § 2A-103(1)(p).

2051.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Okla. Stat. Tit. 12A §§ 2-105(1) and 2A-103(1)(h).

2052.     In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2053.    Defendants also made numerous representations, descriptions, and promises to Oklahoma State Class members regarding the performance and emission controls of their vehicles.

2054.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

2055.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2056.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

2057.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever

comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2058.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

2059.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

2060.    Despite the existence of warranties, Defendants failed to inform Oklahoma State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

2061.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

2062.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

2063.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Oklahoma State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2064.    Accordingly, recovery by Oklahoma State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

2065.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently

concealed material facts regarding the Class Vehicles. Oklahoma State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2066.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Oklahoma State Class members' remedies would be insufficient to make them whole.

2067.    Finally, because of Defendants' breach of warranty as set forth herein, Oklahoma State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

2068.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2069.    As a direct and proximate result of Defendants' breach of express warranties, Oklahoma State Class members have been damaged in an amount to be determined at trial.

**OKLAHOMA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Okla. Stat. Tit. 12A §§ 2-314 and 2A-212**
**(On Behalf of the Oklahoma State Class)**

2070.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2071.    This count is brought on behalf of the Oklahoma State Class against all Defendants.

2072.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Okla. Stat. Tit. 12A §§ 2-104(1) and 2-1103(3), and "sellers" of motor vehicles under § 2A-103(1)(t).

2073.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Okla. Stat. Tit. 12A § 2A-103(1)(p).

2074.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Okla. Stat. Tit. 12A §§ 2-105(1) and 2A-103(1)(h).

2075.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Okla. Stat. Tit. 12A §§ 2-314 and 2A-212.

2076.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

2077.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2078.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Oklahoma State Class members have been damaged in an amount to be proven at trial.

**OREGON COUNT I:**
**Violations of the Oregon Unlawful Trade Practices Act**
**Or. Rev. Stat. § 646.605, et seq.**
**(On Behalf of the Oregon State Class)**

2079.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2080.    This count is brought on behalf of the Oregon State Class against all Defendants.

2081.    Defendants and the Oregon State Class are "persons" within the meaning of Or. Rev. Stat. § 646.605(4).

CLASS ACTION COMPLAINT

2082.    Defendants are engaged in "trade" or "commerce" within the meaning of Or. Rev. Stat. § 646.605(8).

2083.    The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits "unfair or deceptive acts conduct in trade or commerce . . . ." Or. Rev. Stat. § 646.608(1).

2084.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

2085.    Oregon State Class members had no way of discerning that Defendants' representations were false and misleading because State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

2086.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

2087.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Oregon State Class.

2088.    Defendants knew or should have known that their conduct violated the Oregon UTPA.

2089.    Defendants owed the Oregon State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

a. possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

b. intentionally concealed the foregoing from regulators and Oregon State Class members; and/or

c. made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

2090. Defendants' concealment of the Class Vehicles' true fuel consumption and emissions were material to the Oregon State Class.

2091. Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Oregon State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

2092. Defendants' violations present a continuing risk to the Oregon State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2093. Oregon State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Oregon UTPA. All owners and lessees of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

2094. Pursuant to Or. Rev. Stat. § 646.638, the Oregon State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Oregon UTPA.

1

2

3

4

**OREGON COUNT II:**
**Breach of Express Warranty**
**Or. Rev. Stat. §§ 72.3130 and 72A.2100**
**(On Behalf of the Oregon State Class)**

5

6

7     2095.    Plaintiffs re-allege and incorporate by reference all preceding allegations as

8     though fully set forth herein.

9     2096.    This count is brought on behalf of the Oregon State Class against all Defendants.

10    2097.    Defendants are and were at all relevant times "merchant[s]" with respect to motor

11    vehicles under Or. Rev. Stat. §§ 72.1040(1) and 72A.1030(1)(t), and "sellers" of motor vehicles

12    under § 72.1030(1)(d).

13    2098.    With respect to leases, Defendants are and were at all relevant times "lessors" of

14    motor vehicles under Or. Rev. Stat. § 72A.1030(1)(p).

15    2099.    The Class Vehicles are and were at all relevant times "goods" within the meaning

16    of Or. Rev. Stat. §§ 72.1050(1) and 72A.1030(1)(h).

17    2100.    In connection with the purchase or lease of each one of its new vehicles,

18    Defendants provide an express warranty for a period of four years or 50,000 miles, whichever

19    occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed

20    during normal use."

21    2101.    Defendants also made numerous representations, descriptions, and promises to

22    Oregon State Class members regarding the performance and emission controls of their vehicles.

23    2102.    For example, Defendants included in the warranty booklets for some or all of the

24    Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at

25    the time of sale with all U.S. emission standards applicable at the time of manufacture, and that

26    it is free from defects in material and workmanship which would cause it not to meet those

27    standards."

28

2103.     The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2104.     The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

2105.     The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2106.     As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

2107.     Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

2108.     Despite the existence of warranties, Defendants failed to inform Oregon State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what

was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

2109.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

2110.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

2111.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Oregon State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2112.    Accordingly, recovery by Oregon State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

2113.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Oregon State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2114.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Oregon State Class members' remedies would be insufficient to make them whole.

2115.    Finally, because of Defendants' breach of warranty as set forth herein, Oregon State Class members assert, as additional and/or alternative remedies, the revocation of

acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

2116.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2117.    As a direct and proximate result of Defendants' breach of express warranties, Oregon State Class members have been damaged in an amount to be determined at trial.

**OREGON COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Or. Rev. Stat. §§ 72.3140 and 72A.2120**
**(On Behalf of the Oregon State Class)**

2118.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2119.    This count is brought on behalf of the Oregon State Class against all Defendants.

2120.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Or. Rev. Stat. §§ 72.1040(1) and 72A.1030(1)(t), and "sellers" of motor vehicles under § 72.1030(1)(d).

2121.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Or. Rev. Stat. § 72A.1030(1)(p).

2122.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Or. Rev. Stat. §§ 72.1050(1) and 72A.1030(1)(h).

2123.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Or. Rev. Stat. §§ 72.3140 and 72A-2120.

2124.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

2125.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2126.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Oregon State Class members have been damaged in an amount to be proven at trial.

**PENNSYLVANIA COUNT I:**
**Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law**
**73 P.S. § 201-1 et seq.**
**(On Behalf of the Pennsylvania State Class)**

2127.    Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

2128.    This claim is brought on behalf of the Pennsylvania State Class against all Defendants.

2129.    Plaintiffs and all members of the Pennsylvania State Class are "persons" within the meaning of 73 P.S. § 201-2(2).

2130.    Defendants were engaged in "trade" or "commerce" within the meaning of 73 P.S. § 201-2(3).

2131.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania UTPA") prohibits "unfair methods of competition" and "unfair or deceptive acts or practices," including representing that goods have approval, characteristics, ingredients, uses, benefits or quantities that they do not have; representing that goods are of a particular standard, quality, or grade, if they are of another; advertising goods with intent not to sell them as advertised; and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding. 73 P.S. § 201-2(4)(v), (vii), (ix), (xxi).

2132.    In the course of their business, Defendants intentionally concealed material facts concerning the Class Vehicles. They did so by installing different sets of gears in the Class Vehicles sent for emissions testing than in the Class Vehicles sold to the public. These test

vehicle gears had a longer gear ratio, resulting in the engine running at lower RPMs and therefore with better fuel efficiency and lower emissions than the Class Vehicles sold to the public. Furthermore, the test vehicles met emissions standards but would not be able to achieve the sports car performance purchasers expected, while vehicles sold to the public achieve the promised performance but do not meet emissions standards, meaning that Class Vehicles cannot simultaneously conform to the characteristics and quality for promised by Defendants.

2133.    Pennsylvania Class members had no way of discerning that Defendants' representations were false and misleading because Defendants' use of different gear ratios in test vehicles was concealed from both regulators and the public. The gear ratios in class vehicles matched what was advertised, so the differences from test vehicles could not be discovered without sophisticated emissions testing unavailable to consumers. Plaintiffs and Pennsylvania Class members did not and could not unravel Defendants' deception on their own.

2134.    Defendants violated the Pennsylvania UTPA by, at minimum, representing that Class Vehicles have characteristics, uses, benefits, and qualities that they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; and advertising the Class Vehicles with the intent not to sell or lease them as advertised.

2135.    Defendants intentionally and knowingly misrepresented material facts about the Class Vehicles with the intent to mislead Plaintiffs and the Pennsylvania Class.

2136.    Defendants knew or should have known that their conduct violated the Pennsylvania UTPA.

2137.    Defendants owed the Pennsylvania Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants: (a) possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised; (b) intentionally concealed the foregoing from regulators, Plaintiffs, and/or Class members; and/or (c) made incomplete representations about the Class Vehicles generally, and the use of different gear ratios in test vehicles, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

2138.     Defendants' fraudulent use of different gear ratios in test vehicles and its concealment of the true characteristics of the Class Vehicles' fuel consumption, $CO_2$ emissions, and performance were material to the Pennsylvania Class.

2139.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Pennsylvania Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the true power and performance that the Class Vehicles could obtain, the quality of the Defendants' brands, the devaluing of integrity and pride in one's products at Defendant companies, and the true value of the Class Vehicles.

2140.     Defendants' violations present a continuing risk to the Pennsylvania Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2141.     Pennsylvania Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Pennsylvania UTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

2142.     As a direct and proximate result of Defendants' violations of the Pennsylvania UTPA, the Pennsylvania Class members have suffered injury-in-fact and/or actual damage.

2143.     Pursuant to 73 P.S. § 201-9.2(a), the Pennsylvania Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Pennsylvania UTPA.

**PENNSYLVANIA COUNT II:**
**Breach of Express Warranty**
**13. Pa. Cons. Stat. §§ 2313 and 2A210**
**(On Behalf of the Pennsylvania State Class)**

2144.    Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

2145.    This claim is brought on behalf of the Pennsylvania State Class against all Defendants.

2146.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103(a), and "sellers" of motor vehicles under § 2103(a).

2147.    With respect to leases, Defendants are and were at all relevant times a "lessor[s]" of motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

2148.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

2149.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to cover "any repair to correct a manufacturers defect in materials or workmanship."

2150.    Defendants also made numerous representations, descriptions, and promises to Plaintiffs and Pennsylvania State Class members regarding the performance and emission controls of their vehicles.

2151.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

2152.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2153. The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for its vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

2154. The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2155. As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

2156. Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles that are equipped with gearing that does not match the test vehicles and overstated fuel economy.

2157. Despite the existence of warranties, Defendants failed to inform Pennsylvania State Class members that Defendants, through defeat devices and drivetrain manipulation, caused the Class Vehicles to emit more $CO_2$ and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and failed to fix the defective emission components free of charge. Furthermore, Defendants

failed to inform Pennsylvania Class members that replacement of gears to match what was disclosed to regulators will impair the sports car performance Defendants also promised.

2158.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

2159.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

2160.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Pennsylvania Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2161.    Accordingly, recovery by the Pennsylvania Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

2162.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Pennsylvania Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2163.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship, as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on the Pennsylvania State Class members' remedies would be insufficient to make them whole.

2164.    Finally, because of Defendants' breach of warranty as set forth herein, Pennsylvania Class members assert, as additional and/or alternative remedies, the revocation of

acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

2165.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2166.    As a direct and proximate result of Defendants' breach of express warranties, Pennsylvania Class members have been damaged in an amount to be determined at trial.

Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

**PENNSYLVANIA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**13. Pa. Cons. Stat. §§ 2314 and 2A212**
**(On Behalf of the Pennsylvania State Class)**

2167.    Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

2168.    This count is brought on behalf of the Pennsylvania State Class against all Defendants.

2169.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103(a), and "sellers" of motor vehicles under § 2103(a).

2170.    With respect to leases, Defendants are and were at all relevant times a "lessor[s]" of motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

2171.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

2172.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 13 Pa. Cons. Stat. §§ 2314 and 2A212.

2173.    These Class Vehicles, when sold or leased and at all times thereafter, differed materially from the vehicles Defendants submitted for emissions testing. The tested vehicles included manipulated hardware and software that led to inflated and misleading fuel economy and emissions rating, and did not comply with emissions regulations when being driven in Sport Plus mode. Class Vehicles were therefore not fit for the ordinary purpose for which vehicles are used.

2174.    Defendants were provided notice of these issues by Porsche's own internal investigations, the investigations of the Stuttgart Public Prosecutor's office and the German Federal Motor Transport Authority (KBA), and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2175.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Pennsylvania Class members have been damaged in an amount to be proven at trial.

**RHODE ISLAND COUNT I:**
**Violations of the Rhode Island Deceptive Trade Practices and**
**Consumer Protection Law**
**R.I. Gen. Laws § 6-13.1 et seq.**
**(On Behalf of the Rhode Island State Class)**

2176.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2177.    This count is brought on behalf of the Rhode Island State Class against all Defendants.

2178.    Defendants, the Rhode Island State Class are "persons" within the meaning of R.I. Gen. Laws § 6-13.1-1(3).

2179.    Defendants are engaged in "trade" or "commerce" within the meaning of R.I. Gen. Laws § 6-13.1-1(5).

2180.    The Rhode Island Deceptive Trade Practices Act ("Rhode Island DTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce" including: (v) [r]epresenting that goods or services have sponsorship, approval, characteristics,

ingredients, uses, benefits, or quantities that they do not have"; "(vii) [r]epresenting that goods or services are of a particular standard, quality, or grade . . ., if they are of another"; (ix) [a]dvertising goods or services with intent not to sell them as advertised"; "(xiii) [u]sing any other methods, acts or practices which mislead or deceive members of the public in a material respect." R.I. Gen. Laws § 6-13.1-1(6).

2181.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

2182.    Rhode Island State Class members had no way of discerning that Defendants' representations were false and misleading because Rhode Island State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

2183.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

2184.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Rhode Island State Class.

2185.    Defendants knew or should have known that their conduct violated the Rhode Island DTPA.

2186.    Defendants owed the Rhode Island State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

a.  possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

b.  intentionally concealed the foregoing from regulators and Rhode Island State Class members; and/or

c.  made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

2187.    Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the Rhode Island State Class.

2188.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Rhode Island State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

2189.    Defendants' violations present a continuing risk to the Rhode Island State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2190.    Rhode Island State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Rhode Island DTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

2191.    The Rhode Island State Class is entitled to recover the greater of actual damages or $200 pursuant to R.I. Gen. Laws § 6-13.1-5.2(a). The Rhode Island State Class is also entitled to punitive damages because Defendants engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights of others.

**RHODE ISLAND COUNT II:**
**Breach of Express Warranty**
**6A R.I. Gen. Laws §§ 6A-2-313 and 6A-2.1-210**
**(On Behalf of the Rhode Island State Class)**

2192.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

2193.    This count is brought on behalf of the Rhode Island State Class against all Defendants.

2194.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 6A R.I. Gen. Laws §§ 6A-2-104(1) and 6A-2.1-103(1)(t), and "sellers" of motor vehicles under § 6A-2-103(a)(4).

2195.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 6A R.I. Gen. Laws § 6A-2.1-103(1)(p).

2196.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 6A R.I. Gen. Laws §§ 6A-2-105(1) and 6A-2.1-103(1)(h).

2197.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2198.    Defendants also made numerous representations, descriptions, and promises to Rhode Island State Class members regarding the performance and emission controls of their vehicles.

2199.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

2200.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2201.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

2202.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2203.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

2204.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

2205.    Despite the existence of warranties, Defendants failed to inform Rhode Island State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what

was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

2206.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

2207.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

2208.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Rhode Island State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2209.    Accordingly, recovery by Rhode Island State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

2210.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Rhode Island State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2211.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Rhode Island State Class members' remedies would be insufficient to make them whole.

2212.    Finally, because of Defendants' breach of warranty as set forth herein, Rhode Island State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

2213.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2214.    As a direct and proximate result of Defendants' breach of express warranties, Rhode Island State Class members have been damaged in an amount to be determined at trial.

### RHODE ISLAND COUNT III:
**Breach of Implied Warranty of Merchantability**
**6A R.I. Gen. Laws §§ 6A-2-314 and 6A-2.1-212**
**(On Behalf of the Rhode Island State Class)**

2215.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2216.    This count is brought on behalf of the Rhode Island State Class against all Defendants.

2217.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 6A R.I. Gen. Laws §§ 6A-2-104(1) and 6A-2.1-103(1)(t), and "sellers" of motor vehicles under § 6A-2-103(a)(4).

2218.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 6A R.I. Gen. Laws § 6A-2.1-103(1)(p).

2219.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 6A R.I. Gen. Laws §§ 6A-2-105(1) and 6A-2.1-103(1)(h).

2220.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 6A R.I. Gen. Laws §§ 6A-2-314 and 6A-2.1-212.

2221.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

2222.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2223.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Rhode Island State Class members have been damaged in an amount to be proven at trial.

**SOUTH CAROLINA COUNT I:**
**Violations of the South Carolina Unfair Trade Practices Act**
**S.C. Code Ann. § 39-5-10 et seq.**
**(On Behalf of the South Carolina State Class)**

2224.    Plaintiffs re-allege and incorporate by reference each preceding paragraph as though fully set forth herein.

2225.    This count is brought on behalf of the South Carolina State Class against all Defendants.

2226.    Defendants and the South Carolina State Class are "persons" within the meaning of S.C. Code § 39-5-10(a).

2227.    Defendants are engaged in "trade" or "commerce" within the meaning of S.C. Code § 39-5-10(b).

2228.    The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code § 39-5-20(a).

2229.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles

for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

2230.    South Carolina State Class members had no way of discerning that Defendants' representations were false and misleading because South Carolina State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

2231.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

2232.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the South Carolina State Class.

2233.    Defendants knew or should have known that their conduct violated the South Carolina UTPA.

2234.    Defendants owed the South Carolina State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

b.    intentionally concealed the foregoing from regulators and South Carolina State Class members; and/or

c.  made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

2235.   Defendants' concealment of the Class Vehicles' true fuel consumption and emissions was material to the South Carolina State Class.

2236.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the South Carolina State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

2237.   Defendants' violations present a continuing risk to the South Carolina Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2238.   South Carolina State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the South Carolina UTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

2239.   Pursuant to S.C. Code § 39-5-140(a), the South Carolina State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, treble damages for willful and knowing violations, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the South Carolina UTPA.

**SOUTH CAROLINA COUNT II:**
**Violations of the South Carolina Regulation of Manufacturers,**
**Distributors, & Dealers Act**
**S.C. Code Ann. § 56-15-10 et seq.**
**(On Behalf of the South Carolina State Class)**

2240.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

1    2241.    This count is brought on behalf of the South Carolina State Class against all

2    Defendants.

3    2242.    Defendants are "manufacturer[s]" as set forth in S.C. Code Ann. § 56-15-10, as

4    it is engaged in the business of manufacturing or assembling new and unused motor vehicles.

5    2243.    Defendants committed unfair or deceptive acts or practices that violated the

6    South Carolina Regulation of Manufacturers, Distributors, and Dealers Act ("Dealers Act"),

7    S.C. Code Ann. § 56-15-30.

8    2244.    Defendants engaged in actions which were arbitrary, in bad faith,

9    unconscionable, and which caused damage to the South Carolina State Class and to the public.

10   2245.    Defendants' bad faith and unconscionable actions include, but are not limited to:

11   (1) representing that Class Vehicles have characteristics, uses, benefits, and qualities which they

12   do not have, (2) representing that Class Vehicles are of a particular standard, quality, and grade

13   when they are not, (3) advertising Class Vehicles with the intent not to sell them as advertised,

14   (4) representing that a transaction involving Class Vehicles confers or involves rights, remedies,

15   and obligations which it does not, and (5) representing that the subject of a transaction involving

16   Class Vehicles has been supplied in accordance with a previous representation when it has not.

17   2246.    Defendants resorted to and used false and misleading advertisements in

18   connection with their business. As alleged above, Defendants made numerous material

19   statements about the efficiency and reliability of the Class Vehicles that were either false or

20   misleading. Each of these statements contributed to the deceptive context of Defendants'

21   unlawful advertising and representations as a whole.

22   2247.    Pursuant to S.C. Code Ann. § 56-15-110(2), Plaintiffs bring this action on behalf

23   of themselves and the South Carolina State Class, as the action is one of common or general

24   interest to many persons and the parties are too numerous to bring them all before the court.

25   2248.    The South Carolina State Class is entitled to double their actual damages, the cost

26   of the suit, attorney's fees pursuant to S.C. Code Ann. § 56-15-110. Plaintiffs also seek

27   injunctive relief under S.C. Code Ann. § 56-15-110.

28

1
2
3

**SOUTH CAROLINA COUNT III:**
**Breach of Express Warranty**
**S.C. Code §§ 36-2-313 and 36-2A-210**
**(On Behalf of the South Carolina State Class)**

4    2249.    Plaintiffs re-allege and incorporate by reference all preceding allegations as
5    though fully set forth herein.

6    2250.    This count is brought on behalf of the South Carolina State Class against all
7    Defendants.

8    2251.    Defendants are and were at all relevant times "merchant[s]" with respect to motor
9    vehicles under S.C. Code §§ 36-2-104(1) and 36-2A-103(1)(t), and "sellers" of motor vehicles
10   under § 36-2-103(1)(d).

11   2252.    With respect to leases, Defendants are and were at all relevant times "lessors" of
12   motor vehicles under S.C. Code § 36-2A-103(1)(p).

13   2253.    The Class Vehicles are and were at all relevant times "goods" within the meaning
14   of S.C. Code §§ 36-2-105(1) and 36-2A-103(1)(h).

15   2254.    In connection with the purchase or lease of each one of its new vehicles,
16   Defendants provide an express warranty for a period of four years or 50,000 miles, whichever
17   occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed
18   during normal use."

19   2255.    Defendants also made numerous representations, descriptions, and promises to
20   South Carolina State Class members regarding the performance and emission controls of their
21   vehicles.

22   2256.    For example, Defendants included in the warranty booklets for some or all of the
23   Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at
24   the time of sale with all U.S. emission standards applicable at the time of manufacture, and that
25   it is free from defects in material and workmanship which would cause it not to meet those
26   standards."

27
28

2257.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2258.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

2259.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2260.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

2261.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

2262.    Despite the existence of warranties, Defendants failed to inform South Carolina State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what

1    was disclosed to regulators and represented to consumers who purchased or leased them, and

2    Defendants failed to fix the defective emission components free of charge.

3    2263.    Defendants breached the express warranty promising to repair and correct

4    Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted,

5    and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

6    2264.    Affording Defendants a reasonable opportunity to cure their breach of written

7    warranties would be unnecessary and futile here.

8    2265.    Furthermore, the limited warranty promising to repair and correct Defendants'

9    defect in materials and workmanship fails in its essential purpose because the contractual remedy

10   is insufficient to make South Carolina State Class members whole and because Defendants have

11   failed and/or have refused to adequately provide the promised remedies within a reasonable

12   time.

13   2266.    Accordingly, recovery by South Carolina State Class members is not restricted

14   to the limited warranty promising to repair and correct Defendants' defect in materials and

15   workmanship, and they seek all remedies as allowed by law.

16   2267.    Also, as alleged in more detail herein, at the time Defendants warranted and sold

17   or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and

18   did not conform to their warranties; further, Defendants had wrongfully and fraudulently

19   concealed material facts regarding the Class Vehicles. South Carolina State Class members were

20   therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

21   2268.    Moreover, many of the injuries flowing from the Class Vehicles cannot be

22   resolved through the limited remedy of repairing and correcting Defendants' defect in materials

23   and workmanship as many incidental and consequential damages have already been suffered

24   because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or

25   continued failure to provide such limited remedy within a reasonable time, and any limitation

26   on South Carolina State Class members' remedies would be insufficient to make them whole.

27

28

2269.    Finally, because of Defendants' breach of warranty as set forth herein, South Carolina State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

2270.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2271.    As a direct and proximate result of Defendants' breach of express warranties, South Carolina State Class members have been damaged in an amount to be determined at trial.

**SOUTH CAROLINA COUNT IV:**
**Breach of Implied Warranty of Merchantability**
**S.C. Code §§ 36-2-314 and 36-2A-212**
**(On Behalf of the South Carolina State Class)**

2272.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2273.    This count is brought on behalf of the South Carolina State Class against all Defendants.

2274.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under S.C. Code §§ 36-2-104(1) and 36-2A-103(1)(t), and "sellers" of motor vehicles under § 36-2-103(1)(d).

2275.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under S.C. Code § 36-2A-103(1)(p).

2276.    The Class Vehicles are and were at all relevant times "goods" within the meaning of S.C. Code §§ 36-2-105(1) and 36-2A-103(1)(h).

2277.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to S.C. Code §§ 36-2-314 and 36-2A-212.

2278.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

2279.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2280.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, South Carolina State Class members have been damaged in an amount to be proven at trial.

## SOUTH DAKOTA COUNT I:
### Violations of the South Dakota Deceptive Trade Practices and Consumer Protection Law
### S.D. Codified Laws § 37-24-6
### (On Behalf of the South Dakota State Class)

2281.    Plaintiffs re-allege incorporate by reference each preceding paragraph as though fully set forth herein.

2282.    This count is brought on behalf of the South Dakota State Class against all Defendants.

2283.    Defendants and the South Dakota State Class are "persons" within the meaning of S.D. Codified Laws § 37-24-1(8).

2284.    Defendants are engaged in "trade" or "commerce" within the meaning of S.D. Codified Laws § 37-24-1(13).

2285.    The South Dakota Deceptive Trade Practices and Consumer Protection ("South Dakota CPA") prohibits "deceptive acts or practices, which are defined to include "[k]nowingly and intentionally act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any

person has in fact been misled, deceived, or damaged thereby." S.D. Codified Laws § 37-24-6(1).

2286.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

2287.    South Dakota State Class members had no way of discerning that Defendants' representations were false and misleading because South Dakota State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

2288.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

2289.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the South Dakota State Class.

2290.    Defendants knew or should have known that their conduct violated the South Dakota CPA.

2291.    Defendants owed the South Dakota State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

        a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

b. intentionally concealed the foregoing from regulators and South Dakota State Class members; and/or

c. made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

2292. Defendants' concealment of the Class Vehicles' true fuel consumption and emissions were material to the South Dakota State Class.

2293. Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the South Dakota State Class, about the true environmental cleanliness and fuel efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

2294. Defendants' violations present a continuing risk to the South Dakota Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2295. South Dakota State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the South Dakota CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

2296. Pursuant to S.D. Codified Laws § 37-24-31, the South Dakota State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief to the extent available under the South Dakota CPA.

**SOUTH DAKOTA COUNT II:**
**Breach of Express Warranty**
**S.D. Codified Laws §§ 57A-2-313 and 57-2A-210**
**(On Behalf of the South Dakota State Class)**

2297.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

2298.    This count is brought on behalf of the South Dakota State Class against all Defendants.

2299.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under S.D. Codified Laws §§ 57A-104(1) and 57A-2A-103(1)(t), and "sellers" of motor vehicles under § 57A-104(1)(d).

2300.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under S.D. Codified Laws § 57A-2A-103(1)(p).

2301.    The Class Vehicles are and were at all relevant times "goods" within the meaning of S.D. Codified Laws §§ 57A-2-105(1) and 57A-2A-103(1)(h).

2302.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2303.    Defendants also made numerous representations, descriptions, and promises to South Dakota State Class members regarding the performance and emission controls of their vehicles.

2304.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

2305.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2306.     The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

2307.     The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2308.     As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

2309.     Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

2310.     Despite the existence of warranties, Defendants failed to inform South Dakota State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

2311.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

2312.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

2313.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make South Dakota State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2314.    Accordingly, recovery by the South Dakota State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

2315.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. South Dakota State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2316.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on South Dakota State Class members' remedies would be insufficient to make them whole.

2317.    Finally, because of Defendants' breach of warranty as set forth herein, South Dakota State Class members assert, as additional and/or alternative remedies, the revocation of

acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

2318.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2319.    As a direct and proximate result of Defendants' breach of express warranties, South Dakota State Class members have been damaged in an amount to be determined at trial.

### SOUTH DAKOTA COUNT III:
**Breach of Implied Warranty of Merchantability**
**S.D. Codified Laws §§ 57A-2-314 and 57-2A-212**
**(On Behalf of the South Dakota State Class)**

2320.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2321.    This count is brought on behalf of the South Dakota State Class against all Defendants.

2322.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under S.D. Codified Laws §§ 57A-104(1) and 57A-2A-103(1)(t), and "sellers" of motor vehicles under § 57A-104(1)(d).

2323.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under S.D. Codified Laws § 57A-2A-103(1)(p).

2324.    The Class Vehicles are and were at all relevant times "goods" within the meaning of S.D. Codified Laws §§ 57A-2-105(1) and 57A-2A-103(1)(h).

2325.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to S.D. Codified Laws §§ 57A-2-314 and 57A-2A-212.

2326.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply

with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

2327.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2328.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, South Dakota State Class members have been damaged in an amount to be proven at trial.

**TENNESSEE COUNT I:**
**Violations of the Tennessee Consumer Protection Act**
**Tenn. Code Ann. § 47-18-101 et seq.**
**(On Behalf of the Tennessee State Class)**

2329.    Plaintiffs re-allege and incorporate by reference each preceding paragraph as though fully set forth herein.

2330.    This count is brought on behalf of the Tennessee State Class against all Defendants.

2331.    Tennessee State Class members are "natural persons" and "consumers" within the meaning of Tenn. Code § 47-18-103(2). Defendants are "person[s]" within the meaning of Tenn. Code § 47-18-103(9).

2332.    Defendants are engaged in "trade" or "commerce" or "consumer transactions" within the meaning Tenn. Code § 47-18-103(9).

2333.    The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code § 47-18-104.

2334.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the

370
CLASS ACTION COMPLAINT

road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

2335.    Tennessee State Class members had no way of discerning that Defendants' representations were false and misleading because Tennessee State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

2336.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

2337.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Tennessee State Class.

2338.    Defendants knew or should have known that their conduct violated the Tennessee CPA.

2339.    Defendants owed the Tennessee State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

      a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

      b.    intentionally concealed the foregoing from regulators and Tennessee State Class members; and/or

      c.    made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

1    2340.    Defendants' concealment of the true characteristics of the Class Vehicles' fuel

2    consumption and emissions was material to the Tennessee State Class.

3    2341.    Defendants' unfair or deceptive acts or practices were likely to and did in fact

4    deceive regulators and reasonable consumers, including the Tennessee State Class, about the

5    true environmental cleanliness and efficiency of the Class Vehicles, the quality of the

6    Defendants' brands, and the true value of the Class Vehicles.

7    2342.    Defendants' violations present a continuing risk to the Tennessee State Class as

8    well as to the general public. Defendants' unlawful acts and practices complained of herein

9    affect the public interest.

10    2343.    Tennessee State Class members suffered ascertainable loss and actual damages

11    as a direct and proximate result of Defendants' misrepresentations and concealment of and

12    failure to disclose material information. Defendants had an ongoing duty to all their customers

13    to refrain from unfair and deceptive practices under the Tennessee CPA. All owners of Class

14    Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and

15    practices made in the course of Defendants' business.

16    2344.    Pursuant to Tenn. Code § 47-18-109, the Tennessee State Class seeks an order

17    enjoining Defendants' unfair and/or deceptive acts or practices, damages, treble damages for

18    willful and knowing violations, pursuant to § 47-18-109(a)(3), punitive damages, and attorneys'

19    fees, costs, and any other just and proper relief to the extent available under the Tennessee CPA.

20    **TENNESSEE COUNT II:**
**Breach of Express Warranty**
21    **Tenn. Code Ann. §§ 47-2-313 and 47-2A-210**
**(On Behalf of the Tennessee State Class)**
22

23    2345.    Plaintiffs re-allege and incorporate by reference all preceding allegations as

24    though fully set forth herein.

25    2346.    This count is brought on behalf of the Tennessee State Class against all

26    Defendants.

27

28

2347.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Tenn. Code §§ 47-2-104(1) and 47-2A-103(1)(t), and "sellers" of motor vehicles under § 47-2-103(1)(d).

2348.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Tenn. Code § 47-2A-103(1)(p).

2349.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Tenn. Code §§ 47-2-105(1) and 47-2A-103(1)(h).

2350.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2351.    Defendants also made numerous representations, descriptions, and promises to Tennessee State Class members regarding the performance and emission controls of their vehicles.

2352.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

2353.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2354.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty,

1    certain major emission control components are covered for the first eight years or 80,000 miles

2    (whichever comes first). These major emission control components subject to the longer

3    warranty include the catalytic converters, the electronic emission control unit, and the onboard

4    emission diagnostic device or computer.

5         2355.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties

6    with respect to their vehicles' emission systems. Thus, Defendants also provide an express

7    warranty for their vehicles through a Federal Emission Control System Defect Warranty. The

8    Design and Defect Warranty required by the EPA covers repair of emission control or emission

9    related parts, which fail to function or function improperly because of a defect in materials or

10   workmanship. This warranty provides protection for two years or 24,000 miles, whichever

11   comes first, or, for the major emission control components, for eight years or 80,000 miles,

12   whichever comes first.

13        2356.    As manufacturers of light-duty vehicles, Defendants were required to provide

14   these warranties to purchasers or lessees of Class Vehicles.

15        2357.    Defendants' warranties formed a basis of the bargain that was reached when

16   consumers purchased or leased Class Vehicles.

17        2358.    Despite the existence of warranties, Defendants failed to inform Tennessee State

18   Class members that the Class Vehicles were defective and intentionally designed and

19   manufactured to emit more pollution and achieve worse fuel economy on the road than what

20   was disclosed to regulators and represented to consumers who purchased or leased them, and

21   Defendants failed to fix the defective emission components free of charge.

22        2359.    Defendants breached the express warranty promising to repair and correct

23   Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted,

24   and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

25        2360.    Affording Defendants a reasonable opportunity to cure their breach of written

26   warranties would be unnecessary and futile here.

27

28

2361.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Tennessee State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2362.    Accordingly, recovery by Tennessee State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

2363.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Tennessee State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2364.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Tennessee State Class members' remedies would be insufficient to make them whole.

2365.    Finally, because of Defendants' breach of warranty as set forth herein, Tennessee State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

2366.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2367.     As a direct and proximate result of Defendants' breach of express warranties, Tennessee State Class members have been damaged in an amount to be determined at trial.

**TENNESSEE COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Tenn. Code Ann. §§ 47-2-314 and 47-2A-212**
**(On Behalf of the Tennessee State Class)**

2368.     Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2369.     This count is brought on behalf of the Tennessee State Class against all Defendants.

2370.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Tenn. Code §§ 47-2-104(1) and 47-2A-103(1)(t), and "sellers" of motor vehicles under § 47-2-103(1)(d).

2371.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Tenn. Code § 47-2A-103(1)(p).

2372.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Tenn. Code §§ 47-2-105(1) and 47-2A-103(1)(h).

2373.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Tenn. Code §§ 47-2-314 and 47-2A-212.

2374.     These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

2375.     Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2376.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Tennessee State Class members have been damaged in an amount to be proven at trial.

**TEXAS COUNT I:**
**Violations of the Deceptive Trade Practices Act**
**Tex. Bus. & Com. Code § 17.41 et seq.**
**(On Behalf of the Texas State Class)**

2377.     Plaintiffs re-allege and incorporate by reference each preceding paragraph as though fully set forth herein.

2378.     This count is brought on behalf of the Texas State Class against all Defendants.

2379.     The Texas State Class are individuals, partnerships or corporations with assets of less than $25 million (or are controlled by corporations or entities with less than $25 million in assets), see Tex. Bus. & Com. Code § 17.41, and are therefore "consumers" pursuant to Tex. Bus. & Com. Code § 17.45(4).Defendants are "person[s]" within the meaning of Tex. Bus. & Com. Code § 17.45(3).

2380.     Defendants engaged in "trade" or "commerce" or "consumer transactions" within the meaning Tex. Bus. & Com. Code § 17.46(a).

2381.     The Texas Deceptive Trade Practices – Consumer Protection Act ("Texas DTPA") prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a), and an "unconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code §§ 17.45(5) and 17.50(a)(3).

2382.     In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the

road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

2383.    Texas State Class members had no way of discerning that Defendants' representations were false and misleading because Texas State Class members did not have access to Defendants' missions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

2384.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

2385.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Texas State Class.

2386.    Defendants knew or should have known that their conduct violated the Texas DTPA.

2387.    Defendants owed the Texas State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

    a.  possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

    b.  intentionally concealed the foregoing from regulators and Texas State Class members; and/or

    c.  made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

2388.    Defendants' concealment of the true characteristics of the Class Vehicles' fuel consumption and CO2 emissions were material to the Texas State Class.

2389.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Texas State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

2390.    Defendants' violations present a continuing risk to the Texas State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2391.    Texas State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Texas DTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

2392.    Pursuant to Tex. Bus. & Com. Code § 17.50, the Texas State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, multiple damages for knowing and intentional violations, pursuant to § 17.50(b)(1), punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Texas DTPA.

2393.    Pursuant to Tex. Bus. & Com. Code Ann. § 17.505, Plaintiffs have or will timely provide a notice letter to Defendants. Notice has been previously been provided to Defendants arising out of the facts giving rise to these claims. Additionally, Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2394.    The Texas State Class seeks all damages and relief to which it is entitled.

**TEXAS COUNT II:**
**Breach of Express Warranty**
**Tex. Bus. & Com. Code §§ 2.313 and 2A.210**
**(On Behalf of the Texas State Class)**

2395.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

2396.    This count is brought on behalf of the Texas State Class against all Defendants.

2397.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Tex. Bus. & Com. Code §§ 2.104(1) and 2A.103(a)(20), and "sellers" of motor vehicles under § 2.103(a)(4).

2398.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Tex. Bus. & Com. Code § 2A.103(a)(16).

2399.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Tex. Bus. & Com. Code §§ 2.105(a) and 2A.103(a)(8).

2400.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2401.    Defendants also made numerous representations, descriptions, and promises to Texas State Class members regarding the performance and emission controls of their vehicles.

2402.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from efects in material and workmanship which would cause it not to meet those standards."

2403.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal mission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2404. The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

2405. The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2406. As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

2407. Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

2408. Despite the existence of warranties, Defendants failed to inform Texas State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

2409.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

2410.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

2411.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Texas State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2412.    Accordingly, recovery by Texas State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

2413.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Texas State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2414.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Texas State Class members' remedies would be insufficient to make them whole.

2415.    Finally, because of Defendants' breach of warranty as set forth herein, Texas State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

2416.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2417.    As a direct and proximate result of Defendants' breach of express warranties, Texas State Class members have been damaged in an amount to be determined at trial.

**TEXAS COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Tex. Bus. & Com. Code §§ 2.314 and 2A.212 (On Behalf of the Texas State Class)**

2418.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2419.    This count is brought on behalf of the Texas State Class against all Defendants.

2420.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Tex. Bus. & Com. Code §§ 2.104(1) and 2A.103(a)(20), and "sellers" of motor vehicles under § 2.103(a)(4).

2421.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Tex. Bus. & Com. Code § 2A.103(a)(16).

2422.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Tex. Bus. & Com. Code §§ 2.105(a) and 2A.103(a)(8).

2423.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Tex. Bus. & Com. Code §§ 2.314 and 2A.212.

2424.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

2425.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2426.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Texas State Class members have been damaged in an amount to be proven at trial.

**UTAH COUNT I:**
**Violations of the Utah Consumer Sales Practices Act**
**Utah Code Ann. § 13-11-1 et seq.**
**(On Behalf of the Utah State Class)**

2427.    Plaintiffs re-allege and incorporate by reference each preceding paragraph as though fully set forth herein.

2428.    Plaintiffs bring this claim on behalf of himself and the Utah State Class against all Defendants.

2429.    Plaintiffs and Utah State Class members are "persons" under the Utah Consumer Sales Practices Act ("Utah CSPA"), Utah Code § 13-11-3(5). The sales and leases of the Class Vehicles to The Utah State Class members were "consumer transactions" within the meaning of Utah Code § 13-11-3(2).

2430.    Defendants are "supplier[s]" within the meaning of Utah Code § 13-11-3(6).

2431.    The Utah CSPA makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction." Specifically, "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally: (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" or "(b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not." Utah Code § 13-11-4. "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA. Utah Code § 13-11-5.

2432.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles

for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

2433.    The Utah State Class members had no way of discerning that Defendants' representations were false and misleading because the Utah State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

2434.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

2435.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Utah State Class.

2436.    Defendants knew or should have known that their conduct violated the Utah CSPA.

2437.    Defendants owed the Utah State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

    a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

    b.    intentionally concealed the foregoing from regulators, Plaintiffs and Utah State Class members; and/or

c.   made incomplete representations about the Class Vehicles' fuel economy and emissions, while purposefully withholding material facts from Plaintiffs and Utah State Class members that contradicted these representations.

2438.    Defendants' concealment of the true characteristics of the Class Vehicles' true fuel consumption and emissions was material to the Utah State Class.

2439.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Utah State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

2440.    Defendants' violations present a continuing risk to Plaintiff, Utah State Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2441.    Utah State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Utah CSPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

2442.    Pursuant to Utah Code Ann. § 13-11-4, Plaintiffs and the Utah State Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $2,000 for each Utah State Class member, reasonable attorneys' fees, and any other just and proper relief available under the Utah CSPA.

**UTAH COUNT II:**
**Breach of Express Warranty**
**Utah Code §§ 70A-2-313 and 70-2A-210**
**(On Behalf of the Utah State Class)**

2443.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

2444.    Plaintiffs bring this claim on behalf of the Utah State Class against all Defendants.

2445.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Utah Code § 70A-2-104(1) and 70A-2a-103(1)(t), and "sellers" of motor vehicles under § 70A-2-103(1)(d).

2446.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Utah Code § 70A-2a-103(1)(p).

2447.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Utah Code §§ 70A-2-105(1) and 70A-2a-103(1)(h).

2448.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2449.    Defendants also made numerous representations, descriptions, and promises Utah State Class members regarding the performance and emission controls of their vehicles.

2450.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

2451.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2452.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty

for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

2453.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2454.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

2455.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

2456.    Despite the existence of warranties, Defendants failed to inform the Utah State Class members that the Class Vehicles were intentionally designed and manufactured to emit more emissions and achieve worse fuel and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and failed to fix the defective emission components free of charge.

2457.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

2458.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

2459.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and Utah State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2460.    Accordingly, recovery by Plaintiffs and Utah State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

2461.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Plaintiffs and Utah State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2462.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and Utah State Class members' remedies would be insufficient to make them whole.

2463.    Finally, because of Defendants' breach of warranty as set forth herein, Plaintiffs and Utah State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

2464.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2465.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and Utah State Class members have been damaged in an amount to be determined at trial.

**UTAH COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Utah Code §§ 70A-2-314 and 70-2A-212**
**(On Behalf of the Utah State Class)**

2466.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2467.    Plaintiffs brings this claim on behalf of himself and the Utah State Class against all Defendants.

2468.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Utah Code §§ 70A-2-104(1) and 70A-2a-103(1)(t), and "sellers" of motor vehicles under § 70A-2-103(1)(d).

2469.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Utah Code § 70A-2a-103(1)(p).

2470.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Utah Code §§ 70A-2-105(1) and 70A-2a-103(1)(h).

2471.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Utah Code §§ 70A-2-314 and 70A-2a-212.

2472.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply

with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

2473.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2474.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Utah State Class members have been damaged in an amount to be proven at trial.

**VERMONT COUNT I:**
**Violations of the Vermont Consumer Fraud Act**
**Vt. Stat. Ann. Tit. 9, § 2451 et seq.**
**(On Behalf of the Vermont State Class)**

2475.    Plaintiffs re-allege and incorporate by reference each preceding paragraph as though fully set forth herein.

2476.    This count is brought on behalf of the Vermont State Class against all Defendants.

2477.    The Vermont State Class are "consumers" within the meaning of Vt. Stat. Tit. 9, § 451a(a).

2478.    Defendants are "person[s]" within the meaning of Vt. Code R. § 100(3) (citing Vt. Stat. Tit. 9, § 2453).

2479.    Defendants are engaged in "commerce" within the meaning of Vt. Stat. Tit. 9, § 2453(a).

2480.    The Vermont Consumer Protection Act ("Vermont CPA") prohibits "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce" Vt. Stat. Tit. 9, § 2453(a).

2481.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the

road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

2482.    Vermont State Class members had no way of discerning that Defendants' representations were false and misleading because Vermont State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

2483.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

2484.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Vermont State Class.

2485.    Defendants knew or should have known that their conduct violated the Vermont UTPA.

2486.    Defendants owed the Vermont State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

      a.  possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

      b.  intentionally concealed the foregoing from regulators and Vermont State Class members; and/or

      c.  made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

2487.     Defendants' concealment of the true characteristics of the Class Vehicles' fuel consumption and emissions was material to the Vermont State Class.

2488.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Vermont State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

2489.     Defendants' violations present a continuing risk to the Vermont State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2490.     Vermont State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Vermont UTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

2491.     Pursuant to Vt. Stat. Tit. 9, § 2461(b), the Vermont State Class seeks an order enjoining defendants' unfair and/or deceptive acts or practices, actual damages, damages up to three times the consideration provided, punitive damages, attorneys' fees, costs, and any other just and proper relief available under the Vermont UTPA.

**VERMONT COUNT II:**
**Vermont Lemon Law**
**Vt. Stat. Tit. 9, § 4170 et seq.**
**(On Behalf of the Vermont State Class)**

2492.     Plaintiffs re-allege incorporate by reference each preceding paragraph as though fully set forth herein.

2493.     This count is brought on behalf of the Vermont State Class against all Defendants.

2494.    The Vermont State Class own or lease "motor vehicles" within the meaning of Vt. Stat. tit. 9, § 4171(6), because these vehicles were purchased, leased, or registered in Vermont by Defendants and were registered in Vermont within 15 days of the date of purchase or lease. These vehicles are not: (1) tractors, (2) motorized highway building equipment, (3) roadmaking appliances, (4) snowmobiles, (5) motorcycles, (5) mopeds, (6) the living portion of recreation vehicles, or (7) trucks with a gross vehicle weight over 10,000 pounds.

2495.    Defendants are "manufacturer[s]" of the Class Vehicles within the meaning of Vt. Stat. Tit. 9, § 4171(7) because it manufactures and assembles new motor vehicles or imports for distribution through distributors of motor vehicles. It is also a "manufacturer" within the definition of "distributor" and "factory branch." Id.

2496.    The Vermont State Class are "consumers" within the meaning of Vt. Stat. Tit. 9, § 4171(2) because they bought or leased the Class Vehicles, were transferred their vehicles during the duration the applicable warranty, or are otherwise entitled to the attendant terms of warranty.

2497.    They are not governmental entities or a business or commercial enterprise that registers or leases three or more motor vehicles.

2498.    The Class Vehicles did not conform to their express warranties during the term of warranty because they were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode.

2499.    Defendants had actual knowledge of the conformities during the term of warranty.

2500.    But the nonconformities continued to exist throughout this term, as they have not been fixed. Vermont State Class members are excused from notifying Defendants of the nonconformities because it was already fully aware of the problem—as it intentionally created it—and any repair attempt is futile.

2501.    Defendants have had a reasonable opportunity to cure the nonconformities during the relevant period because of its actual knowledge of, creation of, and attempt to conceal the nonconformities, but has not done so as required under Vt. Stat. Tit. 9, § 4173.

2502.    For vehicles purchased, the Vermont State Class demands a full refund of the contract price and all credits and allowances for any trade-in or down payment, license fees, finance charges, credit charges, registration fees and any similar charges and incidental and consequential damages. Vt. Stat. Tit. 9, § 4173(e). For vehicles leased, the Vermont State Class demands the aggregate deposit and rental payments previously paid, and any incidental and consequential damages incurred. Vt. Stat. Tit. 9, § 4173(e), (i). The Vermont State Class rejects an offer of replacement and will retain their vehicles until payment is tendered.

**VERMONT COUNT III:**
**Breach of Express Warranty**
**Vt. Stat. Tit. 9, §§ 2-313 and 2A-210**
**(On Behalf of the Vermont State Class)**

2503.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

2504.    This count is brought on behalf of the Vermont State Class against all Defendants.

2505.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Vt. Stat. Tit. 9A, §§ 2-104(1) and 2A-103(1)(t), and "sellers" of motor vehicles under § 203(1)(d).

2506.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Vt. Stat. Tit. 9A, § 2A-103(1)(p).

2507.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Vt. Stat. Tit. A, §§ 2-105(1) and 2A-103(1)(h).

2508.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2509.    Defendants also made numerous representations, descriptions, and promises to Vermont State Class members regarding the performance and emission controls of their vehicles.

2510.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

2511.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2512.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first).

2513.    These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

2514.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever

comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2515.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

2516.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

2517.    Despite the existence of warranties, Defendants failed to inform Vermont State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

2518.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

2519.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

2520.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Vermont State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2521.    Accordingly, recovery by Vermont State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

2522.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently

concealed material facts regarding the Class Vehicles. Vermont State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2523.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Vermont State Class members' remedies would be insufficient to make them whole.

2524.    Finally, because of Defendants' breach of warranty as set forth herein, Vermont State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

2525.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2526.    As a direct and proximate result of Defendants' breach of express warranties, Vermont State Class members have been damaged in an amount to be determined at trial.

**VERMONT COUNT IV:**
**Breach of Implied Warranty of Merchantability**
**Vt. Stat. Tit. 9, §§ 2-314 and 2A-212**
**(On Behalf of the Vermont State Class)**

2527.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2528.    This count is brought on behalf of the Vermont State Class against all Defendants.

2529.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Vt. Stat. Tit. 9A, § 2-104(1) and 2A-103(1)(t), and "sellers" of motor vehicles under § 2-103(1)(d).

2530.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Vt. Stat. Tit. 9A, § 2A-103(1)(p).

2531.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Vt. Stat. Tit. 9A, §§ 2-105(1) and 2A-103(1)(h).

2532.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Vt. Stat. Tit. 9A, §§ 2-314 and 2A-212.

2533.     These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

2534.     Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2535.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Vermont State Class members have been damaged in an amount to be proven at trial.

**VIRGINIA COUNT I:**
**Violations of the Virginia Consumer Protection Act**
**Va. Code Ann. § 59.1-196 et seq.**
**(On Behalf of the Virginia State Class)**

2536.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2537.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2538.     This count is brought on behalf of the Virginia State Class against all Defendants.

2539.     Defendants and the Virginia State Class are "persons" within the meaning of Va. Code § 59.1-198.

2540.    Defendants are "supplier[s]" within the meaning of Va. Code § 59.1-198.

2541.    The Virginia Consumer Protection Act ("Virginia CPA") makes unlawful "fraudulent acts or practices." Va. Code § 59.1-200(A).

2542.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

2543.    Virginia State Class members had no way of discerning that Defendants' representations were false and misleading because Virginia State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

2544.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

2545.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Virginia State Class.

2546.    Defendants knew or should have known that their conduct violated the Virginia CPA.

2547.    Defendants owed the Virginia State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

a.  possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

b.  intentionally concealed the foregoing from regulators and Virginia State Class members; and/or

c.  made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

2548.    Defendants' concealment of the true characteristics of the Class Vehicles' fuel consumption and emissions were material to the Virginia State Class.

2549.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Virginia State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

2550.    Defendants' violations present a continuing risk to the Virginia State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2551.    Virginia State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Virginia CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

2552.    Pursuant to Va. Code § 59.1-204(A)–(B), the Virginia State Class is entitled to the greater of actual damages or $500 for each Virginia State Class member, attorneys' fees, and costs. Because Defendants' actions were willful, Virginia State Class members should each receive the greater of treble damages or $1,000. *Id.*

CLASS ACTION COMPLAINT

**VIRGINIA COUNT II:**
**Breach of Express Warranty**
**Va. Code §§ 8.2-313 and 8.2A-210**
**(On Behalf of the Virginia State Class)**

2553.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

2554.    This count is brought on behalf of the Virginia State Class against all Defendants.

2555.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Va. Code §§ 8.2-104(1) and 8.2A-103(1)(t), and "sellers" of motor vehicles under § 8.2-103(1)(d).

2556.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Va. Code § 8.2A-103(1)(p).

2557.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Va. Code §§ 8.2-105(1) and 8.2A-103(1)(h).

2558.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2559.    Defendants also made numerous representations, descriptions, and promises to Virginia State Class members regarding the performance and emission controls of their vehicles.

2560.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

2561.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2562.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

2563.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2564.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

2565.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

2566.    Despite the existence of warranties, Defendants failed to inform Virginia State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

2567.      Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

2568.      Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

2569.      Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Virginia State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2570.      Accordingly, recovery by the Virginia State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

2571.      Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Virginia State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2572.      Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Virginia State Class members' remedies would be insufficient to make them whole.

2573.      Finally, because of Defendants' breach of warranty as set forth herein, Virginia State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

CLASS ACTION COMPLAINT

2574.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2575.    As a direct and proximate result of Defendants' breach of express warranties, Virginia State Class members have been damaged in an amount to be determined at trial.

**VIRGINIA COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Va. Code §§ 8.2-314 and 8.2A-212**
**(On Behalf of the Virginia State Class)**

2576.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2577.    This count is brought on behalf of the Virginia State Class against all Defendants.

2578.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Va. Code §§ 8.2-104(1) and 8.2A-103(1)(t), and "sellers" of motor vehicles under § 8.2-103(1)(d).

2579.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Va. Code § 8.2A-103(1)(p).

2580.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Va. Code §§ 8.2-105(1) and 8.2A-103(1)(h).

2581.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Va. Code §§ 8.2-3and 8.2A-212.

2582.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

2583.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2584.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Virginia State Class members have been damaged in an amount to be proven at trial.

**WASHINGTON STATE COUNT I:**
**Violations of the Washington Consumer Protection Act**
**Wash. Rev. Code Ann. § 19.86.010 et seq.**
**(On Behalf of the Washington State Class)**

2585.    Plaintiffs re-allege and incorporate by reference each preceding paragraph as though fully set forth herein.

2586.    This count is brought on behalf of the Washington State Class against all Defendants.

2587.    Defendants and the Washington State Class are "persons" within the meaning of Wash. Rev. Code § 19.86.010(2).

2588.    Defendants engaged in "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010(2).

2589.    The Washington Consumer Protection Act ("Washington CPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

2590.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

2591.    Washington State Class members had no way of discerning that Defendants' representations were false and misleading because Washington State Class members did not

have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

2592.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

2593.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Washington State Class.

2594.    Defendants knew or should have known that their conduct violated the Washington CPA.

2595.    Defendants owed the Washington State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

    a.  possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

    b.  intentionally concealed the foregoing from regulators and Washington State Class members; and/or

    c.  made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

2596.    Defendants' concealment of the Class Vehicles' true fuel consumption and emissions were material to the Washington State Class.

2597.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the Washington State Class, about the

true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

2598.     Defendants' violations present a continuing risk to the Washington State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2599.     Washington State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Washington CPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

2600.     Pursuant to Wash. Rev. Code § 19.86.090, the Washington State Class seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Washington CPA.

2601.     Because Defendants' actions were willful and knowing, Washington State Class members' damages should be trebled.

**WASHINGTON STATE COUNT II:**
**Washington Lemon Law**
**Wash. Rev. Code § 19.118.005 et seq.**
**(On Behalf of the Washington State Class)**

2602.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

2603.     This count is brought on behalf of the Washington State Class against all Defendants.

2604.     The Washington State Class own or lease "new motor vehicles" within the meaning of Wash. Rev. Code § 19.118.021(12), because these vehicles are self-propelled primarily designed for the transportation of persons or property over the public highways and

were originally purchased or leased at retail from a new motor vehicle dealer or leasing company in Washington. These vehicles do not include vehicles purchased or leased by a business as part of a fleet of ten or more vehicles at one time or under a single purchase or lease agreement or those portions of a motor home designated, used, or maintained primarily as a mobile dwelling, office, or commercial space.

2605.    Defendants are "manufacturer[s]" of the Class Vehicles within the meaning of Wash. Rev. Code § 19.118.021(8) because it is in the business of constructing or assembling new motor vehicles or is engaged in the business of importing new motor vehicles into the United States for the purpose of selling or distributing new motor vehicles to new motor vehicle dealers.

2606.    The Washington State Class are "consumers" within the meaning of Wash. Rev. Code § 19.118.021(4) because they entered into an agreement or contract for the transfer, lease, or purchase of a new motor vehicle, other than for purposes of resale or sublease, during the eligibility period as defined by Wash. Rev. Code § 19.118.021(6).

2607.    The Class Vehicles did not conform to their warranties as defined by Wash. Rev. Code § 19.118.021(22), during the "eligibility period," defined by Wash. Rev. Code § 19.118.021(6), or the coverage period under the applicable written warranty because they contained, among other defects described herein, a software program designed to circumvent state and federal emissions standards and inflate the fuel economy thereon. Wash. Rev. Code § 19.118.031. This program did in fact circumvent emissions standards and overstate fuel economy and substantially impaired the use and market value of their motor vehicles.

2608.    Defendants had actual knowledge of the conformities during warranty periods. But the nonconformities continued to exist throughout this term, as they have not been fixed.

2609.    Washington State Class members are excused from notifying Defendants of the nonconformities because it was already fully aware of the problem—as it intentionally created it—and any repair attempt is futile.

2610.    Defendants have had a reasonable opportunity to cure the nonconformities because of its actual knowledge of, creation of, and attempt to conceal the nonconformities, but has not done so as required under Wash. Rev. Code § 19.118.031.

2611.    For vehicles purchased, the Washington State Class demands a full refund of the contract price, all collateral charges, and incidental costs. Wash. Rev. Code § 19.118.041(1)(b). For vehicles leased, the Washington State Class demands all payments made under the lease including but not limited to all lease payments, trade-in value or inception payment, security deposit, and all collateral charges and incidental costs. The consumer is also relieved of any future obligation to the lessor or lienholder. The Washington State Class rejects an offer of replacement and will retain their vehicles until payment is tendered.

### WASHINGTON STATE COUNT III:
#### Breach of Express Warranty
#### Wash Rev. Code §§ 62A.2-313 and 62A.2A-2
#### (On Behalf of the Washington State Class)

2612.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

2613.    This count is brought on behalf of the Washington State Class against all Defendants.

2614.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Wash. Rev. Code §§ 62A.2-104(1) and 62A.2A-103(1)(t), and "sellers" of motor vehicles under § 2.103(a)(4).

2615.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Wash. Rev. Code § 62A.2A-103(1)(p).

2616.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Wash. Rev. Code §§ 62A.2-105(1) and 62A.2A-103(1)(h).

2617.     In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2618.     Defendants also made numerous representations, descriptions, and promises to Washington State Class members regarding the performance and emission controls of their vehicles.

2619.     For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

2620.     The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2621.     The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

2622.     The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The

Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2623. As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

2624. Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

2625. Despite the existence of warranties, Defendants failed to inform Washington State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

2626. Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

2627. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

2628. Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Washington State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2629. Accordingly, recovery by the Washington State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

2630.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Washington State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2631.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Washington State Class members' remedies would be insufficient to make them whole.

2632.    Finally, because of Defendants' breach of warranty as set forth herein, Washington State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

2633.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2634.    As a direct and proximate result of Defendants' breach of express warranties, Washington State Class members have been damaged in an amount to be determined at trial.

**WASHINGTON STATE COUNT IV:**
**Breach of Implied Warranty of Merchantability**
**Wash Rev. Code §§ 62A.2-314 and 62A.2A-2**
**(On Behalf of the Washington State Class)**

2635.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2636.    This count is brought on behalf of the Washington State Class against all Defendants.

2637.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Wash. Rev. Code § 62A.2-104(1) and 62A.2A-103(1)(t), and "sellers" of motor vehicles under § 2.103(a)(4).

2638.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Wash. Rev. Code § 62A.2A-103(1)(p).

2639.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Wash. Rev. Code §§ 62A.2-105(1) and 62A.2A-103(1)(h).

2640.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Wash. Rev. Code §§ 62A.2-314 and 62A.2A-212.

2641.    These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

2642.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2643.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Washington State Class members have been damaged in an amount to be proven at trial.

**WEST VIRGINIA COUNT I:**
**Violations of the West Virginia Consumer Credit and Protection Act**
**W. Va. Code § 46A-1-101 et seq.**
**(On Behalf of the West Virginia State Class)**

2644.    Plaintiffs re-allege and incorporate by reference each preceding paragraph as though fully set forth herein.

2645.    This count is brought on behalf of the West Virginia State Class against all Defendants.

2646.    Defendants and the West Virginia State Class are "persons" within the meaning of W. Va. Code § 46A-1-102(31). West Virginia State Class members are "consumers" within the meaning of W. Va. Code §§ 46A-1-102(2) and 46A-1-102(12).

2647.    Defendants are engaged in "trade" or "commerce" within the meaning of W. Va. Code § 46A-6-102(6).

2648.    The West Virginia Consumer Credit and Protection Act ("West Virginia CCPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." W. Va. Code § 46A-6-104.

2649.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

2650.    West Virginia State Class members had no way of discerning that Defendants' representations were false and misleading because the West Virginia State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

2651.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the

subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

2652.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the West Virginia State Class.

2653.    Defendants knew or should have known that their conduct violated the West Virginia CCPA.

2654.    Defendants owed the West Virginia State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

    a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

    b.    intentionally concealed the foregoing from regulators and West Virginia State Class members; and/or

    c.    made incomplete representations about the Class Vehicles' fuel economy and emissions while purposefully withholding material facts that contradicted these representations.

2655.    Defendants' concealment of the true characteristics of the Class Vehicles' true fuel consumption and emissions were material to the West Virginia State Class.

2656.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including the West Virginia State Class, about the true environmental cleanliness and efficiency of the Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

2657.    Defendants' violations present a continuing risk to the West Virginia State Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2658.    West Virginia State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of

1    and failure to disclose material information. Defendants had an ongoing duty to all their

2    customers to refrain from unfair and deceptive practices under the West Virginia CCPA. All

3    owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and

4    unfair acts and practices made in the course of Defendants' business.

5         2659.     Pursuant to W. Va. Code § 46A-6-106(a), the West Virginia State Class seeks an

6    order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive

7    damages, and any other just and proper relief available under the West Virginia CCPA.

8         2660.     Pursuant to W. Va. Code § 46A-6-106(b), Plaintiffs have or will timely provide

9    a notice letter to Defendants. Notice has been previously been provided to Defendants arising

10   out of the facts giving rise to these claims. Additionally, Defendants were provided notice of

11   these issues by the investigations of governmental regulators, and numerous complaints filed

12   against it including the instant complaint, within a reasonable amount of time. The West Virginia

13   State Class seeks all damages and relief to which it is entitled.

**WEST VIRGINIA COUNT II:**
**West Virginia Lemon Law**
**1W. Va. Code § 46A-6A-1 et seq.**
**(On Behalf of the West Virginia State Class)**

17   2661.     Plaintiffs re-allege and incorporate by reference all paragraphs as though fully

18   set forth herein.

19   2662.     This count is brought on behalf of the West Virginia State Class against all

20   Defendants.

21   2663.     West Virginia State Class members who purchased or leased the Class Vehicles

22   in West Virginia are "consumers" within the meaning of W. Va. Code § 46A-6A-2(1).

23   2664.     Defendants are "manufacturer[s]" of the Class Vehicles within the meaning of

24   W. Va. Code § 46A-6A-2(2).

25   2665.     The Class Vehicles are "motor vehicles" as defined by W. Va. Code § 46A-6A-

26   2(4).

27

28

2666.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2667.    Defendants also made numerous representations, descriptions, and promises to West Virginia State Class members regarding the performance and emission controls of their vehicles.

2668.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

2669.    The Clean Air Act requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2670.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emissions systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emissions control unit (ECU), and the onboard emissions diagnostic device or computer.

2671.    The EPA requires vehicle manufacturers to issue Defect Warranties with respect to their vehicles' emissions systems. Thus, Defendants also provide an express warranty to its vehicles through a Federal Emissions Control System Defect Warranty. The Design and Defect

Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emissions control components, for eight years or 80,000 miles, whichever comes first.

2672.    As a manufacturer of light-duty vehicles, Defendants were required to provide these warranties to West Virginia State Class members. Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

2673.    The emissions defects in the Class Vehicles existed from the date of the original sale of the new vehicle to the consumer but could not be detected by a reasonable consumer exercising reasonable care and diligence. Therefore, applicable express warranties for the Class Vehicles containing the defects described herein would be extended. Further extension of the express warranty period is now required because of the difficulties the Defendants may have in executing a massive recall Class Vehicles in the United States.

2674.    Pursuant to W.Va. Code §§ 46A-6A-3(a) and 5(c), Plaintiffs have or will timely provide a notice letter to Defendants. Notice has been previously been provided to Defendants arising out of the facts giving rise to these claims. Additionally, Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2675.    As a direct and proximate result of the Defendants' breaches of their duties under West Virginia's Lemon Law, West Virginia State Class members received goods whose defect substantially impairs their value. The West Virginia State Class has been damaged by the diminished market value of the vehicles along with the compromised functioning and/or non-use of their Class Vehicles.

2676.    Defendants have a duty under § 46A-6A-3 to make all repairs necessary to correct the defect herein described to bring the Class Vehicles into conformity with all written warranties. In the event that Defendants cannot affect such repairs, they have a duty to replace each Class Vehicle with a comparable new motor vehicle that conforms to the warranty.

2677.     As a result of Defendants' breaches, the West Virginia State Class are entitled to the following:

    a.  Revocation of acceptance and refund of the purchase price, including, but not limited to, sales tax, license and registration fees, and other reasonable expenses incurred for the purchase of the new motor vehicle, or if there be no such revocation of acceptance, damages for diminished value of the motor vehicle;

    b.  Damages for the cost of repairs reasonably required to conform the motor vehicle to the express warranty;

    c.  Damages for the loss of use, annoyance or inconvenience resulting from the nonconformity, including, but not limited to, reasonable expenses incurred for replacement transportation during any period when the vehicle is out of service by reason of the nonconformity or by reason of repair; and

    d.  Reasonable attorney fees.

**WEST VIRGINIA COUNT III:**
**Breach of Express Warranty**
**W. Va. Code §§ 46-2-313 and 46-2A-2**
**(On Behalf of the West Virginia State Class)**

2678.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

2679.     This count is brought on behalf of the West Virginia State Class against all Defendants.

2680.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under W. Va. Code § 46-2-104(1) and 46-2A-103(1)(t), and "sellers" of motor vehicles under § 46-2-103(1)(d).

2681.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under W. Va. Code § 46-2A-103(1)(p).

2682.     The Class Vehicles are and were at all relevant times "goods" within the meaning of W. Va. Code §§ 46-2-105(1) and 46-2A-103(1)(h).

2683.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2684.    Defendants also made numerous representations, descriptions, and promises to West Virginia State Class members regarding the performance and emission controls of their vehicles.

2685.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

2686.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2687.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

2688.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The

Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2689.     As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

2690.     Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

2691.     Despite the existence of warranties, Defendants failed to inform West Virginia State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

2692.     Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

2693.     Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

2694.     Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make West Virginia State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2695.     Accordingly, recovery by West Virginia State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

2696.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. West Virginia State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2697.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on West Virginia State Class members' remedies would be insufficient to make them whole.

2698.    Finally, because of Defendants' breach of warranty as set forth herein, West Virginia State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

2699.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2700.    As a direct and proximate result of Defendants' breach of express warranties, West Virginia State Class members have been damaged in an amount to be determined at trial.

**WEST VIRGINIA COUNT IV:**
**Breach of Implied Warranty of Merchantability**
**1W. Va. Code §§ 46-2-314 and 46-2A-2**
**(On Behalf of the West Virginia State Class)**

2701.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2702.    This count is brought on behalf of the West Virginia State Class against all Defendants.

2703.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under W. Va. Code §§ 46-2-104(1) and 46-2A-103(1)(t), and "sellers" of motor vehicles under § 46-2-103(1)(d).

2704.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under W. Va. Code § 46-2A-103(1)(p).

2705.     The Class Vehicles are and were at all relevant times "goods" within the meaning of W. Va. Code §§ 46-2-105(1) and 46-2A-103(1)(h).

2706.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to W. Va. Code §§ 46-2-314 and 46-2A-212.

2707.     These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

2708.     Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2709.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, West Virginia State Class members have been damaged in an amount to be proven at trial.

**WISCONSIN COUNT I:**
**Violations of the Wisconsin Deceptive Trade Practices Act**
**Wis. Stat. § 100.18 et seq.**
**(On Behalf of the Wisconsin State Class)**

2710.     Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

2711.    This count is brought on behalf of the Wisconsin State Class against all Defendants.

2712.    Wisconsin State Class members are "persons" and members of "the public" under the Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA"), Wis. Stat. § 100.18(1). Wisconsin State Class members purchased or leased one or more Class Vehicles.

2713.    Defendants are "person[s], firm[s], corporation[s] or association[s]" within the meaning of Wis. Stat. § 100.18(1).

2714.    The Wisconsin DTPA makes unlawful any "representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1).

2715.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

2716.    Wisconsin State Class members had no way of discerning that Defendants' representations were false and misleading because Wisconsin State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

2717.    Defendants thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

2718.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Wisconsin State Class.

1    2719.    Defendants knew or should have known that their conduct violated the Wisconsin

2    DTPA.

3    2720.    Defendants owed the Wisconsin State Class a duty to disclose the illegality and

4    public health risks, the true nature of the Class Vehicles, because Defendants:

5    a.    possessed exclusive knowledge that they were manufacturing, selling, and

6    distributing vehicles throughout the United States that did not perform as

7    advertised;

8    b.    intentionally concealed the foregoing from regulators and Wisconsin State Class

9    members; and/or

10    c.    made incomplete representations about the Class Vehicles' fuel economy and

11    emissions while purposefully withholding material facts that contradicted these

12    representations.

13    2721.    Defendants' concealment of the true characteristics of the Class Vehicles' true

14    fuel consumption and emissions were material to the Wisconsin State Class.

15    2722.    Defendants' unfair or deceptive acts or practices were likely to and did in fact

16    deceive regulators and reasonable consumers, including the Wisconsin State Class, about the

17    true environmental cleanliness and efficiency of the Class Vehicles, the quality of the

18    Defendants' brands, and the true value of the Class Vehicles.

19    2723.    Defendants' violations present a continuing risk to the Wisconsin State Class as

20    well as to the general public. Defendants' unlawful acts and practices complained of herein

21    affect the public interest.

22    2724.    Wisconsin State Class members suffered ascertainable loss and actual damages

23    as a direct and proximate result of Defendants' misrepresentations and concealment of and

24    failure to disclose material information. Defendants had an ongoing duty to all their customers

25    to refrain from unfair and deceptive practices under the Wisconsin DTPA. All owners of Class

26    Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and

27    practices made in the course of Defendants' business.

28

CLASS ACTION COMPLAINT

2725.    As a direct and proximate result of Defendants' violations of the Wisconsin DTPA, the Wisconsin State Class have suffered injury-in-fact and/or actual damage.

2726.    The Wisconsin State Class seeks damages, court costs and attorneys' fees under Wis. Stat. § 100.18(11)(b)(2), and any other just and proper relief available under the Wisconsin DTPA.

**WISCONSIN COUNT II:**
**Breach of Express Warranty**
**Wis. Stat. §§ 402.313 and 411.210**
**(On Behalf of the Wisconsin State Class)**

2727.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

2728.    This count is brought on behalf of the Wisconsin State Class against all Defendants.

2729.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Wis. Stat. §§ 402.104(3) and 411.103(1)(t), and "sellers" of motor vehicles under § 402.103(1)(d).

2730.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Wis. Stat. § 411.103(1)(p).

2731.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Wis. Stat. §§ 402.105(1)(c) and 411.103(1)(h).

2732.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2733.    Defendants also made numerous representations, descriptions, and promises to Wisconsin State Class members regarding the performance and emission controls of their vehicles.

2734.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at

427

CLASS ACTION COMPLAINT

the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

2735.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2736.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

2737.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2738.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

2739.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

2740.     Despite the existence of warranties, Defendants failed to inform Wisconsin State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

2741.     Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

2742.     Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

2743.     Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Wisconsin State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2744.     Accordingly, recovery by Wisconsin State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

2745.     Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Wisconsin State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2746.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or

1  continued failure to provide such limited remedy within a reasonable time, and any limitation
2  on Wisconsin State Class members' remedies would be insufficient to make them whole.

3      2747.    Finally, because of Defendants' breach of warranty as set forth herein, Wisconsin
4  State Class members assert, as additional and/or alternative remedies, the revocation of
5  acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles
6  currently owned or leased, and for such other incidental and consequential damages as allowed.

7      2748.    Defendants were provided notice of these issues by the investigations of
8  governmental regulators, and numerous complaints filed against it including the instant
9  complaint, within a reasonable amount of time.

10     2749.    As a direct and proximate result of Defendants' breach of express warranties,
11  Wisconsin State Class members have been damaged in an amount to be determined at trial.

12                          **WISCONSIN COUNT III:**
                **Breach of Implied Warranty of Merchantability**
13                   **Wis. Stat. §§ 402.314 and 411.212**
                   **(On Behalf of the Wisconsin State Class)**
14

15     2750.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding
16  paragraphs as though fully set forth herein.

17     2751.    This count is brought on behalf of the Wisconsin State Class against all
18  Defendants.

19     2752.    Defendants are and were at all relevant times "merchant[s]" with respect to motor
20  vehicles under Wis. Stat. §§ 402.104(3) and 411.103(1)(t), and "sellers" of motor vehicles under
21  § 402.103(1)(d).

22     2753.    With respect to leases, Defendants are and were at all relevant times "lessors" of
23  motor vehicles under Wis. Stat. § 411.103(1)(p).

24     2754.    The Class Vehicles are and were at all relevant times "goods" within the meaning
25  of Wis. Stat. § 402.105(1)(c) and 411.103(1)(h).

26
27
28

1    2755.    A warranty that the Class Vehicles were in merchantable condition and fit for the

2    ordinary purpose for which vehicles are used is implied by law pursuant to Wis. Stat. §§ 402.314

3    and 411.212.

4    2756.    These Class Vehicles, when sold or leased and at all times thereafter, were

5    materially different from vehicles Defendants submitted for emissions testing, included software

6    that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply

7    with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for

8    the ordinary purpose for which vehicles are used.

9    2757.    Defendants were provided notice of these issues by the investigations of

10   governmental regulators, and numerous complaints filed against it including the instant

11   complaint, within a reasonable amount of time.

12   2758.    As a direct and proximate result of Defendants' breach of the implied warranty

13   of merchantability, Wisconsin State Class members have been damaged in an amount to be

14   proven at trial.

15
**WYOMING COUNT I:**
**Violations of the Wyoming Consumer Protection Act,**
16
**2Wyo. Stat. § 40-12-101, et seq.**
**(On Behalf of the Wyoming State Class)**
17

18   2759.    Plaintiffs incorporate by reference each preceding paragraph as though fully set

19   forth herein.

20   2760.    This count is brought on behalf of the Wyoming State Class against all

21   Defendants.

22   2761.    The Wyoming State Class and Defendants are "persons" within the meaning of

23   Wyo. Stat. § 40-12-102(a)(i).

24   2762.    The Class Vehicles are "merchandise" pursuant to Wyo. Stat. § 40-12-102(a)(vi).

25   2763.    Each sale or lease of a Class Vehicle to a Wyoming State Class member was a

26   "consumer transaction" as defined by Wyo. Stat. § 40-12-102(a)(ii). These consumer

27

28

transactions occurred "in the course of [Defendants'] business" under Wyo. Stat. § 40-12-105(a). Wyoming State Class members purchased or leased one or more Class Vehicles.

2764.   The Wyoming Consumer Protection Act ("Wyoming CPA") prohibits lists unlawful deceptive trade practices, including when a seller: "(i) Represents that merchandise has a source, origin, sponsorship, approval, accessories, or uses it does not have;" "(iii) Represents that merchandise is of a particular standard, grade, style or model, if it is not;" "(x) Advertises merchandise with intent not to sell it as advertised;" "(xv) Engages in unfair or deceptive acts or practices." Wyo. Stat. § 40-12-105(a).

2765.   In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by (a) submitting vehicles for emissions testing that were different from production vehicles, (b) installing a secret software program that caused the vehicles to perform differently during emissions testing than on the road, and/or (c) falsely attesting that certain vehicles' high performance (Sport Plus) mode could pass emissions tests when they in fact did not.

2766.   Wyoming State Class members had no way of discerning that Defendants' representations were false and misleading because Wyoming State Class members did not have access to Defendants' emissions certification test vehicles and Defendants' emissions-related hardware and software was extremely sophisticated technology.

2767.   Defendants thus violated the Wyoming CPA by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

2768.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Wyoming State Class.

1    2769.    Defendants knew or should have known that their conduct violated the Wyoming

2    CPA.

3    2770.    Defendants owed the Wyoming State Class a duty to disclose the illegality and

4    public health risks, the true nature of the Class Vehicles, because Defendants:

5         a.   possessed exclusive knowledge that they were manufacturing, selling, and

6              distributing vehicles throughout the United States that did not perform as

7              advertised;

8         b.   intentionally concealed the foregoing from regulators and Wyoming State Class

9              members; and/or

10        c.   made incomplete representations about the Class Vehicles' fuel economy and

11             emissions while purposefully withholding material facts that contradicted these

12             representations. Defendants' concealment of the true characteristics of the Class

13             Vehicles' fuel consumption and emissions were material to the Wyoming State

14             Class.

15   2771.    Defendants' unfair or deceptive acts or practices were likely to and did in fact

16   deceive regulators and reasonable consumers, including the Wyoming State Class, about the true

17   environmental cleanliness and efficiency of the Class Vehicles, the quality of Defendants'

18   brands, and the true value of the Class Vehicles.

19   2772.    Defendants' violations present a continuing risk to the Wyoming State Class as

20   well as to the general public. Defendants' unlawful acts and practices complained of herein

21   affect the public interest.

22   2773.    Wyoming State Class members suffered ascertainable loss and actual damages

23   as a direct and proximate result of Defendants' misrepresentations and concealment of and

24   failure to disclose material information. Defendants had an ongoing duty to all their customers

25   to refrain from unfair and deceptive practices under the Wyoming CPA. All owners of Class

26   Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and

27   practices made in the course of Defendants' business.

28

2774.    Pursuant to Wyo. Stat. § 40-12-108(a), the Wyoming State Class seeks damages as determined at trial, and any other just and proper relief available under the Wyoming CPA, including but not limited to court costs and reasonable attorneys' fees as provided in Wyo. Stat. § 40-12-108(b).

2775.    Pursuant to Wyo. Stat. Ann. § 40-12-109, Plaintiffs have or will timely provide a notice letter to Defendants. Notice has been previously been provided to Defendants arising out of the facts giving rise to these claims. Additionally, Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time. The Wyoming State Class seeks all damages and relief to which it is entitled.

**WYOMING COUNT II:**
**Breach of Express Warranty**
**Wyo. Stat. §§ 34.1-2-313 and 34.1-.2A-2**
**(On Behalf of the Wyoming State Class)**

2776.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

2777.    This count is brought on behalf of the Wyoming State Class against all Defendants.

2778.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Wyo. Stat. §§ 34.1-2-104(a) and 34.1-2.A-103(a)(xx), and "sellers" of motor vehicles under § 34.1-2-103(a)(iv).

2779.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Wyo. Stat. § 34.1-2.A-103(a)(xvi).

2780.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Wyo. Stat. §§ 34.1-2-105(a) and 34.1-2.A-103(a)(viii).

2781.    In connection with the purchase or lease of each one of its new vehicles, Defendants provide an express warranty for a period of four years or 50,000 miles, whichever

occurs first. This warranty exists to repair the vehicle "if it fails to function properly as designed during normal use."

2782.    Defendants also made numerous representations, descriptions, and promises to Wyoming State Class members regarding the performance and emission controls of their vehicles.

2783.    For example, Defendants included in the warranty booklets for some or all of the Class Vehicles the warranty that its vehicles were "designed, built, and equipped to conform at the time of sale with all U.S. emission standards applicable at the time of manufacture, and that it is free from defects in material and workmanship which would cause it not to meet those standards."

2784.    The Clean Air Act also requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty."

2785.    The EPA requires vehicle manufacturers to provide a Performance Warranty with respect to the vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles (whichever comes first). These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

2786.    The EPA requires vehicle manufacturers to issue Design and Defect Warranties with respect to their vehicles' emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts, which fail to function or function improperly because of a defect in materials or

workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2787.    As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers or lessees of Class Vehicles.

2788.    Defendants' warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

2789.    Despite the existence of warranties, Defendants failed to inform Wyoming State Class members that the Class Vehicles were defective and intentionally designed and manufactured to emit more pollution and achieve worse fuel economy on the road than what was disclosed to regulators and represented to consumers who purchased or leased them, and Defendants failed to fix the defective emission components free of charge.

2790.    Defendants breached the express warranty promising to repair and correct Defendants' defect in materials and workmanship. Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

2791.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here.

2792.    Furthermore, the limited warranty promising to repair and correct Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Wyoming State Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2793.    Accordingly, recovery by Wyoming State Class members is not restricted to the limited warranty promising to repair and correct Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

2794.    Also, as alleged in more detail herein, at the time Defendants warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and

did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Wyoming State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2795.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendants' defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Wyoming State Class members' remedies would be insufficient to make them whole.

2796.    Finally, because of Defendants' breach of warranty as set forth herein, Wyoming State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

2797.    Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2798.    As a direct and proximate result of Defendants' breach of express warranties, Wyoming State Class members have been damaged in an amount to be determined at trial.

**WYOMING COUNT III:**
**Breach of Implied Warranty of Merchantability**
**Wyo. Stat. §§ 34.1-2-314 and 34.1-.2A-2**
**(On Behalf of the Wyoming State Class)**

2799.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2800.    This count is brought on behalf of the Wyoming State Class against all Defendants.

2801.     Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Wyo. Stat. §§ 34.1-2-104(a) and 34.1-2.A-103(a)(xx), and "sellers" of motor vehicles under § 34.1-2-103(a)(iv).

2802.     With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Wyo. Stat. § 34.1-2.A-103(a)(xvi).

2803.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Wyo. Stat. §§ 34.1-2-105(a) and 34.1-2.A-103(a)(viii).

2804.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Wyo. Stat. §§ 34.1-2-314 and 34.1-2.A-212.

2805.     These Class Vehicles, when sold or leased and at all times thereafter, were materially different from vehicles Defendants submitted for emissions testing, included software that led to inflated and misleading fuel economy and emissions ratings, and/or did not comply with emissions regulations when being driven in Sport Plus mode, and were therefore not fit for the ordinary purpose for which vehicles are used.

2806.     Defendants were provided notice of these issues by the investigations of governmental regulators, and numerous complaints filed against it including the instant complaint, within a reasonable amount of time.

2807.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Wyoming State Class members have been damaged in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, and each Class member, pray for judgment against Defendants as follows:

A.      That this action and the proposed class be certified and maintained as a class action, appointing Plaintiffs as representatives of the Class, and appointing the attorneys and law firms representing Plaintiffs as counsel for the Class;

B.      For actual damages, restitution, and all other appropriate legal and equitable and injunctive relief;

C.      For declaratory relief;

D.      For pre-judgment and post-judgment interest;

E.      For civil penalties, as requested herein;

F.      For punitive and exemplary damages, as requested herein;

G.      For attorneys' fees and costs as permitted by law;

H.      For appropriate injunctive relief; and

I.      For such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all causes of action so triable.

Dated: October 28, 2020                    **BLEICHMAR FONTI & AULD LLP**

By:    */s/ Lesley E. Weaver*

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Angelica M. Ornelas (SBN 285929)
Joshua S. Samra (SBN 313050)
555 12th Street, Suite 1600
Oakland, CA 94607
Telephone: (415) 445-4003
Facsimile: (415) 445-4020
lweaver@bfalaw.com
aornelas@bfalaw.com
jsamra@bfalaw.com

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SIMMONS HANLY CONROY LLC**

By:    */s/ Jayne Conroy*
Jayne Conroy (*pro hac vice* to be filed)
Jason 'Jay' Barnes (*pro hac vice* to be filed)
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: (212) 784-6400
Fax: (212) 213-5949
jconroy@simmonsfirm.com
jaybarnes@simmonsfirm.com

CLASS ACTION COMPLAINT

**DECLARATION OF LESLEY E. WEAVER FOR CLRA COUNT**

I, Lesley E. Weaver, declare and state as follows:

1.      I am over the age of 18 years and counsel for Plaintiffs in this action. I submit this affidavit as required by California Civil Code § 1780(d).

2.      Venue is proper in this judicial District because Defendants are doing business in the counties comprising the Northern District of California. Further, a substantial portion of the transaction at issue took place in Alameda County.

3.      The claims in this action are substantially related to the $CO_2$ emissions manipulation discovered in the Audi gas vehicles as described and resolved in Audi $CO_2$. *See e.g.* Amended Consolidated Complaint, *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No MDL 2673 CRB (JSC), Aug 30, 2019, Dkt 6628. My firm played a leading role in testing vehicles which identified the defeat device that action. Similar work by the same expert have identified the manipulations at issue in this action, including manipulations of on board diagnostics, which are overseen by the California Air Resources Board. Because over acts to deceive California regulators were undertaken in this action, venue in this forum is appropriate.

4.      In harmony with the orders relating both *Fajardo v. Dr. Ing. H.c. F. Porsche AG*, 20-cv-07473-JSC (N.D. Cal.), and *Del Barrio et al v. Porsche Cars North America, Inc. et al*, 20-cv-07341-JSC (N.D. Cal.), to *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, venue is also appropriate here before this forum. Related Case Orders, MDL 2672 CRB (JSC), Dkts. 7737, 7741.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 28th day of October, 2020 in San Francisco, California.


           */s/ Lesley Weaver*

           Lesley E. Weaver

441